UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| FEDEX CORPORATION and SUBSIDIARIES,<br><br>    Plaintiff,<br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Case No.: 2:20-cv-02794<br>Hon. Samuel H. Mays, Jr. |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO EXTEND DEADLINE FOR COMPLETION OF DISCOVERY AND
THE DATE OF THE POST-DISCOVERY CONFERENCE**

  FedEx Corporation and Subsidiaries opposes the United States' motion to extend discovery. This case involves a pure legal issue—the invalidity of a Treasury Regulation that was promulgated over 3 years ago in direct conflict with plain statutory text. That issue has been ripe for resolution since February 5, 2019—the day the Treasury Regulation was promulgated. Rather than defend the regulation's validity, the Government seeks to add another 120 days of discovery to its current 1-year discovery journey[1] boiling the ocean to try to find a factual basis to knock out FedEx's claim. (As an aside, these continued attempts to delay a hearing on the core issue in this case speak volumes about the Government's confidence in its position on that issue.)

**A.  The Purely Legal Issue In This Case Is Ripe For Partial Summary Judgment.**

  1.  Noticeably absent from the Government's Motion are the words that dictate when discovery may be extended—*exceptional cases*. Local Rule 16.2(c) ("Motions requesting extension of time for discovery … will be granted only in *exceptional cases* ...") (emphasis added). The sole purpose of discovery in this case with respect to the purely legal issue of the validity of

---

[1] FedEx submitted its initial disclosures on March 22, 2021, 352 days before today's date.

the regulation is to show that there is at least $1 (or even one penny) of the $89 million refund at issue to ensure the Court's ruling on the invalidity of the regulation is not advisory. FedEx is confident in its refund claim and has participated in robust discovery in good faith to make that showing. Discovery should end, and the parties should turn to briefing the motion for partial summary judgment on the regulatory validity issue.

2.　　To refresh, this case involves the validity of Treasury Regulation § 1.965-5(c)(1)(ii)[2] (the "Final Rule").[3] On February 5, 2019, the IRS and Treasury (the "Agencies") promulgated the Final Rule,[4] which purports to disallow certain foreign tax credits that the Internal Revenue Code expressly authorizes.[5] The Code provides a credit for foreign taxes paid on certain income earned abroad. During FY18, FedEx received distributions of Offset Earnings in the U.S. FedEx's foreign subsidiaries paid hundreds of millions of dollars of foreign taxes on those Offset Earnings. Accordingly, the Code provided FedEx a credit for the foreign taxes paid by its foreign subsidiaries on the Offset Earnings that were distributed to FedEx in FY18. Dissatisfied with Congress's policy choice, the Agencies issued the Final Rule, which replaced clear legislative text with the Agencies' preference to eliminate foreign tax credits that the Code expressly authorized.

3.　　The Government mistakenly suggests that the pure legal issue of the validity of the Final Rule "rests on several factual predicates and underlying transactions." Motion at ¶ 3. Not so.

---

[2] Unless otherwise indicated, all "section" or "Code" references are to the Internal Revenue Code of 1986, as amended (26 U.S.C.) (I.R.C.), and all "Treasury Regulation" or "Treas. Reg." references are to the Treasury Regulations (26 C.F.R.) issued under the Code.

[3] All terms are defined in FedEx's Complaint filed on November 2, 2020.

[4] Treasury issued the Final Rule in proposed form on August 1, 2018. Guidance Regarding the Transition Tax Under Section 965 and Related Provisions, 83 Fed. Reg. 39514 (proposed Aug. 9, 2018) (to be codified at 26 C.F.R. pt. 1). The Proposed Rule was substantively identical to the Final Rule.

[5] For a detailed explanation of Offset Earnings and FedEx's entitlement to a credit for the foreign taxes paid by its foreign subsidiaries on the Offset Earnings that were distributed to FedEx in FY18, please see FedEx's Complaint filed on November 2, 2020.

Like any regulatory challenge, the validity of the Final Rule turns on the administrative record, which was finalized on February 5, 2019, when the Agencies issued the Final Rule. *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (in considering challenges to agency action, "[t]he focal point for judicial review should be the administrative record already in existence"). No additional facts are necessary for this Court to resolve that issue. The Government fails to cite any case to the contrary.

4.FedEx would have challenged the validity of the Final Rule immediately after the Agencies issued it—over three years ago. However, the Government's position is that the Anti-Injunction Act (26 U.S.C. § 7421) precludes FedEx from challenging the validity of the Final Rule through pre-enforcement litigation. Consequently, instead of challenging the Government's position under the Anti-Injunction Act, FedEx did exactly what the Government asks of taxpayers. FedEx paid the full $89 million of disputed tax for FY18 and FY19 and sued for a refund.

5.The Government now attempts to impose yet another requirement on a taxpayer to challenge the validity of a Treasury Regulation. Not only must a taxpayer pay the disputed tax and sue for a refund, the Government now contends that a taxpayer must endure an entire extensive audit of its tax return and more than 480 days of burdensome discovery before the Government begins to defend its regulation before a court. This never-ending discovery conflicts with the presumption of judicial review of agency action. *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670 (1986) ("strong presumption that Congress intends judicial review of administrative action").

**B.FedEx Has Provided Robust and Timely Responses to the Government's Discovery Requests.**

6.Nearly two years ago, on April 17, 2020, FedEx filed refund claims for its FY18 and FY19 taxable years, informing the Government about the FY18 Distributions of Offset Earnings, foreign taxes paid on those earnings, and FedEx's argument that the Final Rule is invalid.

3

Under 26 U.S.C. § 6532(a)(1), FedEx had to wait six months to file this refund suit. The sole purpose of that six-month waiting period was to give the Government, through the IRS, an opportunity to review the narrow set of relevant facts and determine its position on the refund claim. *See Burlington Northern Inc. v. United States*, 684 F.2d 866, 868 (Fed. Cl. 1982) (citing *United States v. Memphis Cotton Oil. Co.*, 288 U.S. 62, 71 (1933); *Union Pac. R.R. v. United States*, 182 Ct. Cl. 103, 108 (1968)). It is unclear what, if any, substantive review the IRS performed of FedEx's refund claim prior to FedEx filing suit on November 2, 2020, but FedEx's refund suit was no surprise to the Government.

7.  On November 2, 2020, this Court assigned this case to the Standard Track discovery schedule. Under the Standard Track discovery schedule and Local Rule 16.2(b)(4)(B)(iv)(b), discovery ends 300 days after service or waiver of service of the first defendant. In this case, the Government was served on November 3, 2020; 300 days after service would be August 30, 2021. FedEx anticipated that the parties could resolve the regulatory validity issue not long after filing the complaint (as is standard in most such cases), but FedEx agreed to explore whether there was at least $1 of tax to be refunded in order to ensure the Government that the Court had jurisdiction. To facilitate this determination, on March 22, 2021, FedEx provided robust initial disclosures that (1) described the FY18 Distributions, (2) provided detailed documentary proof that FedEx paid the foreign taxes at issue here, (3) detailed the earnings and profits on which those foreign taxes were paid, and (4) set out the computations of FedEx's section 965 transition tax liability. In the spirit of cooperation, FedEx also agreed to the Government's ***first*** extension of discovery to March 31, 2022—513 days after service of the first defendant in this case. During the Scheduling Conference on April 15, 2021, this Court reluctantly agreed to a year-long discovery process and put the Government on early notice that it should move forward in a timely manner.

8. Thereafter, FedEx diligently responded to the Government's many formal and informal discovery requests. As the Government conceded in the Motion, FedEx has timely responded to each and every formal and informal discovery request that the Government issued, and it has timely supplemented its initial disclosures on two occasions. Motion at ¶ 4. FedEx has promptly responded to a total of 57 formal discovery requests, including 46 requests for production of documents and records, at least 9 interrogatories,[6] and 2 requests for admissions.

9. In addition to formal discovery requests, FedEx also has encouraged informal discovery requests—another affirmative gesture of cooperation not always afforded in contentious federal district court litigation. On five separate occasions, the Government issued multiple informal discovery requests. FedEx promptly responded to the Government's informal requests on average within 21 days.

10. While FedEx has been providing robust formal and informal discovery responses, the Government has not had to respond to a single discovery request. Knowing that this case turns entirely on the validity of the Final Rule, FedEx has not issued any discovery requests to the Government. Despite having no discovery burden of its own, the Government has, to be frank, been slow. On average, the Government waited 81 days—nearly 3 months—between each formal request for discovery. In one instance, the Government waited almost 6 months between formal discovery requests (July 21, 2021 to January 7, 2022).

11. The Government argues that it needs to conduct depositions. Motion at ¶ 9. For nearly 1 year, FedEx has offered the opportunity for depositions. Before any formal discovery in this case, on March 25, 2021, FedEx gave the Government the opportunity to depose a key FedEx

---

[6] FedEx has objected to the Government's attempt to include multiple separate questions within a single numbered interrogatory. While the Government has issued 9 numbered interrogatories, the actual number of distinct questions is at least 18.

5

employee to help the Government understand the facts pertinent to FedEx's Complaint. FedEx even offered to exclude the proposed deposition from the Government's limit of 10 depositions. The Government failed to take FedEx up on its offer. On June 10, 2021, FedEx gave the Government the opportunity to informally speak with a FedEx employee. The Government again failed to take FedEx up on its offer. FedEx has repeatedly encouraged the Government in its formal discovery responses to depose key FedEx personnel to assist the Government in understanding the facts underlying FedEx's claim for refund of the $89 million in foreign tax credits to which it is entitled under the Internal Revenue Code. The Government has been silent.

12. Against this record, there are neither "exceptional circumstances" nor "good cause" for adding another four months (or more) of discovery. FedEx has been cooperative and forthcoming with information throughout the discovery period. FedEx went so far as to offer up key FedEx personnel for the Government to depose without counting against the Government's 10 depositions. Noticeably missing from the Government's Motion is any complaint about FedEx's cooperation in the discovery process in this case.[7]

13. Put simply, 1 year of discovery is long enough for the Government to determine that FedEx is owed at least $1.

---

[7] Even after the Government raised potentially moving this Court to extend the discovery period with FedEx, FedEx continued to cooperate with the Government. For example, on February 25, 2022, the Government requested additional information to assess FedEx's privilege claim with respect to a 413-page presentation. Rather than raise this issue with the Court and to conserve the Court's resources, FedEx provided a redacted version of the 413-page presentation to the Government that included all of the underlying factual information. In this context, the Government's vague reference to "privilege issues" in its motion is head scratching.

**C. The Government Raises the Specter of Economic Substance But Fails to Identify Any Facts to Flesh Out This Apparition.**

14. The Government suggests that further discovery is necessary to determine if the FY18 Distributions lacked economic substance. Motion at ¶ 6. As noted above, and as shown in FedEx's detailed discovery responses, FedEx brought cash back to the United States to provide additional liquidity in the wake of the June 2017 cyberattack on TNT Express (a Dutch company that FedEx acquired in May 2016 for €4.4 billion) and to pay expenses in the U.S. To do so, FedEx had to ensure that the cash that FedEx returned to the U.S. moved from certain of FedEx's foreign subsidiaries to the U.S. through its foreign operating structure.

15. The essential facts regarding the FY18 Distributions are clear. FedEx received two distributions—one in October 2017 and another in May 2018—that included Offset Earnings that are relevant to this dispute. On October 20, 2017, Federal Express Holding (Netherlands) C.V. ("HoldCo CV") distributed $156,966,430 by issuing a promissory note to Federal Express International (Netherlands) C.V. ("FP CV"). FP CV then assigned the promissory note to FedEx Corporation as payment of $156,966,430 of interest accrued on a prior note from FedEx Corporation to FP CV. In November 2017, HoldCo CV transferred $156,966,430 in cash to FedEx Corporation to satisfy the note. On May 31, 2018, FP CV sold all of its limited partnership interests in Federal Express International Financing (Netherlands) C.V. ("FinCo CV") to HoldCo CV in exchange for $1,860,257,580, consisting of (i) $447,282,550 in cash and (ii) shares in HoldCo CV valued at $1,412,975,030. The cash consideration constituted a distribution to FedEx. Through the October 2017 and May 2018 Distributions (together, the FY18 Distributions), FedEx returned hundreds of millions of dollars in cash to the United States. This cash included Offset Earnings. Under U.S. federal income tax law, the foreign taxes paid on the repatriated Offset Earnings were creditable.

16. To explain these transactions to the Government, in its initial disclosures and throughout discovery, FedEx provided diagrams illustrating the FY18 Distributions, legal agreements describing those distributions, detailed journal entry support and other data relating to the FY18 Distributions, detailed information about the earnings and profits that were distributed, and documentation of the foreign taxes paid on those earnings and profits. FedEx organized and provided 143 documents encompassing more than 5,000 pages of bank statements, government acknowledgments, tax returns, and vouchers for more than 97% of the Company's historic foreign taxes paid.

17. With respect to the May 2018 Distribution, the Government attached a schedule to its Motion that FedEx prepared for the Government on November 12, 2021 (almost four months ago) to help the Government understand the movement of cash from foreign subsidiaries through the Company's legal structure to the ultimate FedEx U.S. recipient. See Motion, Ex. B. Similar to the foreign tax proof described above, during discovery, FedEx provided organized bank statements, wire transfer information, foreign-exchange conversion receipts, and journal entry support with respect to the movement of cash involved in the FY18 Distributions. Yet without any reference to these facts or any suggestion as to how moving funds through a corporate structure establishes a lack of "economic substance," the Government suggests that these transactions somehow were flawed. The Government's failure to provide any facts after 1 year of formal discovery supports what FedEx has asserted all along—the FY18 Distributions had substance, FedEx's subsidiaries paid the foreign taxes that it claims are creditable, and the sole legal issue here is the validity of the Final Rule.

18. The Government also mistakenly contends that some of the FY18 Distributions included "a circuitous flow of money." Motion at ¶ 6(b)(ii). The Government apparently assumes

that because FedEx had more than one Hong Kong entity, the funds must have moved from and to a single entity. That's incorrect. As FedEx has explained during the discovery process, many of FedEx's foreign entities operated underneath FedEx Express Global Holdings C.V. ("Partnership CV"). The transaction that the Government describes relates to the movement of funds from a subsidiary to Partnership CV and then on to the partners of Partnership CV. After that, the funds were transferred up the rest of the international structure and back to the United States. The Hong Kong entities that the Government identifies were different legal and functional entities with different places in FedEx's foreign operating structure. There was no circular cash flow—all the money originated from foreign operating entities and ended up in the United States.

19.     To attempt to support its baseless accusations challenging the "economic substance" of the FY18 Distributions, the Government cites to email correspondence showing that FedEx considered the tax consequences of a potential significant change to the international tax system under the impending Tax Cuts and Jobs Act.[8] This email establishes the simple fact that FedEx carefully analyzed the tax law and engaged in tax planning as part of the FY18 Distributions; it has nothing to do with a lack of economic substance. Like any taxpayer conducting a trade or business, FedEx took care to achieve its legitimate business objectives in a tax-efficient manner. Tax planning is permissible and has long been blessed by the courts. "[A]s Judge Learned Hand memorably told us in the case that gave rise to the economic-substance doctrine . . . [a]ny one may so arrange his affairs that his taxes shall be as low as possible; he is not bound to choose that pattern which will best pay the Treasury." *Summa Holdings, Inc. v. Commissioner*, 848 F.3d

---

[8] The email that the Government attached to its Motion was provided to the Government on August 20, 2021 (over six months ago). When FedEx provided the email to the Government, FedEx suggested that the Government depose key FedEx personnel with respect to the Company's purpose for engaging in the FY18 Distributions. The Government rejected that offer.

779, 787 (6th Cir. 2017) (quoting *Helvering v. Gregory*, 69 F.2d 809, 810 (2d Cir. 1934)). The Sixth Circuit reiterated this fundamental principle just last week when it invalidated another flawed IRS rule. *Mann Constr. Inc. v. United States*, 2022 U.S. App. LEXIS 5668, at *2 (6th Cir. Mar. 3, 2022) (citing *Gregory*, 69 F.2d at 810). Despite this fundamental principle, the Government fails to cite to any case to show that tax planning equates with a lack of economic substance.

### D.   The Government Is Not Prejudiced When Discovery Ends on March 31, 2022 Because the IRS's Audit of FedEx Will Continue.

20.     While FedEx has been providing detailed responses to the Government's formal and informal discovery requests, it has simultaneously responded to dozens of information document requests from the IRS Examination Team. The IRS has been auditing FedEx's FY18 and FY19 taxable years since October 22, 2020—nearly a year and a half. Throughout this IRS examination, FedEx has answered at least 26 information document requests regarding its international subsidiaries, plus 2 additional follow-up requests, totaling at least 124 questions.[9] In accordance with the parties' April 9, 2021 Proposed Discovery Plan, FedEx continues to cooperate with the IRS during its ongoing audit of FedEx's FY18 and FY19 income tax returns.

21.     As stipulated in the April 9, 2021 Proposed Discovery Plan, (1) the IRS will proceed with its audit of FedEx's FY18 and FY19 income tax returns and (2) the IRS may later issue a notice of deficiency and/or make an assessment, for additional taxes owed by FedEx for FY18 and FY19, regardless of the outcome of this case. *See* ECF No. 28, Proposed Discovery Plan, at 2-3. If this Court denies the Motion, the Government is not prejudiced, as the IRS will continue to audit FedEx and may contend that additional taxes are owed.

22.     For the past year, FedEx has cooperated diligently and in good faith to help the

---

[9] FedEx has responded to dozens more information document requests regarding its domestic operations.

Government understand that there is sufficient evidence that FedEx is owed at least $1 of the $89 million refund that it claimed. In light of the history of FedEx's significant cooperation in responding to numerous formal and informal discovery requests, the amount owed, and the absence of any extraordinary circumstances to continue discovery, the Government should be obligated to move forward with the case. FedEx is confident that it has provided the Government with the facts necessary to establish that FedEx is entitled to the amount claimed as a refund. Accordingly, discovery must end, and this Court should consider the validity of the Final Rule.

23. Based on the foregoing, FedEx opposes the Government's Motion to extend discovery for another four months. Discovery should end on March 31, 2022, and the parties should begin briefing on a motion for partial summary judgment regarding the validity of the Final Rule in April 2022.

Dated: March 9, 2022                                   Respectfully submitted,

                                                       JOSEPH B. JUDKINS
                                                       Counsel for Plaintiff
                                                       Baker & McKenzie, LLP
                                                       815 Connecticut Avenue, NW
                                                       Washington, DC 20006
                                                       Telephone: (202) 835-6137
                                                       joseph.judkins@bakermckenzie.com