**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| FEDEX CORPORATION<br>and SUBSIDIARIES | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:20-CV-02794 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

———————

**THE UNITED STATES' REPLY IN SUPPORT OF ITS MOTION
FOR PARTIAL SUMMARY JUDGMENT**

———————

DAVID A. HUBBERT
    Deputy Assistant Attorney General

CORY A. JOHNSON
Ill. Bar No. 6211233
Senior Litigation Counsel
JAN M. GEHT
Special Trial Attorney
ELISABETH M. BRUCE
ROBERT J. ATRAS
Trial Attorneys
U.S. Department of Justice (Tax Division)
P.O. Box 14198, Ben Franklin Station
Washington, D.C. 20044
202-307-3046 (Johnson)
651-361-1823 (Geht)
202-598-0969 (Bruce)
202-598-3738 (Atras)
Cory.A.Johnson@usdoj.gov
Jan.M.Geht@irscounsel.treas.gov
Elisabeth.M.Bruce@usdoj.gov
Robert.J.Atras@usdoj.gov

**TABLE OF CONTENTS**

Page

INTRODUCTION ...........................................................................................................1

ARGUMENT ...............................................................................................................1

I.     DISALLOWING FEDEX'S CREDIT CLAIM FLOWS FROM THE
STATUTORY TEXT AND STRUCTURE................................................1

      A. Section 965(b)(4)(A) Determines *the Purposes* for Which Offset
Earnings are *Treated* as Previously Included in Income under
§ 951................................................................................................1

        1.   The Hypothetical § 951 Treatment Applies Whenever § 959 Is
Applicable, Which Includes § 960(a)(3) .......................................2

        2.   § 951 Treatment Does Not Apply for Purposes of an
Entitlement to Credits Under § 960(a)(1) ......................................3

      B. FedEx Provides No Reason to Cut Short the Consequences of
Treating Offset Earnings as Previously Included in Income *When
That Treatment Is Applicable* .......................................................4

II.    FEDEX'S THEORY IS INCONSISTENT WITH § 965(g)........................8

III.   FEDEX'S STATUTORY THEORY LACKS ANY SUPPORTING
EVIDENCE OF CONGRESSIONAL INTENT..........................................9

IV.   FEDEX'S SPECULATION ABOUT OTHER TAXES ON OFFSET
EARNINGS FAILS .......................................................................11

V.    TREASURY REGULATION § 1.965-5(c)(1)(ii) IS VALID ....................14

VI.   FEDEX's ONE REMAINING PROCEDURAL OBJECTION FAILS ....................17

CONCLUSION.............................................................................................................18

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases:**

*AFGE Local 1592 v. Federal Labor Relations Authority*,
  836 F.3d 1291 (10th Cir. 2016) .......................................................15

*American Great Lakes Ports Ass'n v. Zukunft*,
  296 F. Supp. 3d 27 (D.D.C. 2017) ....................................................17

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
  467 U.S. 837 (1984).............................................................. *passim*

*National Cable & Telecomms. Asssoc. V. Brand X Internet Servs. et. al. v.
  United States*,
  562 U.S. 44 (2011)..........................................................................15

*Oakbrook Land Holdings, LLC v. Comm'r of Internal Revenue*,
  28 F.4th 700 (6th Cir. 2022) .......................................................10, 18

*PDK Laboratories, Inc. v. United States Drug Enforcement Agency*,
  362 F.3d 786 (D.C. Cir. 2004) .........................................................15

*Sierra Club v. U.S. E.P.A.*,
  793 F.3d 656 (6th Cir. 2015) .............................................................9

*Thompson v. Clark*,
  741 F.2d 401 (D.C. Cir. 1984)..........................................................17

*U.S. Satellite Broad. Co. Inc. v. FCC*,
  740 F.2d 1177,1188 (D.C. Cir. 1984) ...............................................17

*Whirlpool Financial Corp. & Cons. Subs. v. Commissioner*,
  154 T.C. 142 (Tax Ct. 2020), *aff'd* 19 F.4th 944 (2021) ..................17

*Whitman v. American Trucking Assoc.*,
  531 U.S. 457 (2001)...........................................................................6

# TABLE OF AUTHORITIES

**Page(s)**

**Statutes:**

Internal Revenue Service Codes of 1986 (26 U.S.C.)

§ 902 ...................................................................................................................5

§ 951 .......................................................................................................... _passim_

§ 959 .......................................................................................................... _passim_

§ 960 .......................................................................................................... _passim_

§ 961 .................................................................................................................13

§ 965 .......................................................................................................... _passim_

Revenue Act of 1962. Pub. L. No. 87-834, 76 Stat.960 (1962)................................5

**Other Authorities**

84 F.R. 1838-01 (2019)...........................................................................13, 16, 17

H.R. Rep. 115-466 (2017)....................................................................................10

Staff of J. Comm. On Tax'n. General Explanation of Public Law 115-97
(JCS-1-18)...........................................................................................................8

Treasury Regulation (26 C.F.R.):

§ 1.902-1 ......................................................................................................5, 6

§ 1.965-2 ...............................................................................................6, 11, 12

§ 1.965-5 ................................................................................................ _passim_

## INTRODUCTION

In its response to the United States' motion for partial summary judgment, FedEx contends (at 1) that disallowing its credit claim would improperly rest on "sometimes" treating Offset Earnings as previously included in income under § 951 and "sometimes not." It later (at 17) characterizes the government's "mistaken" position as treating Offset Earnings as included in income under § 951 "for *all* purposes of the Code." (Emphasis added). At other points, FedEx argues for a "holistic" approach to interpreting the statutory scheme but then asserts (at 6) that the Subpart F rules—specifically §§ 951, 959 and 960—are "not interlocking," without demonstrating why they are not.

Putting aside its shifting rhetoric, FedEx's credit claim is precluded by the most reasonable interpretation of the relevant statutory provisions. Although that result requires expertise in applying some linked rules and an understanding of the underlying policies, it is not based on cherry-picking when they should apply or legislative paradoxes. Nor is it based on Treasury rewriting the law – Treasury Regulation § 1.965-5(c)(1)(ii) is a permissible construction of the statute. On the other hand, FedEx's attempt to punch open a new loophole in the Internal Revenue Code relies on a disregard of the statutory text, a mischaracterization of the government's position, and unsupported assertions.

## ARGUMENT

### I.   DISALLOWING FEDEX'S CREDIT CLAIM FLOWS FROM THE STATUTORY TEXT AND STRUCTURE

#### A.   Section 965(b)(4)(A) Determines *the Purposes* for Which Offset Earnings are *Treated* as Previously Included in Income under § 951

FedEx complains that the government's position—as well as Treasury Regulation § 1.965(c)(1)(ii)—are based on treating Offset Earnings as previously included in income under

§ 951 for some purposes and not others. Those purposes, however, are based on the text of § 965(b)(4)(A), not, as FedEx asserts (at 1), "whatever purposes the Treasury Department chooses."

Section 965(b)(4)(A) provides that, "*For purposes of applying section 959* in any taxable year beginning with the taxable year described in subsection (a)… [Offset Earnings] … shall be *treated* as an amount which *was* included in the gross income of [the] United States shareholder under section 951(a)." (Emphasis added). Important consequences necessarily flow from this congressional direction as to where and how this treatment applies.

## 1.    The Hypothetical § 951 Treatment Applies Whenever § 959 Is Applicable, Which Includes § 960(a)(3)

The first consequence is that, for purposes of determining whether a current distribution of Offset Earnings is excluded from a U.S. shareholder's taxable income under § 959, the earnings are treated as having been previously included in the shareholder's income under § 951. Section § 965(b)(4)(A) uses the past tense and provides that the earnings are treated as an amount that "was" (not "is" currently) included under § 951. Based on that hypothetical treatment, the earnings are excluded from taxable income under § 959 when they are distributed.

The second consequence is that Offset Earnings are treated as having previously been included in income under § 951 for purposes of determining whether a U.S. shareholder may claim credits for any foreign taxes under § 960(a)(3) when the earnings are distributed. Why does § 965(b)(4)(A)'s hypothetical treatment of Offset Earnings as previously included in income under § 951 also apply here? As we explained in our opening brief (at 16)—and as Treasury discussed in the regulations' preamble—it is because § 960(a)(3)'s application *expressly* depends on § 959's underlying application to a distribution of earnings. Section 960(a)(3) *only* applies to a distribution to which § 959 *also* applies.

2

FedEx does not—and cannot—dispute this statutory relationship between §§ 959 and 960(a)(3). Instead, its only argument seems to be an appeal (at 9) to a dictionary's definition of the word "applying." More appropriate guidance is provided by the text and structure of the Subpart F rules into which Congress inserted § 965. Dictionary definitions are no reason to conclude that Congress meant for Offset Earnings to be treated as previously included in income under § 951 for purposes of a threshold determination of § 960(a)(3)'s applicability—*i.e.*, that § 959 applies to the distribution—but then to ignore that same treatment in examining the availability of any additional credits under § 960(a)(3). Rather, to be consistent, we must respect the hypothetical previous inclusion under § 951 whenever § 959 applies, which includes § 960(a)(3). When examining whether § 960(a)(3) allows any additional credits with respect to a distribution of Offset Earnings, therefore, those earnings are *treated* as having been previously included in income under § 951. That previous inclusion means that the related foreign taxes are treated as previously deemed paid, and unavailable to be credited when the earnings are distributed, as we explain further below.

### 2. § 951 Treatment Does Not Apply for Purposes of an Entitlement to Credits Under § 960(a)(1)

The third key consequence of § 965(b)(4)(A)'s direction is that Offset Earnings are not treated as included in income under § 951 for purposes of applying § 960(a)(1) in the year of distribution. Section 960(a)(1) provides that, when a domestic corporation includes income under § 951(a)(1) with respect to a controlled foreign corporation (CFC) (which inclusion is not an actual distribution to the parent), the domestic corporation is deemed to pay a portion of the CFC's foreign taxes and may claim an "indirect" foreign tax credit at the time of the inclusion.

Offset Earnings are not actually included in income under § 951, and no credits could be claimed on that basis. § 965(b)(1). Nor could there be a claim for actual credits under § 960(a)(1)

based on § 965(b)(4)(A)'s treatment of Offset Earnings as previously having been included in income under § 951. Section 965(b)(4)(A)'s treatment of Offset Earnings expressly applies for purposes of § 959, and § 960(a)(1) is *not* referenced *as a purpose for* § 965's treatment of the earnings. Moreover, § 960(a)(1) is *not* dependent on § 959 applying to a distribution, as § 960(a)(3) is, as explained above. (Section 960(a)(3) expressly applies to a distribution "which is excluded from gross income under section 959(a)….") Thus, while there is a statutory basis for consistently treating Offset Earnings as previously included in income under § 951 for purposes of applying § 959 and its linked provision § 960(a)(3), there is *no* similar basis for purposes of allowing credits under § 960(a)(1). Indeed, to treat Offset Earnings as included in income under § 951 for purposes of allowing credits under § 960(a)(1) would contradict § 965(b)(1)'s exclusion of Offset Earning from the actual § 951 inclusion under § 965(a), and the limitation on actual credits for that actual inclusion per § 965(g).

In sum, § 965's text and its interaction with the existing Subpart F rules in §§ 959 and 960(a)(3) mandate the purposes for which Offset Earnings are treated as having previously been included in income under § 951.

**B.    FedEx Provides No Reason to Cut Short the Consequences of Treating Offset Earnings as Previously Included in Income *When* that Treatment Is Applicable**

Having established the purposes (§§ 959 and 960(a)(3)) for which Offset Earnings are *treated* as previously included in income under § 951, the question is: For those purposes, what does that hypothetical treatment mean? In its response, FedEx mixes apples and oranges (*i.e.*, asking whether the earnings were *actually* previously included in income), ignores the integrated scheme in which Congress put § 965, and fails to give effect to § 965(b)(4)(A)'s text.

As we discussed in our opening brief, an inclusion of income under § 951 has always had ineluctable consequences. The result of the linked provisions is that the related foreign taxes are deemed paid in the year of the income inclusion and cannot be deemed paid again (and thus no credit claimed) when the earnings are later distributed to a domestic parent. § 960(a)(1), (a)(2), (a)(3); Treas. Reg. § 1.902-1(a)(8)(i).

In response, FedEx merely asserts (at 6) that those Subpart F rules are not "interlocking." That is patently incorrect, and FedEx makes no effort to sever the textual linkages between §§ 951, 902, and 960(a)(1), (2).[1]  (See U.S. Brief, pp. 13 - 17).

FedEx also seems to argue (at 5-6) that foreign taxes on Offset Earnings may be deemed paid, and credits claimed under § 960(a)(3), upon the distribution of the earnings because the earnings were never *actually* previously included in income under § 951. But § 965(b)(4)(A) provides that they are *treated as if they were*. To use FedEx's metaphor (at 5), the Offset Earnings are treated *as if* the first domino did fall – for certain purposes there was a hypothetical prior § 951 inclusion.

FedEx desperately tries to switch the question to whether there was an actual inclusion of Offset Earnings because, when the earnings are treated as previously included under § 951, FedEx is unable to provide any reason why the necessary effects of that treatment would be ignored – *i.e.*, that the rest of the dominos are also treated as previously falling.

The only consistent approach is that just as the earnings are *treated* as previously included in income, the related foreign taxes are *treated* as previously deemed paid and unavailable to be deemed paid again. §§ 951, 960(a)(1), (a)(2); Treas. Reg. § 1.902-1(a)(8)(i).

---

[1] These Subpart F rules were all enacted as a package as part of the Revenue Act of 1962. Pub. L. No. 87-834, 76 Stat. 960 (1962).

This consistent treatment honors the pairing of an income inclusion under § 951 with the related taxes being deemed paid at the same time that has always held when there is an *actual* § 951(a) inclusion. *See* §§ 951 and 960(a)(1). Congress gave no indication that it sought a radical departure from these rules when it invoked them by directing that Offset Earnings should be *treated* as previously included in income under § 951 for certain purposes. *Whitman v. American Trucking Assoc.*, 531 U.S. 457, 468 (2001) (noting that Congress "does not alter the fundamental details of a regulatory regime in vague terms or ancillary provisions").[2]

Finally, FedEx also apparently contends that the work performed by § 965(b)(4)(A) is simply to exclude Offset Earnings from U.S. taxable income when distributed and allow taxpayers to claim foreign tax credits against other U.S. taxable income, resulting in a taxpayer avoiding the burden of any taxes—foreign or U.S.—on Offset Earnings. According to FedEx, the (undisputed) purpose of the foreign tax credit regime—avoidance of *double* tax on the same earnings—*might* be honored later if (i) a taxpayer does not make the basis adjustment allowed by Treasury Regulation § 1.965-2(f)(2) and (ii) the taxpayer also decides *at some point in the future, at its sole discretion,* to incur a U.S. tax on a distribution of earnings from its CFC, *if* that distribution exceeds its basis in the CFC's stock, or incur a gain on the sale of CFC stock, if the sale price exceeds its basis in the stock. *If* all that occurs, FedEx contends that the credits previously taken, which were a windfall at that time, might finally fulfill their purpose and be used to avoid double taxation, because, at least to some extent, there *could* be a U.S. tax at that

---

[2] We also note that FedEx (at 6) is wrong that credits "must have been allowed" when foreign taxes are deemed paid for those credits to be subsequently unavailable. Treasury Regulation § 1.902-1(a)(8)(i) provides that foreign taxes deemed paid because of a prior § 951 inclusion are removed from the pool of taxes eligible to be credited "regardless of whether the shareholder in fact chose to credit…[them]…for the year of …. inclusion." (There is no challenge to this regulation.)

future point in time. In sum, FedEx argues that the previous, unjustified windfall *might* be mitigated at *some* point.[3]

Putting aside whether there really could be a net increase in taxable income in the future in the situation FedEx posits (we address that below), there is no need to follow FedEx's novel and speculative approach in any event. The government's interpretation accommodates § 965(b)(4)(A) within Subpart F and is consistent with the long-standing policy of the foreign tax credit rules. By treating Offset Earnings as previously included in income under § 951 for purposes of §§ 959 and 960(a)(3), the earnings do not face U.S. tax when repatriated and credits are not available for any foreign taxes on the earnings either. There is no double tax.

This interpretation also maintains, for the purposes of § 965's hypothetical treatment, the relationship between the availability of credits and an income inclusion under § 951 that has always otherwise held true: foreign taxes are deemed paid (and creditable) when there is an income inclusion and cannot be deemed paid again. § 960(a)(1), (a)(2).  Further, it closes the books on the pre-TCJA regime (which was the intent of § 965) and achieves the purpose of the foreign tax credit regime—avoiding double tax because the taxpayer pays only foreign tax on the earnings—in the year of distribution when the earnings are received without any U.S. tax. There is no need to await a speculative future potential U.S. tax on a CFC distribution of unknown amount to allegedly mitigate the prior windfall that occurs under FedEx's theory.

In sum, in the absence of Treasury Regulation § 1.965-5(c)(1)(ii), it takes expertise and understanding of the policy context to determine the meaning of § 965(b)(4)(A) and its

---

[3] FedEx does not dispute the example at p. 16-17 of our opening brief demonstrating the windfall and departure from the foreign tax credit rules that FedEx's approach entails.

interaction with the pre-TCJA Subpart F rules. But, as we have demonstrated, disallowing FedEx's credit claim, as the Treasury Regulation does, is the most reasonable interpretation.

## II.   <u>FEDEX'S THEORY IS INCONSISTENT WITH § 965(g)</u>

As we explained in our opening brief (at 6 – 10), a U.S. shareholder's § 965(a) inclusion in its transition year is taxed at reduced rates and, to account for that, its ability to claim foreign tax credits related to that inclusion is similarly reduced. § 965(c) (reducing tax rates on § 965(a) inclusion thru special deductions) and (g) (correspondingly disallowing specific percentages of credits related to § 965(a) inclusion). The rationale is that only the reduced amount of credits is necessary to avoid double tax, given the special reduced applicable U.S. tax rates. Staff of J. Comm. On Tax'n. General Explanation of Public Law 115-97, at 362 (JCS-1-18). FedEx seems to think that the absence of a specific, new statutory provision like § 965(g) with respect to Offset Earnings implies that it may claim credits with respect to a distribution of those earnings. It is wrong.

First, the absence of a provision like § 965(g)—disallowing specific percentages of credits related to a § 965(a) inclusion—with respect to Offset Earnings appropriately reflects the different contexts and the fact that Offset Earnings will not be taxed (even at reduced rates) when repatriated per § 959.

A § 965(a) inclusion and its reduced U.S. tax rates were new to Subpart F in 2017. If the existing credit rules were left applicable to this inclusion, U.S. taxpayers may have been able to go beyond avoiding double tax and obtain a windfall by claiming credits that could be used to offset U.S. tax on unrelated income. For this new situation, a new credit rule, *i.e.,* § 965(g), was thus appropriate.

With respect to Offset Earnings, however, § 965(b)(4)(A) mandated that Offset Earnings would be treated as previously included in income under § 951. For Offset Earnings, the existing rules of Subpart F were specifically invoked as applicable. They are sufficient, as explained above, to determine what foreign tax credits are unavailable.

Second, the negative inference that FedEx wants to draw from § 965(g) makes no sense. FedEx emphasizes that § 965(g) carefully disallows a percentage of foreign tax credits that may be claimed related to a § 965(a) inclusion, because of the reduced U.S. tax rates on that inclusion. FedEx argues that because there is no similar express statement for Offset Earnings Congress simultaneously intended to allow unlimited credits related to Offset Earnings even though they face *no* U.S. tax when repatriated. No statutory provision compels such a novel result. Nor is there is any articulated policy rationale or support in the legislative history or elsewhere for such a contradiction.

The government's position and Treasury Regulation § 1.965-5(c)(1)(ii) do not lead to such a nonsensical result. Instead, the same matching of the availability of credits and imposition of U.S. tax and mathematical precision holds as that found in § 965(g). Section 965(g) partially reduced the credits to match the partial reduction in U.S. tax. Similarly, because Offset Earnings escape 100% of U.S. tax on repatriation under § 959, 100% of the credits for related foreign taxes are disallowed, because those earnings are treated as previously included in income under § 951. Instead of supporting FedEx's position, § 965(g) undermines it.

### III.  FEDEX'S STATUTORY THEORY LACKS ANY SUPPORTING EVIDENCE OF CONGRESSIONAL INTENT

"When conducting the inquiry required by *Chevron's* first step, the court's primary goal is to effectuate legislative intent using traditional tools of statutory interpretation. These traditional tools include analysis of the statutory text, the structure of the statute, and its

legislative history." *Sierra Club v. U.S. E.P.A.*, 793 F.3d 656, 665 (6th Cir. 2015). The United States has explained why this analysis supports disallowance of FedEx's credit claim (as well as supporting Treasury Regulation § 1.965-5(c)(1)(ii)).

FedEx argues the opposite: that the statute is in its favor. In doing so, it acknowledges— as it must—that its interpretation would lead to a significant change to the normal workings of Subpart F and the foreign tax credit rules. (It does not dispute our example at pp. 16-17 of our opening brief.) Thus FedEx cobbles together a theory as to how, in the future, this aberration might be remedied, at the taxpayer's discretion.

Yet, FedEx points to no statutory provision compelling its novel interpretation. There is no "precise, unambiguous statutory language" directing that a U.S. shareholder should be allowed to claim foreign tax credits on Offset Earnings. *Oakbrook Land Holdings, LLC v. Comm'r of Internal Revenue*, 28 F.4th 700, 718 (6th Cir. 2022), petition for *cert.* filed October 6, 2022 (No. 22-323). Using our prior example (U.S. Br. p. 16-17), there is no indication that Congress unambiguously intended to move from a system where $250 of credits follow the $1,000 income inclusion to one (advanced by FedEx) where the full $250 of credits follows an inclusion of only half the income, $500, and the taxpayer retains the ability to permanently shield the "other" $500 from U.S. tax. Nor is there any discussion in the legislative history of such a change to the well-understood rule that foreign taxes are deemed paid and creditable when the related earnings are included in income under § 951. *See, e.g.*, H.R. 1, 115th Cong. Sec. 4004 (as introduced in the House, Nov. 2, 2017); H.R. Rep. 115-466, 614, 618-19 (2017).

FedEx's statutory, *Chevron* step one argument is untenable. Congress said not a word in support of it. Accordingly, this Court should uphold the validity of Treasury Regulation § 1.965-5(c)(1)(ii), even if the Court finds that the government's interpretation of § 965(b)(4)(A) and its

fit within Subpart F is not free from doubt. FedEx does not even advance a substantive *Chevron* step two argument, and it is clear that the statute does not *foreclose* the regulation's permissible interpretation of § 965(b)(4)(A)'s consequences.

## IV.   FEDEX'S SPECULATION ABOUT OTHER TAXES ON OFFSET EARNINGS FAILS

FedEx admits, as it must, that Offset Earnings are exempt from U.S. tax when repatriated per § 959. It contends, nevertheless, that such earnings could potentially, in some other manner, be subject to tax, for example if the U.S. shareholder decides to later sell its shares in the CFC which had those earnings and incur a capital gain. FedEx proposes an example (at 14) that it argues demonstrates this.

As we noted in our opening brief, the election provided by Treasury Regulation § 1.965-2(f) makes this scenario avoidable. That election increases the U.S. shareholder's basis in its CFC's stock by the amount of the Offset Earnings, and thus reduces any potential capital gain (or any gain upon a distribution of earnings in excess of basis) in an equal amount. FedEx could have made that election on its original return, just as it complied with Treasury Regulation § 1.965-5(c)(1)(ii)'s prohibition on credits related to Offset Earnings in its original return. (See Complaint, ¶¶ 56-57). And neither of those actions would have prohibited FedEx from filing an amended return and filing this case. At most, FedEx would have lost a rhetorical point that it (mistakenly) hopes to make here based on a tactical decision to pay a tax that it did not need to pay.

A second problem with FedEx's scenario is that it does not tell the full story. FedEx argues (at 13) that, *in the absence of the basis increase allowed by Treasury Regulation 1.965-2(f)*, taxation of Offset Earnings is "preserv[ed]" for later – upon a potential sale of CFC shares. FedEx does not mention that an equal amount of loss also would be "preserved" in the shares of

the CFC deficit corporation whose E&P deficit was used to shield the Offset Earnings from the transition tax. That loss could be realized upon sale of the deficit CFC's shares because the U.S. shareholder's basis is those shares would not be decreased, in the absence of the election, even though its losses were used to shield Offset Earnings from tax.[4] In sum, there is no net potential future increase in tax across a taxpayer's CFCs as FedEx speculates.[5]

Treasury Regulation § 1.965-2(f) (which FedEx does not challenge) addresses the full story. As Treasury stated in the preamble for this regulation:

> To understand the basis election, it is useful to understand that when a United States shareholder includes an amount in income related to the subpart F income of its CFC, the CFC's earnings that are associated with the income inclusion are considered as previously taxed. Thus, when those previously taxed E&P are distributed to the United States shareholder, the United States shareholder generally does not include them in income. Additionally, in general, the subpart F inclusion also causes an upward basis adjustment in the stock of the CFC equal to the amount of the income inclusion. This also prevents double taxation through capital gain recognized in the event that the CFC is sold. Because this increase in basis is only needed to avoid double taxation until the previously taxed E&P are distributed, once the earnings are distributed, there is a corresponding downward adjustment in basis of the CFC. If there is insufficient basis in the stock to account for the decrease, then the United States shareholder must recognize gain equal to the difference between the amount of the basis and the reduction.
>
> When applying the framework laid out above in the context of section 965, there are several places where additional rules were needed. Under section 965(b)(4)(A), earnings of DFICs are treated as previously taxed E&P ("section 965(b) previously taxed earnings and profits") if a deficit is used to offset those earnings for purposes of determining the United States shareholder's

---

[4] Contrary to FedEx's characterization (at 12), these CFC deficits are not "lost." They were used and provided a benefit – shielding Offset Earnings from tax.

[5] Of course, there would be no future potential tax if the taxpayer simply decides not to sell CFC shares or not to make an excessive distribution. Those also are at the taxpayer's unfettered choice.

inclusion under section 965(a). However, the statute does not provide for a basis increase to the stock of the DFIC, even though other provisions of the Code still require a basis decrease when the section 965(b) previously taxed earnings and profits are distributed. Thus, under the statute, there could be a disincentive to distribute section 965(b) previously taxed earnings and profits because the United States shareholder has to reduce its basis in its CFC, and in some instances, recognize gain, because the initial offsetting basis increase did not occur.

Under section 965(b)(4)(B), the deficit in E&P in an E&P deficit foreign corporation is generally eliminated to the extent that it is used to offset earnings of a DFIC. The increase in E&P without a corresponding decrease in the basis of the E&P deficit foreign corporation introduces a distortion into the system because it preserves a loss in the stock of the entity even though the loss in earnings and profits has been utilized and eliminated.

84 FR 1838-01, *1869-70 (Feb. 5, 2019). Thus, the regulation provides that a U.S. shareholder may increase its basis in a DFIC (a CFC with Offset Earnings) but then must also decrease its basis in an E&P deficit corporation in an equal amount, to maintain consistency and account for the valuable use of the E&P deficit corporation's deficit by the DFIC. (See also U.S. Br. pp. 6-8).

FedEx does not challenge the validity of this regulation, of course. Its bare assertion (at 15) that "the regulation does not align with the statute" is thus irrelevant.

Additionally, FedEx's complaint (at 15) "that [the] regulatory basis adjustment is illusory, and it doesn't prevent double taxation []. It just moves tax basis from one entity to another []" ignores that that movement is entirely appropriate, given the use of one entity's E&P deficit by another. Indeed, there should be no net increase in a U.S. shareholder's basis in its CFCs based on Offset Earnings – such an increase under § 961(a) is allowed when earnings are *actually* included in income under § 951 and face U.S. tax.

Finally, FedEx's example (at 14) is just incomplete and non-sensical from a mathematical standpoint. To illustrate this point, a modification is needed to FedEx's example because it does

13

not posit what the basis in CFC2 is. For ease of presentation, we will assume that it is $50.[6]

Thus, prior to the transition tax, the taxpayer has a basis in CFC1 of $100 and in CFC2 of $50,

for a total of $150. By operation of § 965, CFC1 has $50 of § 965(a) previously taxed earnings

and profits and $50 of § 965(b) previously taxed earnings and profits (the latter also referred to

as Offset Earnings). (See also U.S. Br. pp. 7-8). At this point, the taxpayer has a basis in CFC1 of

$150 and in CFC2 of $50, for a total basis of $200. Under the FedEx example, CFC1 then

distributes $100 to its parent, reducing its basis to $50. The remaining combined basis is $100

($50 in CFC1 and $50 in CFC2). The basis election allows the U.S. taxpayer to shift the $50 in

basis from CFC2 to CFC1, after which the combined basis is still $200 before the distribution

($200 in CFC1 and $0 in CFC2) and $100 after ($100 in CFC1 and $0 in CFC2). Now, if the

U.S. taxpayer wants to sell CFC1 for $100 or have CFC1 make a $100 distribution, there is no

tax because of the remaining $100 basis. Similarly, CFC2 has no earnings that could be subject

to U.S. tax. Thus, it is non-sensical to say that the adjustment is illusory and does not prevent

double taxation—it clearly prevents double taxation.

## V.       TREASURY REGULATION § 1.965-5(c)(1)(ii) IS VALID

As we noted in our opening brief, if this Court were to find that the relevant statutory

provisions do not unambiguously speak to the precise question at issue (*i.e.*, availability of

foreign tax credits on Offset Earnings), Treasury Regulation § 1.965-5(c)(1)(ii) is clearly a

permissible construction of the relevant provisions. FedEx again makes no effort to demonstrate

that the regulation is not a permissible construction of the statute where the statue is ambiguous.

It has, therefore, waived any *Chevron* step two argument. *Chevron, U.S.A., Inc. v. Nat. Res. Def.*

---

[6] FedEx's example implicitly assumes that the taxpayer has at least a $50 basis in CFC2 since the amount of the adjustment ($50), by rule, is the lesser of the E&P deficit ($50) or the basis in the E&P deficit foreign corporation (unstated).

*Council, Inc.*, 467 U.S. 837 (1984). *See e.g.*, *National Cable & Telecomms. Asssoc. V. Brand X Internet Servs. et. al. v. United States*, 562 U.S. 44, 56-57 (2011) ("Chevron requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation."). And FedEx concedes that if the regulation is valid, its credit claim fails.

FedEx instead seems to contend that the Court should conduct some sort of *Chevron* step two analysis without giving any deference to Treasury's interpretation. FedEx (at 3) now argues that where an agency erroneously concludes that its decision is compelled by unambiguous statutory language, no deference is owed.[7] It relies upon inapposite opinions in *PDK Laboratories, Inc. v. United States Drug Enforcement Agency*, 362 F.3d 786, 800 (D.C. Cir. 2004) and *AFGE Local 1592 v. Federal Labor Relations Authority*, 836 F.3d 1291 (10th Cir. 2016).[8]

The principal problem with FedEx's new argument is that the predicate is missing. Nowhere did *Treasury* say that its hands were tied – that unambiguous statutory language compelled the regulation it issued. *See, e.g., PDK Laboratories, Inc. v. United States Drug Enforcement Agency*, 362 F.3d 786, 800 (D.C. Cir. 2004) (Robert, J. concurring) (the "Administrator's decision cannot be fairly read as reflecting the view that he felt compelled to read the statute as he did as opposed to simply adopting the construction that seemed most

---

[7] In its Complaint, FedEx contends the opposite. FedEx alleges that Treasury was "dissatisfied with Congress's policy choice" and "replaced clear legislative text…." (ECF No. 1, ¶ 8).

[8] In neither case did the court proceed to examine the agencies' decisions under *Chevron* step two. Each remanded the matter to the agency to "interpret the statute anew free from its view that Congress had compelled its decision." *AFGE*, 836 F.3d at 1296. Neither involved a regulatory challenge like that here. *AFGE* involved a Federal Labor Relations Authority decision; *PDK* concerned a DEA order.

reasonable to him, and explaining his reasons for that.") As the preamble explained with respect

to § 1-965-5(c)(1)(ii):

> As a policy matter, this exclusion eliminates the need for a foreign
> tax credit. The purpose of the foreign tax credit is to mitigate
> double taxation by allowing foreign income taxes to reduce the
> U.S. tax that would otherwise be imposed on foreign source
> income. Allowing foreign income taxes imposed on income that is
> not subject to U.S. tax by reason of section 965(b) to be credited
> against U.S. tax on unrelated income would confer a windfall
> double benefit for taxpayers with section 965(b) previously taxed
> earnings and profits.

> As a technical matter, section 965(b)(4)(A) treats section 965(a)
> earnings amounts offset by an aggregate foreign E&P deficit as
> previously included in income under section 951(a) "for purposes
> of applying section 959." Accordingly, section 965(b) previously
> taxed earnings and profits are treated as previously taxed E&P
> resulting from a section 951(a) inclusion, despite never actually
> having been included in U.S. taxable income. Under section
> 960(a)(1), a domestic corporate shareholder that includes an
> amount in income under section 951(a) is deemed to have paid a
> ratable portion of the foreign corporation's foreign income taxes at
> the time of the income inclusion. Amounts treated as previously
> taxed E&P resulting from an income inclusion under section
> 951(a) should similarly be treated as having resulted in foreign
> taxes deemed paid under section 960(a)(1).

84 F.R. 1838-01,1857 (2019). Thus, in contrast to a situation where an agency engages in no

analysis and expressly states that it could not do so, here, the promulgating agency stated that,

"[a]fter consideration of the comments, the Treasury Department and the IRS maintain the rule

in the final regulations *based upon both the technical analysis of the relevant sections of the*

*Code and the underlying policy*." 84 F.R. 1838-01,1858 (2019) (Emphasis added).

That careful process is entitled to deference. As the Supreme Court said in *Chevron*:

> [Deference] has been consistently followed by this Court whenever
> decision as to the meaning or reach of a statute has involved
> reconciling conflicting policies, and a full understanding of the
> force of the statutory policy in the given situation has depended on
> more than ordinary knowledge respecting matters subjected to
> agency regulations. (*Id*. at 844).

The government's necessary consideration of *Chevron* step one here does not change the deference to which *Treasury's* decision is entitled. *See, e.g., Whirlpool Financial Corp. & Cons. Subs. v. Commissioner*, 154 T.C. 142 (Tax Ct. 2020) (Tax Court addressing both stand-alone statutory argument and regulation validity), *aff'd* 19 F.4th 944 (2021). The government has not argued that Treasury's hands were tied or that issuance of the regulation did not involve policy considerations. The government argued that disallowance of FedEx's credit claim is the best interpretation of the statutory provisions and consistent with the policy underlying foreign tax credits – and that the regulation reached the same conclusion. FedEx's deference argument is a red herring meant to distract from its inability to demonstrate that the regulation is not a permissible construction of the statute.

## VI.    FEDEX's ONE REMAINING PROCEDURAL OBJECTION FAILS

FedEx's seems to have pared back its procedural challenges to an allegation (at 18) that Treasury failed to respond to a comment by the Alliance for Competitive Taxation. But Treasury did respond. Treasury explained that, for purposes of §§ 959 and 960(a)(3), Offset Earnings are *treated* as having previously been included in income under § 951, even though they "never actually" were. 85 F.R. 1838-01, 1857.  That is a direct response to ACT's comment that the regulation should be withdrawn because "there was in fact no [prior] subpart F inclusion…." FedEx again conflates a procedural objection with its disagreement with Treasury's decision.

Moreover, the APA does not require that Treasury reference each specific comment in its response or respond to every comment that it receives. *Thompson v. Clark*, 741 F.2d 401, 408 (D.C. Cir. 1984); *American Great Lakes Ports Ass'n v. Zukunft*, 296 F. Supp. 3d 27, 53 (D.D.C. 2017). The APA requires only that Treasury address the significant and relevant concerns raised

in the comments. *See U.S. Satellite Broad. Co. Inc. v. FCC*, 740 F.2d 1177,1188 (D.C. Cir.

1984); *Oakbrook Land Holdings,* 28 F.4th at 714. Treasury did that.

## <u>CONCLUSION</u>

For all the above reasons, this Court should grant partial summary judgment against

FedEx and in favor of the United States on Count II of FedEx's Complaint.

Dated: November 10, 2022               DAVID A. HUBBERT
                                       Deputy Assistant Attorney General

                                       *s/ Cory A. Johnson*
                                       Cory A. Johnson
                                       Ill. Bar No. 6211233
                                       Senior Litigation Counsel
                                       Jan M. Geht
                                       Special Trial Attorney
                                       Robert J. Atras
                                       Elisabeth M. Bruce
                                       Trial Attorneys
                                       Tax Division
                                       U.S. Department of Justice
                                       P.O. Box 14198, Ben Franklin Station
                                       Washington, D.C. 20044
                                       202-307-3046 (Johnson)
                                       651-361-1823 (Geht)
                                       202-598-3738 (Atras)
                                       202-616-1325 (Bruce)
                                       Fax: 202-514-9440
                                       Cory.A.Johnson@usdoj.gov
                                       Jan.M.Geht@irscounsel.treas.gov
                                       Robert.J.Atras@usdoj.gov
                                       Elisabeth.M.Bruce@usdoj.gov