**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| FEDEX CORPORATION and SUBSIDIARIES | ) ) ) ) |
| *Plaintiff,* | ) ) |
| v. | ) ) |
| UNITED STATES OF AMERICA, | )   Civil Case No. 2:20-cv-02794 )   The Honorable Samuel H. Mays, Jr. |
| *Defendant.* | ) ) ) |

**PLAINTIFF'S SURREPLY**

The government's Reply mischaracterizes FedEx's position and the Code.[1]

**1.** The government (at 14) claims that FedEx "makes no effort to demonstrate that the regulation is not a permissible construction of the statute" and has "waived any *Chevron* step two argument." To the contrary, FedEx has repeatedly emphasized the flaws and inconsistencies in the statutory arguments on which the Final Rule is supposedly premised. *See* Pl. Op. Br. 15-26 (explaining why the Final Rule is "contrary to statute," mirroring the language of *Chevron* step two, which rejects agency interpretations that are "manifestly contrary to statute"). FedEx did not waive anything. *Id*. at 15 n.12 (stating that "[e]ven if the Code were ambiguous … the result would be the same under *Chevron*'s second step").

This entire debate stems from the government taking liberties with *Chevron*. After initially arguing that §965(b)(4)(A) was "unambiguous" (G. Op. Br. 20-22) the government now contends that the Final Rule is the "most reasonable" interpretation of §965(b)(4)(A) and a "permissible construction" of the statute. G. Rep. Br. 1, 4. These arguments necessarily invoke ambiguity.

---

[1] FedEx does not concede the government's other arguments and stands ready to refute each one in oral argument if the Court deems oral argument necessary.

*Chevron USA Inc. v. NRDC, Inc.*, 467 U.S. 837, 843 (1984) (at step two, "the question for the court is whether the agency's answer is based on a permissible construction of the statute"). Yet the government makes its plea for deference by contending that DOJ argued the statute was unambiguous even though the Agencies never said as much. G. Rep. Br. 15-16. The Justice Department speaks for the Agencies. 28 U.S.C. §516 (the DOJ represents the US and federal agencies in litigation); 28 C.F.R. §0.70(a). And the DOJ and the Agencies must sing from the same hymnal. *See Myers v. United States*, 272 U.S. 52, 155 (1926) ("the President … may properly supervise and guide [executive branch employees] to secure … unitary and uniform execution of the laws").

At no point did the Agencies suggest that §965(b)(4)(A) was ambiguous, and at no point (before its Reply brief) did the government embrace a position that the statute was ambiguous. Moreover, the government has never—during the rulemaking or this litigation—identified any ambiguous language in the statute. Statutory ambiguity is a necessary prerequisite for deference. *Arangure v. Whitaker*, 911 F.3d 333, 337-38 (6th Cir. 2018) ("[i]f the statute is ambiguous … the court moves to step two"). "Chevron step 2 deference is reserved for those instances *when an agency recognizes that the Congress's intent is not plain from the statute's face*." *Peter Pan Bus Lines, Inc. v. Fed. Motor Carrier Safety Admin.*, 471 F.3d 1350, 1354 (D.C. Cir. 2006) (emphasis added). That never happened here.

In addition, the government mischaracterizes the *Chevron* inquiry by arguing that the statute is complex and that "it takes expertise and understanding of the policy context to determine the meaning of § 965(b)(4)(A)." G. Rep. Br. 7. The court—not the agency—determines whether a statute is ambiguous. *Arangure*, 911 F.3d at 338 ("*Chevron*'s first step is grounded in a recognition that '[t]he judiciary is the final authority on issues of statutory construction.'") (citation

2

omitted). Complexity is not ambiguity. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019) ("hard interpretive conundrums, even relating to complex rules, can often be solved"). Nor is alleged agency "expertise" a factor in determining ambiguity; that factor—which is not a traditional tool of statutory construction—comes into play only at step two. *Chevron*, 467 U.S. at 842-43. Likewise "[a] mere disagreement among litigants over the meaning of a statute does not prove ambiguity; it usually means that one of the litigants is simply wrong." *Bank of Am. Nat. Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 461 (1999) (Thomas, J., concurring); *Skyworks, Ltd. v. CDC*, 524 F. Supp. 3d 745, 759 (N.D. Oh. 2021) (same). At its core, the government's distortion of *Chevron* is a naked attempt to inject the Agencies' policy preferences into this Court's independent step one analysis.

2.      The government's Reply also mischaracterizes the Code's foreign-tax-credit framework, contending that "[t]here is no 'precise, unambiguous statutory language' directing that a U.S. shareholder should be allowed to claim foreign tax credits on Offset Earnings." G. Rep. Br. 10 (citation omitted). To the contrary, the Code provides for direct credits (in §901) and indirect credits (in §902) with a limitation based on the taxpayer's foreign-source income (§904). At that point, for foreign taxes paid by CFCs, the only question is whether the underlying earnings were included in income under Subpart F (under §951(a)) or distributed by the foreign corporation to the US shareholder. Section 960(a)(1) allows a US shareholder to claim credits for foreign taxes that its foreign subsidiary paid if the earnings with which the foreign taxes are associated were actually included in income under §951(a). If the earnings were not actually included in income, then §960(a)(3) allows credits for previously uncredited foreign taxes associated with a distribution of earnings that were previously included in income under §959. Under this framework, Congress has to affirmatively disallow credits—as it has always done in specific Code

sections and as it did in §965(g)—in order for them to be lost. Pl. Op. Br. 9-12. It didn't here, so they weren't.

Faced with this framework, the government now argues that §960(a)(3)'s explicit reference to §959 means that Offset Earnings "are treated as having been previously included in income under § 951" and thus "the related foreign taxes are treated as previously deemed paid, and unavailable to be credited again when the earnings are distributed." G. Rep. Br. 3. Like its prior arguments, this internally inconsistent "interpretation" of §965(b)(4)(A) rests on sometimes applying §959, sometimes not. Specifically, it conjures up a scenario where §965(b)(4)(A) treats Offset Earnings as being included in income under §959 for purposes of §960(a)(3) at some unspecified point in the past even though Offset Earnings weren't ever actually included in income under §951 and credits were never actually allowed at any prior date under §960(a)(1). Schrödinger's Cat Part III.

Respectfully submitted,

Richard R. Roberts
Peter D. Blumberg
FedEx Express
3620 Hacks Cross Road
Building B, 3rd Floor
Memphis, TN 38125
Tel:    (901) 434-8489
richard.r.roberts@fedex.com
peter.blumberg@fedex.com

*s/ Joseph B. Judkins*
Joseph B. Judkins
Tennessee BPR No. 033183
George M. Clarke
Cameron C. Reilly
Baker & McKenzie LLP
815 Connecticut Avenue, N.W.
Washington, DC  20006
Tel:    (202) 452-7000
joseph.judkins@bakermckenzie.com
george.clarke@bakermckenzie.com
cameron.reilly@bakermckenzie.com

Attorneys for Plaintiff, FedEx

Dated:  November 23, 2022

4

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 23, 2022, I served a copy of the foregoing document by filing it through the Court's electronic filing (CM/ECF) system, which will send an electronic copy to all counsel of record.

<u>*s/ Joseph B. Judkins*</u>
JOSEPH B. JUDKINS
Attorney for Plaintiff, FedEx
