**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | |
|---|---|
| **FEDEX CORPORATION AND SUBSIDIARIES,** ) ) ) | |
| **Plaintiff,** ) ) | |
| **v.** ) ) | **No. 20-cv-2794** |
| **UNITED STATES OF AMERICA,** ) ) | |
| **Defendant.** ) ) | |

**ORDER ON CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

This is a tax case. Plaintiff FedEx Corporation and Subsidiaries ("FedEx") argues that the government wrongly denied it certain foreign tax credits and seeks a refund of more than $89 million.[1] (ECF No. 1 at PageID 30.) Defendant, the United States, contends that the tax code and agency regulations show that FedEx is not entitled to credits beyond what it has already received. The parties have filed cross-motions for partial summary judgment and have completed subsequent rounds of briefing.[2] (ECF Nos. 42-45, 48.) The parties agree that, for purposes of those motions, there are no disputed issues of

---

[1] FedEx Corporation and its U.S. subsidiaries filed a consolidated federal income tax return in the relevant years and will be treated as a single plaintiff. (ECF No. 42-1 at ¶ 15.)

[2] The parties seek summary judgment only on Count II of FedEx's complaint and agree that Count I cannot be resolved at this stage. (ECF No. 42-1 at ¶¶ 25-26; No. 43-1 at PageID 847.)

material fact. There are only questions of law. The motions are ripe for decision.

Some background is required to understand this case. Part I of this Order will set out, in general terms, how the United States taxes foreign income and how recent changes in law led to FedEx and the government's dispute. The Court will consider jurisdiction and the standard of review in Parts II and III. The essential statutory and regulatory provisions will be examined in Part IV.

For the reasons discussed below, the government's regulation is contradicted by the plain terms of the tax code. FedEx is entitled to partial summary judgment as a matter of law, and its Motion for Partial Summary Judgment, ECF No. 42, is GRANTED. The government's Motion for Partial Summary Judgment, ECF No. 43, is DENIED.

## I. Background

In the decades preceding the passage of the Tax Cuts and Jobs Act ("TCJA"), Pub. L. No. 115-97, 131 Stat. 2054 (2017), the United States employed a "worldwide" system of taxation. Moore v. United States, 36 F.4th 930, 933 (9th Cir. 2022). Under that system, U.S. citizens and corporations were taxed on all income, regardless of whether it was generated domestically or abroad. Id. When U.S. enterprises owned foreign corporations, earnings generally were not taxed (by the United States, at

least) until they were distributed from the foreign corporation to the U.S. owner. Id. That created strong incentives for multinational companies to retain wealth overseas. By the simple expedient of failing to distribute earnings from the foreign corporation to the United States, a business could delay, perhaps indefinitely, paying the tax it would otherwise owe. Id.

Congress first responded in 1962 by enacting Subpart F of the Internal Revenue Code. Id.; 26 U.S.C. §§ 951-965. Subpart F required U.S. corporations to report as immediately taxable income certain types of earnings by their foreign subsidiaries,[3] even if those moneys had not yet been distributed to the U.S. parent.[4] Moore, 36 F.4th at 933; 26 U.S.C. § 951. Although Subpart F reduced the avoidance of taxes by keeping funds overseas, it left out certain types of income, and U.S. businesses continued to retain large sums abroad. See H.R. Rep. No. 115-409, at 375 (2017) (noting that U.S. companies had "accumulated significant untaxed and undistributed foreign earnings").

---

[3] Technically, a "subsidiary" is a corporation in which another company has a controlling ownership share. Corporation, Black's Law Dictionary (11th ed. 2019). For convenience, however, this Order uses "subsidiary" in a more general sense to include foreign corporations in which U.S. shareholders have only a minority stake.

[4] Once a certain sum had been taxed by being included in income under Subpart F, it was shielded by 26 U.S.C. § 959 from being included in income again when repatriated. As explained in more detail later, section 959 is integral to the parties' arguments.

Congress took further action by passing the TCJA in 2017. Moore, 36 F.4th at 933. That Act, among other changes, replaced the worldwide system of corporate taxation with a "territorial" system. Id. Under the territorial system, when U.S. corporations receive dividends from foreign corporations, the domestic corporation receives a tax deduction for the portion of the dividend derived from foreign sources. Id.; 26 U.S.C. § 245A(a). In other words, foreign-source earnings can be brought to the United States effectively tax-free, and U.S. corporations are (with exceptions) taxed only on their domestically sourced income. Moore, 36 F.4th at 933.

Although the change to a territorial system eliminated businesses' incentives to retain wealth abroad, it created a new problem. If the territorial system's deductions for foreign-sourced income were applied to U.S. enterprises' pre-TCJA foreign holdings, many corporations would receive an unearned windfall by escaping the tax they would have owed under the worldwide system. See 26 U.S.C. § 245A(a); H.R. Rep. No. 115-409, at 375. Congress addressed this situation by creating a one-time transition tax. Moore, 36 F.4th at 933. Under the transition tax, U.S. corporations were required, shortly after the TCJA's passage, to include in income the accumulated undistributed earnings of their foreign subsidiaries. Id.; 26 U.S.C. § 965(a). That included income was subject to a lower tax rate of 15.5%

4

for cash and 8% for other assets. Moore, 36 F.4th at 933; see also 26 U.S.C. § 965(c).

In establishing the transition tax, Congress allowed for the fact that many multinational corporations had foreign subsidiaries that had lost money for years. See 26 U.S.C. § 965(b). Before including the accumulated earnings of their overseas subsidiaries in income, U.S. corporations were allowed to offset those gains with the losses of their unprofitable foreign subsidiaries. Id. The amount of income subject to the transition tax was thus decreased. Id. For the sake of simplicity, the Court will refer to the portion of earnings from profitable foreign corporations that are offset by losses from other foreign corporations as "Offset Earnings."[5] Offset Earnings can be repatriated to the United States without ever being included in income.[6] 26 U.S.C. §§ 959, 965(b). The parties agree about the principles and rules set out above.

_____

[5] The government regulation in dispute in this case refers to those earnings as "§ 965(b) previously taxed earnings and profits." (ECF No. 43-1 at PageID 853.)

[6] As an illustration of these principles: Parent A, a domestic corporation, wholly owns Subsidiary B and Subsidiary C, which are both foreign corporations. Subsidiary B has accumulated, undistributed profits of $100, while Subsidiary C has aggregate losses of $30. Under section 965, Parent A reports $70 in income. 26 U.S.C. § 965(b). That $70 is subject to the 15.5% or 8% transition tax rates, depending on whether the undistributed holdings were in cash or other assets. See Moore, 36 F.4th at 933. The other $30 earned by Subsidiary B are Offset Earnings and may be brought to the United States without being reported as income. See 26 U.S.C. §§ 959, 965(b).

The fundamental dispute between the parties is whether FedEx is eligible to receive tax credits for foreign taxes paid on its Offset Earnings. As a factual matter, the parties agree that FedEx paid at least some foreign taxes on its Offset Earnings. (ECF No. 42-1 at ¶¶ 22-23.) FedEx argues it is entitled to a U.S. credit for those foreign taxes, pointing principally to the interaction of Internal Revenue Code sections 959, 960, and 965. (ECF No. 42 at PageID 247-49.) The government responds that the tax code actually forbids tax credits for Offset Earnings and that, even if the statutory language were ambiguous, the government's regulation fills the gap by squarely prohibiting any such credit. (ECF No. 43-1 at PageID 863-64.) The government adds that the foreign tax credit was created to alleviate the problem of double taxation, meaning that it would be inappropriate to give a credit for Offset Earnings, which are not subject to U.S. tax in the first place. (Id. at PageID 850, 854-55.)

## II. Jurisdiction

FedEx claims entitlement to a tax refund under the Internal Revenue Code. Under 28 U.S.C. § 1346(a), "district courts shall have original jurisdiction" over "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected." FedEx properly filed the administrative claim that

6

is jurisdictionally required before filing suit. ECF No. 22 at ¶ 17; see Ednacot v. Mesa Med. Grp., PLLC, 790 F.3d 636, 637 (6th Cir. 2015) (stating that administrative claim for refund is a jurisdictional prerequisite to suit under 26 U.S.C. § 7422). The Court has subject matter jurisdiction.

## III. Standard of Review

Under Federal Rule of Civil Procedure 56, a court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "In assessing the record to determine whether there is any genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the non-moving party." Wathen v. Gen. Elec. Co., 115 F.3d 400, 403 (6th Cir. 1997). The summary judgment standard "do[es] not change simply because the parties present cross-motions." Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991). The district court must "evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Id. (quoting Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

## IV. Analysis

### A. The Government's Regulation and the <u>Chevron</u> Framework

FedEx argues that the plain text of the tax code entitles it to a refund. (ECF No. 42 at PageID 247.) The government responds that the code clearly disallows the credits claimed and that, even if the statute were ambiguous, the government's regulation resolves the ambiguity in the government's favor. (ECF No. 43-1 at PageID 846.) The regulation, promulgated by the IRS and the Department of the Treasury, provides in pertinent part that "[n]o credit is allowed under section 960(a)(3) or any other section for foreign income taxes that would have been deemed paid under section 960(a)(1) with respect to the portion of a section 965(a) earnings amount that is reduced under § 1.965-1(b)(2) or § 1.965-8(b) [i.e., for foreign taxes on Offset Earnings]." 26 C.F.R. § 1.965-5(c)(1)(ii) (2022). FedEx does not dispute that, if the regulation is valid, it is not entitled to any refund under Count II of its complaint. (ECF No. 42-1 at ¶¶ 24, 26.) For purposes of these summary judgment cross-motions, the question before the Court is whether the government's regulation should be upheld.[7]

---

[7] Whether foreign tax credits on Offset Earnings are allowable appears to be an issue of first impression. Neither party cites a case directly on point. FedEx cites <u>Ingersoll Rand Co. & Subsidiaries v. United States</u>. Although the district judge in that case ruled from the bench that the tax code allows foreign tax credits on tax-exempt export trade income, ECF No. 42-2 at PageID 411-12, the case turned on significantly different regulatory language, <u>see</u> Cross-Motion for

The validity of an agency regulation interpreting a statute is addressed under the two-step Chevron framework. See generally Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837 (1984). Under Chevron, the court first asks "whether Congress has directly spoken to the precise question at issue." Metro. Hosp. v. U.S. Dep't of Health & Hum. Servs., 712 F.3d 248, 254 (6th Cir. 2013) (quoting Chevron, 467 U.S. at 842). At this first step, the court uses all of the ordinary tools of statutory construction to interpret the statute and does not defer to the agency's views. Arangure v. Whitaker, 911 F.3d 333, 337-38 (6th Cir. 2018). If the statute is unambiguous, the inquiry is at an end; all that remains is for the court to enforce the congressional command. Metro. Hosp., 712 F.3d at 254. Some statutes, however, are ambiguous -- that is, they are "subject to more than one reasonable interpretation." N. Fork Coal Corp. v. Fed. Mine Safety & Health Rev. Comm'n, 691 F.3d 735, 740 (6th Cir. 2012). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Donovan v. FirstCredit, Inc., 983

---

Summary Judgment and Response to Ingersoll's Motion at 13-14, Ingersoll Rand Co. & Subsidiaries v. United States, No. 3:16-cv-289 (W.D.N.C. Mar. 2, 2018), ECF No. 34. Ingersoll Rand carries little weight here.

F.3d 246, 256 (6th Cir. 2020) (quoting <u>Roth v. Guzman</u>, 650 F.3d 603, 614 (6th Cir. 2011)).

If the statute is ambiguous, the court proceeds to <u>Chevron</u> step two. <u>Metro. Hosp.</u>, 712 F.3d at 254-55. At this step, the court defers to the agency's expertise and upholds the regulation so long as it is a "permissible" interpretation of the statute. <u>Id.</u> (quoting <u>Chevron</u>, 467 U.S. at 843). An agency's interpretation is permissible if it is "within the bounds of reasonable interpretation," <u>Arangure</u>, 911 F.3d at 338 (quoting <u>City of Arlington v. FCC</u>, 569 U.S. 290, 296 (2013)), and not "arbitrary, capricious, or manifestly contrary to the statute," <u>Metro. Hosp.</u>, 712 F.3d at 265 (quoting <u>Chevron</u>, 467 U.S. at 844).

### B. <u>Chevron</u> Step One: Statutory Interpretation

#### 1. The Statutory Framework

The analysis begins with the provisions that control the amounts corporations must report as income. The version of Internal Revenue Code section 951 in effect at the relevant time provided that:

> [i]f a foreign corporation is a controlled foreign corporation for an uninterrupted period of 30 days or more during any taxable year, every person who is a United States shareholder . . . of such corporation . . . shall include in his gross income . . . his pro rata share . . . of the corporation's subpart F income for such year . . . .

26 U.S.C. § 951(a)(1) (2016).[8] Section 951 was the operative portion of Subpart F, because it required domestic corporations to include in income the Subpart F earnings of their foreign subsidiaries. Id.

Subpart F, as previously discussed, did not encompass all the earnings that foreign subsidiaries made, leading to the accumulation of substantial undistributed profits overseas. See H.R. Rep. No. 115-409, at 375. After passage of the TCJA, section 965 addressed those undistributed profits by mandating they be treated as Subpart F income (and thus includable in income under section 951). Section 965(a) provides that:

> [i]n the case of the last taxable year of a deferred foreign income corporation [i.e., a profitable foreign subsidiary] which begins before January 1, 2018, the subpart F income of such foreign corporation . . . shall be increased by the greater of --
> (1) the accumulated post-1986 deferred foreign income of such corporation determined as of November 2, 2017, or
> (2) the accumulated post-1986 deferred foreign income of such corporation determined as of December 31, 2017.

26 U.S.C. § 965(a).

Section 965 also provides for Offset Earnings. In subsection (b)(1), the statute goes on to say that:

---

[8] In some instances, pre-TCJA statutory language applies to FedEx's claim for a refund for fiscal year 2018. See Tax Cuts and Jobs Act of 2017, Pub. L. No. 115-97, § 14215, 131 Stat. 2054, 2218 (setting effective date); ECF No. 42 at PageID 248-49 (citing to 2016 tax code); No. 43-1 at PageID 857 n.8. Where pre-TCJA language applies, this Order cites to the 2016 version of the Internal Revenue Code.

> [i]n the case of a taxpayer which is a United States
> shareholder with respect to at least one deferred
> foreign income corporation and at least one E&P deficit
> foreign corporation [i.e., an unprofitable foreign
> subsidiary], the amount which would (but for this
> subsection) be taken into account under section
> 951(a)(1) by reason of subsection (a) as such United
> States shareholder's pro rata share of the subpart F
> income of each deferred foreign income corporation
> shall be reduced by the amount of such United States
> shareholder's aggregate foreign E&P deficit . . . .

26 U.S.C. § 965(b). In other words, subsection (a) includes profitable foreign subsidiaries' earnings in the U.S. parent's income, while subsection (b)(1) offsets the amount included by the aggregate losses of unprofitable subsidiaries. Id. § 965(a)-(b). The amounts earned by the profitable subsidiaries, but not included in the parent's income because of subsection (b)(1), are Offset Earnings.

Once a foreign subsidiary's profits are included in the U.S. parent's income under section 951, it would be problematic if the same earnings were included in income again when the funds were actually sent to the United States. Section 959 prevents double inclusion, providing that:

> the earnings and profits of a foreign corporation
> attributable to amounts which are, or have been,
> included in the gross income of a United States
> shareholder under section 951(a) shall not, when --
>     (1) such amounts are distributed to, or
>     (2) such amounts would, but for this subsection,
>     be included under section 951(a)(1)(B) in the
>     gross income of,
> such shareholder . . . be again included in the gross
> income of such United States shareholder . . . .

12

26 U.S.C. § 959(a).

The foregoing statutory language creates another potential problem. Section 959 permits funds to be distributed to the United States without additional tax if those funds have already been included in income under section 951. Id. Offset Earnings, however, were never included in income. Id. § 965(b). Absent some other statutory language, Offset Earnings would be subject to tax once repatriated, an outcome that would effectively perpetuate the pre-TCJA status quo for corporations holding their accumulated earnings overseas.

Section 965(b)(4)(A) addresses this situation by providing that Offset Earnings are not included in income once repatriated. Specifically, the statute states that:

> [f]or purposes of applying section 959 in any taxable year beginning with the taxable year described in subsection (a), with respect to any United States shareholder of a deferred foreign income corporation, an amount equal to such shareholder's reduction under [section 965(b)(1)] which is allocated to such deferred foreign income corporation under this subsection shall be treated as an amount which was included in the gross income of such United States shareholder under section 951(a).

26 U.S.C. § 965(b)(4)(A). Thus, section 959 excludes from income earnings that have already been included under section 951, and section 965(b)(4)(A) extends that exclusion to Offset Earnings by directing that Offset Earnings be treated as if they were previously included by section 951. Id. §§ 959, 965(b)(4)(A).

The parties agree that, under sections 959 and 965(b)(4)(A), Offset Earnings are not included in income when repatriated. (ECF No. 42 at PageID 246-48; No. 43-1 at PageID 855-56.) They disagree, however, about how section 965(b)(4)(A) affects FedEx's claim to foreign tax credits.

Tax credits are governed by statute. Section 901 is the foundation, providing a credit in the amount of "the taxes deemed to have been paid under sections 902 and 960." 26 U.S.C. § 901 (2016). Section 902 specifies that:

> a domestic corporation which owns 10 percent or more of the voting stock of a foreign corporation from which it receives dividends in any taxable year shall be deemed to have paid the same proportion of such foreign corporation's post-1986 foreign income taxes as --
> (1) the amount of such dividends . . . , bears to
> (2) such foreign corporation's post-1986 undistributed earnings.

26 U.S.C. § 902(a) (2016).[9] Thus, when a U.S. corporation receives a dividend from its foreign subsidiary, section 902 treats the U.S. parent as having paid the foreign taxes imposed on the subsidiary, allowing the parent to claim a credit under section 901. Id.

_____

[9] Before the TCJA, corporations had to keep track of their post-1986 foreign taxes and undistributed earnings. 26 C.F.R. § 1.902-1(a)(8)-(9). When a foreign subsidiary distributed some of its earnings, the domestic parent could claim a credit for foreign taxes paid. Id. The foreign subsidiary's pool of post-1986 earnings and taxes would then be reduced by the appropriate amounts (regardless of whether the U.S. parent actually claimed a credit for the foreign taxes paid). Id.

Section 960(a) provided further guidance as to how and when section 902 was to be applied. Although lengthy, the version of section 960(a) in effect at the relevant time is crucial to the parties' dispute and is set out in full. Section 960(a) provided:

(a) Taxes paid by a foreign corporation.

(1) Deemed paid credit. For purposes of subpart A of this part, if there is included under section 951(a) in the gross income of a domestic corporation any amount attributable to earnings and profits of a foreign corporation which is a member of a qualified group (as defined in section 902(b)) with respect to the domestic corporation, then, except to the extent provided in regulations, section 902 shall be applied as if the amount so included were a dividend paid by such foreign corporation (determined by applying section 902(c) in accordance with section 904(d)(3)(B)).

(2) Taxes previously deemed paid by domestic corporation. If a domestic corporation receives a distribution from a foreign corporation, any portion of which is excluded from gross income under section 959, the income, war profits, and excess profits taxes paid or deemed paid by such foreign corporation to any foreign country or to any possession of the United States in connection with the earnings and profits of such foreign corporation from which such distribution is made shall not be taken into account for purposes of section 902, to the extent such taxes were deemed paid by a domestic corporation under paragraph (1) for any prior taxable year.

(3) Taxes paid by foreign corporation and not previously deemed paid by domestic corporation. Any portion of a distribution from a foreign corporation received by a domestic corporation which is excluded from gross income under section 959(a) shall be treated by the domestic corporation as a dividend, solely for purposes of taking into account under section 902 any income, war profits, or excess profits taxes paid to any foreign country or to any possession of the United States, on or with respect to the accumulated profits

15

of such foreign corporation from which such
distribution is made, which were not deemed paid by
the domestic corporation under paragraph (1) for any
prior taxable year.

26 U.S.C. § 960(a) (2016).

Prior to the TCJA, the three parts of section 960(a) worked
together harmoniously to create an integrated tax credit scheme.
When a U.S. corporation had to include its foreign subsidiary's
earnings in income under Subpart F and section 951, section
960(a)(1) provided a credit for foreign taxes. When the parent
brought the foreign funds -- which had already been included in
income and for which a credit had already been granted -- to the
United States, section 960(a)(2) denied a second, redundant
credit. Section 960(a)(3) granted a credit for any additional
foreign taxes that had been imposed after the section 951
inclusion and for which no credit had previously been granted.[10]

### 2. The Parties' Arguments and Analysis

FedEx argues that, after the TCJA, section 960(a)(3)
provides a credit for foreign taxes paid on Offset Earnings. As
FedEx points out, Offset Earnings are never included in income
under section 951. See 26 U.S.C. § 965(b)(1). Thus, FedEx never

---

[10] For instance, if a lower-tier foreign subsidiary made a distribution
to an upper-tier foreign subsidiary, a foreign country might impose a
tax on the distribution. If the U.S. parent had previously included
the lower-tier subsidiary's earnings in income and claimed the
corresponding credit, the subsequent, additional tax would be
unaccounted for absent section 960(a)(3). See S. Rep. No. 87-1881, at
94 (1962) (discussing intent to cover subsequently imposed foreign
taxes).

16

received a credit under section 960(a)(1). FedEx says -- and the government agrees -- that Offset Earnings are excluded from income under section 959 when distributed to the United States. Id. § 965(b)(4)(A); ECF No. 43-1 at PageID 857. To reiterate, section 960(a)(3) provides that:

> [a]ny portion of a distribution from a foreign corporation received by a domestic corporation which is excluded from gross income under section 959(a) shall be treated by the domestic corporation as a dividend, solely for purposes of taking into account under section 902 any . . . taxes paid to any foreign country . . . , on or with respect to the accumulated profits of such foreign corporation from which such distribution is made, which were not deemed paid by the domestic corporation under [section 960(a)(1)] for any prior taxable year.

26 U.S.C. § 960(a)(3) (2016). FedEx contends that it is entitled to a credit under the plain terms of the statute because (1) its distributed Offset Earnings were excluded from income under section 959, (2) those Offset Earnings are treated as dividends for which a credit is given under sections 901 and 902, and (3) the foreign taxes associated with the Offset Earnings were not previously deemed paid by section 960(a)(1). Because section 960(a)(3) unambiguously provides a credit, FedEx argues that the government cannot deny that credit by using a regulation to rewrite the statutory text.

The government contends that FedEx's interpretation is contradicted by the text of the statute, or at least is not the

only reasonable interpretation. The government relies on section 965(b)(4)(A), which, again, provides that:

> [f]or purposes of applying section 959 in any taxable year beginning with the taxable year described in subsection (a), with respect to any United States shareholder of a deferred foreign income corporation, an amount equal to such shareholder's reduction under paragraph (1) which is allocated to such deferred foreign income corporation under this subsection [i.e., Offset Earnings] shall be treated as an amount which was included in the gross income of such United States shareholder under section 951(a).

26 U.S.C. § 965(b)(4)(A). Citing the closing language, the government emphasizes that, although Offset Earnings are never actually included in income under section 951, they must be treated as though they were. (See ECF No. 43-1 at PageID 857-58.) The government next relies on section 960(a)(1), which states that "if there is included [in income] under section 951(a) . . . any amount attributable to earnings and profits of a foreign corporation," the domestic taxpayer is deemed to have paid the associated foreign taxes under section 902. 26 U.S.C. § 960(a)(1) (2016); see id. § 902(a) (2016). Because Offset Earnings are deemed to have been included in income, the government says, FedEx's associated foreign taxes were deemed to have been paid already under section 960(a)(1), and section 960(a)(2) specifically states that foreign taxes previously deemed paid

under 960(a)(1) will not be credited again.[11] 26 U.S.C. § 960(a)(2) (2016). Section 960(a)(3) explicitly limits its grant of a credit to foreign taxes "which were not deemed paid by the domestic corporation under [section 960(a)(1)] for any prior taxable year." 26 U.S.C. § 960(a)(3) (2016). Because Offset Earnings are treated as included in income under section 951, the government concludes, they cannot produce a credit under the plain terms of section 960.

FedEx responds that the government ignores crucial limiting language; section 965(b)(4)(A) treats Offset Earnings as included in income "for purposes of applying section 959." 26 U.S.C. § 965(b)(4)(A). Thus, FedEx says, Offset Earnings are treated as previously included in income under section 959, which shields those earnings from inclusion in income when they are distributed. Offset Earnings are not treated as included in income when applying section 960, which controls the grant of tax credits.

FedEx correctly interprets section 965(b)(4)(A). The text of a statute is the starting point for statutory interpretation. Unless otherwise defined, "the words in a statute 'will be interpreted as taking their ordinary, contemporary, common

---

[11] A regulation not challenged by FedEx here also provides that foreign taxes deemed paid cannot be deemed paid a second time even if the U.S. corporation failed to claim a credit the first time the taxes were deemed paid. 26 C.F.R. § 1.902-1(a)(8).

meaning.'" <u>Deutsche Bank Nat'l Tr. Co. v. Tucker</u>, 621 F.3d 460, 462 (6th Cir. 2010) (quoting <u>United States v. Plavcak</u>, 411 F.3d 655, 660 (6th Cir. 2005)). The government's approach contradicts the ordinary and common meaning of the statute's command that Offset Earnings be treated as included in income "[f]or purposes of applying section 959." 26 U.S.C. § 965(b)(4)(A). As courts have recognized, "for purposes of" is limiting language that confines its subject matter to some purposes, but not others. <u>See</u> <u>Stanovsek v. Holder</u>, 768 F.3d 515, 520 (6th Cir. 2014) (describing "for purposes of" as "limiting initial language"); <u>Hughes v. McCarthy</u>, 734 F.3d 473, 485 (6th Cir. 2013) (similar). The statute's prefatory phrase, "[f]or purposes of applying section 959," singles out one particular section for different treatment and thereby demonstrates that section 965(b)(4)(A)'s remaining language should not apply to the remainder of the tax code. 26 U.S.C. § 965(b)(4)(A); <u>see also</u> <u>Eaton Corp. v. Comm'r</u>, 47 F.4th 434, 444 (6th Cir. 2022) ("After all, under the expressio unius canon, '[t]he expression of one thing implies the exclusion of others.'" (alteration in original) (quoting Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts 107 (2012))). Section 965(b)(4)(A) is unambiguous -- by its plain terms, the statute applies to section 959, but not to other sections. The government's attempt to stretch section 965(b)(4)(A) by making it apply to both section 959 and

section 960 contravenes the plain and ordinary meaning of the statute.

The government sees things differently. According to the government, because section 960(a)(3) references section 959, section 959 is necessarily being applied, thereby satisfying the limiting language "[f]or purposes of applying section 959." 26 U.S.C. § 965(b)(4)(A); see ECF No. 45 at 2 ("[Section] 965(b)(4)(A)'s hypothetical treatment of Offset Earnings as previously included in income under § 951 also appl[ies to section 960(a)(3)] . . . because § 960(a)(3)'s application expressly depends on § 959's underlying application . . . ."). In other words, section 965(b)(4)(A) applies to section 960(a)(3) because section 960(a)(3) mentions (or, in the government's argument, applies) section 959.

The government's approach is not persuasive. As an initial matter, an interpretation that uses the mention of section 959 to expand the reach of section 965(b)(4)(A) contradicts the plain meaning of the statute already discussed. Had Congress intended section 965(b)(4)(A) to apply "for purposes of applying sections 959 and 960," it could have said so.

A closer examination of the statute's text yields a similar conclusion. Section 965(b)(4)(A) is relevant "for purposes of applying section 959." 26 U.S.C. § 965(b)(4)(A). To "apply" is "to employ for a limited purpose" or "to put to use with a

21

particular subject matter." Apply, Black's Law Dictionary (11th ed. 2019). The apposition of "applying" with "section 959," as well as the absence of any other specifically named part of the tax code, suggests that section 959 -- and no other section -- is the "limited purpose" or "particular subject matter" to which section 965(b)(4)(A) applies.

The government's argument would also prove too much. The assertion that section 960(a)(3) applies section 959 because it mentions that section lacks a limiting principle. The tax code contains many phrases such as "for purposes of" and "for purposes of applying."[12] If a statute says, "for purposes of section X, Y is true," under the government's approach, Y would be taken as true not only in section X, but also in any other part of the statutory scheme that mentions or invokes section X. That approach would create unintended consequences.

The government's account of the interaction between sections 959 and 960 is not persuasive. Section 960(a)(1) is key. That subsection gives a credit "if there is included under section 951(a) in the gross income of a domestic corporation" any earnings on which foreign taxes have been levied. 26 U.S.C. § 960(a)(1) (2016). It is undisputed that Offset Earnings are

---

[12] In section 965 alone, there are three instances in which the code reads "for purposes of applying [various sections and subsections]," and more than two dozen additional instances of "for purposes of." 26 U.S.C. § 965.

not actually included in income under section 951. (ECF No. 44 at PageID 913; No. 45 at 3-4.) The parties agree that section 960(a)(1) does not provide a credit when the Offset Earnings (but for section 965(b)(1)) would otherwise have been included in income. (ECF No. 44 at PageID 913; No. 45 at 3-4.)

The problem arises from the government's insistence that section 960(a)(3) also denies a credit. Under that subsection, a credit is granted when a U.S. corporation receives a distribution "which is excluded from gross income under section 959(a)," so long as the foreign taxes associated with the distribution "were not deemed paid by the domestic corporation under paragraph (1) [i.e., section 960(a)(1)] for any prior taxable year." 26 U.S.C. § 960(a)(3) (2016). As noted, however, the taxes on FedEx's Offset Earnings are undisputedly not deemed paid by subsection (a)(1) when the Offset Earnings would have (but for section 965(b)(1)) been included in income. The government thus needs subsection (a)(1) to perform a dual and self-contradictory role -- not deeming taxes paid for purposes of subsection (a)(1) itself, but treating taxes as previously deemed paid for purposes of subsection (a)(3).

In effect, the government's argument is twofold. First, it must argue that section 965(b)(4)(A), which treats Offset Earnings as included in income under section 951, is applicable to section 960(a)(3) because section 959 is mentioned in (a)(3).

23

26 U.S.C. § 965(b)(4)(A). That idea has already been rejected for the reasons discussed. Second, the government must extend the same logic to section 960(a)(1). Section 965(b)(4)(A) applies to (a)(3), the government says, and (a)(3) mentions (a)(1), so section 965(b)(4)(A) must apply to (a)(1) as well. The government effectively contends that what goes for subsection (a)(3) must go for subsection (a)(1) as well.

If these two premises were accepted, one could agree with the government and conclude that (1) section 965(b)(4)(A), which treats Offset Earnings as included in income, applies to subsections (a)(1) and (a)(3), (2) because Offset Earnings are treated as included in income, subsection (a)(1) deems the associated foreign taxes paid, and (3) because subsection (a)(1) deemed the taxes paid, those taxes cannot be credited under subsection (a)(3). The dual, self-contradictory roles of subsection (a)(1) are ostensibly resolved by the fact that, when (a)(1) is applied in its own right -- that is, independently of subsection (a)(3) -- there is nothing to connect subsection (a)(1) with section 965(b)(4)(A). Therefore, when applying subsection (a)(1) on its own, Offset Earnings are not treated as included in income, the foreign taxes are not deemed paid, and there is no tax credit.

The government's theory of the case is not a plausible reading of the pertinent statutes. FedEx's account is simpler

24

and more convincing: its Offset Earnings, when distributed, were "excluded from gross income under section 959(a)," and the foreign taxes paid on Offset Earnings were never previously "deemed paid . . . under" section 960(a)(1). 26 U.S.C. § 960(a)(3) (2016). Under these straightforward and unambiguous statutory terms, FedEx is entitled to foreign tax credits on its Offset Earnings under section 960(a)(3).

There is another problem with the government's interpretation of section 960. The government hypothesizes that section 960(a)(3) does not provide FedEx a credit because the foreign taxes on Offset Earnings were "deemed paid by the domestic corporation under paragraph (1) for any prior taxable year." 26 U.S.C. § 960(a)(3) (2016). Under the statute's plain language, however, for a credit to be denied, the foreign taxes must have been deemed paid in a prior taxable year, not the current taxable year. Id. The earliest FedEx could have its foreign taxes deemed paid under subsection (a)(1) is the year that its Offset Earnings would have (but for section 965(b)(4)(A)) been included in income. See 26 U.S.C. § 960(a)(1) (2016) (deeming taxes paid in year associated earnings included in income). It follows that, in the subset of cases in which a corporation distributes its Offset Earnings in the same taxable year that they would have been included in income, the foreign taxes associated with Offset Earnings could not have been deemed

paid "for any prior taxable year" as required by the statute to deny a credit. 26 U.S.C. § 960(a)(3) (2016). In other words, for a subset of cases, the government's interpretation of the statute breaks down.

The government argues that considerations of policy weigh against FedEx's interpretation of the statute. It is true that "the underlying purpose of the statutory scheme governing foreign tax credits . . . is to 'mitigate the evil of double taxation.'" Chrysler Corp. v. Comm'r, 436 F.3d 644, 654 (6th Cir. 2006) (quoting Burnet v. Chi. Portrait Co., 285 U.S. 1, 7 (1932)). The government forcefully argues that, because Offset Earnings are untaxed in the United States, giving foreign tax credits on those earnings "is not the mitigation of double tax; it is the elimination of any tax."[13] (ECF No. 43-1 at PageID 855.)

Although there is considerable weight to the government's arguments, the Court cannot consider extra-textual indicators of congressional intent, such as legislative history or general considerations of policy, at Chevron step one. Sunrise Coop.,

---

[13] FedEx argues that it will eventually pay taxes on its Offset Earnings because a distribution of Offset Earnings decreases its basis in its foreign subsidiaries. ECF No. 42 at PageID 265; 26 U.S.C. § 961(b)(1). However, a regulation separate from the one challenged in this case allows corporations to make an election to shift basis from unprofitable subsidiaries to profitable ones in the amount of the Offset Earnings. 26 C.F.R. § 1.965-2(f)(2). The flexibility that regulation provides, combined with the fact that capital gains are generally only taxed when realized, makes any tax on Offset Earnings highly speculative and subject to significant and perhaps indefinite delay.

Inc. v. U.S. Dep't of Agric., 891 F.3d 652, 658 (6th Cir. 2018)
("[W]hen a statute is unambiguous, resort to legislative history
and policy considerations is improper." (quoting Koenig Sporting
Goods, Inc. v. Morse Road Co. (In re Koenig Sporting Goods,
Inc.), 203 F.3d 986, 988 (6th Cir. 2000))); Cowherd v. Million,
380 F.3d 909, 914 (6th Cir. 2004) ("[W]e need not consider policy
arguments because the statute is unambiguous."); Tennessee v.
Hildebrand (In re Corrin), 849 F.3d 653, 657 (6th Cir. 2017)
("If the language of the statute is clear, the court applies the
statute as written. When the language is ambiguous or leads to
an absurd result, the court may look at the legislative history
of the statute to help determine the meaning of the language."
(citation omitted)); Chrysler, 436 F.3d at 654 ("Only when our
reading [of the statute's text] results in ambiguity or leads to
an unreasonable result, may we look to the legislative
history."). But see Sierra Club v. U.S. EPA, 793 F.3d 656, 665
(6th Cir. 2015) (describing legislative history as one of the
tools of statutory interpretation to be used at Chevron step
one).

Even if the Court were to consider legislative history and
the government's policy arguments, those factors would not change
the Court's evaluation of the unambiguous text. Although it is
certainly true that one purpose of the foreign tax credit scheme
is to mitigate double taxation, another purpose of the tax code

-- and particularly of the TCJA -- is to incentivize corporations to return money held overseas to the United States. The House Committee on Ways and Means reported that part of the TCJA's goal was to "encourage investment in the United States" and to address the fact that "many domestic companies were reluctant to reinvest foreign earnings in the United States, when doing so would subject those earnings to high rates of corporate income tax." H.R. Rep. No. 115-409, at 375. The parties do not cite anything in the legislative history specifically addressing tax credits on Offset Earnings. That Congress might have intended to grant foreign tax credits on Offset Earnings is not implausible given a policy of encouraging repatriation of foreign funds. The government's arguments do not make the statute ambiguous, nor is this one of the "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." United States v. Ron Pair Enters., 489 U.S. 235, 242 (1989) (alteration in original) (quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571 (1982)). The unambiguous language of the statute controls.

The government's interpretation of section 960(a)(3) and its related provisions is not reasonable. Because the statutory text is not "susceptible to more than one reasonable interpretation," it is not ambiguous. Donovan, 983 F.3d at 256. Under the plain language of the tax code, FedEx is entitled to

a credit for foreign taxes paid on Offset Earnings.[14] The government's regulation fails <u>Chevron</u> step one and must be set aside to the extent that it contradicts the statute. <u>See</u> 5 U.S.C. § 706(2). Even if the relevant statutory text were ambiguous, the regulation would not survive <u>Chevron</u> step two because, for the reasons discussed above, the government's interpretation is not reasonable.

**V. Conclusion**

For the foregoing reasons, FedEx's Motion for Partial Summary Judgment, ECF No. 42, is GRANTED, and the government's Motion for Partial Summary Judgment, ECF No. 43, is DENIED.

SO ORDERED this 31st day of March, 2023.

/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

---

[14] Because it decides the parties' motions based on the statutory language, the Court need not address FedEx's argument that the government's regulation was not properly promulgated because the Department of the Treasury failed to respond adequately to comments during the notice-and-comment period. (<u>See</u> ECF No. 42 at PageID 266.)