**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| FEDEX CORPORATION and SUBSIDIARIES | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) |
| UNITED STATES OF AMERICA, | ) ) |
| Defendant. | ) ) |

Civil Case No. 2:20-cv-02794
The Honorable Samuel H. Mays, Jr.

**PLAINTIFF'S MOTION FOR JUDGMENT AND**
**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT**

## **TABLE OF CONTENTS**

MOTION FOR JUDGMENT ........................................................................................ 1

MEMORANDUM OF LAW ........................................................................................ 1

INTRODUCTION ........................................................................................................ 1

ANALYSIS .................................................................................................................. 5

   I.   Section 965(g) and the Haircut Rule Do Not Disallow Credits on Offset Earnings ............ 6

       A.  Statutory Text, Context, Structure, and Policy Show That §965 Doesn't Haircut Credits on Offset Earnings ............................................................................... 6

       B.  The Haircut Rule Doesn't Disallow Credits on Offset Earnings Either. ...................... 9

   II.  The Haircut Rule Is Invalid as Applied to Credits on Offset Earnings. ........................... 11

   III.  The Government Waived the Application of the Haircut Rule. ...................................... 13

       A.  The Government Failed to Timely Assert the Haircut Rule. ....................................... 14

       B.  The Government Contemplated the Haircut Argument as Early as June 2022. .......... 16

       C.  The Government Cannot Raise Its Novel Argument at This Late Stage. .................... 17

   IV.  The Law-of-the-Case Doctrine Precludes the Haircut Argument ..................................... 18

CONCLUSION ............................................................................................................ 18

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Chandris, Inc. v. Latsis*,
    515 U.S. 347 (1995)...........................................................................................18

*Christianson v. Colt Indus. Operating Corp.*,
    486 U.S. 800 (1988)...........................................................................................18

*Encino Motorcars, LLC v. Navarro*,
    136 S. Ct. 2117 (2016).......................................................................................13

*FedEx Corp. & Subs. v. United States*,
    2023 U.S. Dist. LEXIS 57367 (W.D. Tenn. Mar. 31, 2023) ......................... *passim*

*Gilbert v. Napolitano*,
    670 F.3d 258 (D.C. Cir. 2012) ..........................................................................14

*Horton v. Potter*,
    369 F.3d 906 (6th Cir. 2004) .............................................................................14

*Koshland v. Helvering*,
    298 U.S. 441 (1936)...........................................................................................12

*Mann Constr., Inc. v. United States*,
    27 F.4th 1138 (6th Cir. 2022) ...........................................................................13

*Moody v. Mich. Gaming Control Bd.*,
    871 F.3d 420 (6th Cir. 2017) .............................................................................18

*Pritchett v. Prosser*,
    2019 U.S. Dist. LEXIS 160426 (W.D. Tenn. Sep. 20, 2019)..............................15

*Randy Kinder Excavating, Inc. v. JA Manning Construction Company, Inc.*,
    899 F.3d 511 (8th Cir. 2018) .............................................................................17

*Samons v. Nat'l Mines Corp.*,
    25 F.4th 455 (6th Cir. 2022) .............................................................................18

*Summa Holdings, Inc. v. Commissioner*,
    848 F.3d 779 (6th Cir. 2017) ...............................................................................8

*Sysco Corp. v. Commissioner*,
    U.S. Tax Court Dkt. No. 5728-23 ......................................................................17

*UMW 1974 Pension v. Pittston Co.*,
   984 F.2d 469 (D.C. Cir. 1993) ...................................................................................15

*United States v. Calamaro*,
   354 U.S. 351 (1957) .....................................................................................................12

*Virginia Uranium, Inc. v. Warren*,
   139 S. Ct. 1894 (2019) ..................................................................................................8

*Westside Mothers v. Olszewski*,
   454 F.3d 532 (6th Cir. 2006) ......................................................................................18

**Statutes**

5 U.S.C. §553 ...............................................................................................................5, 13

5 U.S.C. §706 .............................................................................................................11, 13

26 U.S.C. §11 ....................................................................................................................6

26 U.S.C. §901 ..................................................................................................................5

26 U.S.C. §902 ..................................................................................................................5

26 U.S.C. §904 ..................................................................................................................5

26 U.S.C. §951 ..........................................................................................................*passim*

26 U.S.C. §960 ..........................................................................................................*passim*

26 U.S.C. §965 ..........................................................................................................*passim*

26 U.S.C. §6211 ...............................................................................................................15

26 U.S.C. §6212 ...............................................................................................................15

**Regulations**

Treas. Reg. §1.965-5(c)(1)(i) ...................................................................................*passim*

Treas. Reg. §1.965-5(c)(1)(ii) ..................................................................................*passim*

**Rules**

Fed. R. Civ. P. 8(c) ...........................................................................................................14

Fed. R. Civ. P. 58(d) ...........................................................................................................1

U.S. Tax Court Rule 36(c) ................................................................................................17

**Other Authorities**

5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1278
(4th ed. 2023) ...................................................................................................................14

Final Regulations: Foreign Tax Credit Guidance Related to the Tax Cuts and Jobs
Act, Overall Foreign Loss Recapture, and Foreign Tax Redeterminations,
84 Fed. Reg. 69022 (Dec. 17, 2019) ...............................................................................11

Staff of the Joint Committee on Taxation, General Explanation of
Public Law No. 115-97 (JCS-1-18) ..............................................................................7, 8

## MOTION FOR JUDGMENT

FedEx Corporation & Subsidiaries respectfully moves this Court under Federal Rule of Civil Procedure 58(d) for an entry of judgment that FedEx is entitled to a refund of $87,908 for its tax year ended May 31, 2018 ("FY18") and $84,566,941 for its tax year ended May 31, 2019 ("FY19"), including any statutory interest, as provided by law, applied to each overpayment of tax. The parties are working to agree on the amount of the refund due for FY18 and FY19. Those computations would otherwise be the last step before entering judgment. But the government recently decided to raise a new legal argument (more than 3 years after FedEx filed its complaint in this case, and well more than a year after the parties filed their cross-motions for partial summary judgment). Accordingly, FedEx is filing this motion to facilitate completion of this case.

## MEMORANDUM OF LAW

### INTRODUCTION

Nearly a year ago, this Court held that FedEx is entitled to foreign tax credits on its Offset Earnings under §960(a)(3)[1] and that Treas. Reg. §1.965-5(c)(1)(ii) (the "Final Rule"), which purports to fully disallow these credits, is contrary to statute and invalid. *FedEx Corp. & Subs. v. United States*, 2023 U.S. Dist. LEXIS 57367 (W.D. Tenn. Mar. 31, 2023) (the "Order"). Since that time, the parties have met virtually and corresponded several times to discuss the computations regarding the amount of the refund as well as other issues pertinent to the resolution of this litigation. On July 31, 2023, the government first mentioned the possibility of making a new argument to partially disallow the credits at issue in this case. At that time, and for several months thereafter, the government had not decided whether to raise this alternative argument. On December 5, 2023, FedEx provided draft computations regarding the amount of the refund for the

---

[1] Unless otherwise stated, all "section" or "§" references are to the Internal Revenue Code of 1986, as amended and in effect for the tax year at issue (the "Code").

years at issue. The parties met virtually on January 3, 2024, at which time FedEx stated that it preferred to jointly propose a final judgment in this case, but barring that, FedEx intended to file a motion for judgment. On January 10, 2024, the government issued written questions about the computations, which FedEx answered on February 6, 2024. On February 15, 2024, the parties again met virtually, and FedEx reiterated its suggestion that the parties jointly propose a final judgment in this case (as FedEx perceived that the parties were close to agreement on the computations).[2] During that February 15 meeting, the government first stated that it had finally determined to raise its new argument and that it would do so in response to FedEx's motion for judgment. The government has not provided a written statement of its new argument.

To bring this litigation to a close, FedEx now submits this motion for judgment. The motion prophylactically addresses what FedEx understands to be the government's new argument. That argument purports to disallow a portion of the credits for the foreign taxes that FedEx's foreign subsidiaries paid and that this Court has already allowed in full. (This partial disallowance is sometimes called a "haircut" because it reduces, but does not eliminate, the credits.) The government's haircut argument depends entirely on the government's prior arguments. Both rest on the false notion that Offset Earnings are included in income under §965 and that credits for foreign taxes paid on those earnings are disallowed under §960(a)(1) and (2). This Court has already rejected those arguments, holding that "the government's theory of the case is not a plausible reading of the pertinent statutes" and the "straightforward and unambiguous statutory terms" entitled FedEx to the claimed credits under §960(a)(3). Order at *23-24. This Court's prior

---

[2]     The government may have some additional questions about the computations, but FedEx anticipates that the parties can resolve the computational issues while this motion is pending.

conclusions support at least four reasons why the government's new argument must fail.[3]

First, nothing in §965 or any other provision of the Code haircuts the credits on Offset Earnings or authorizes the government to do so by regulation. The Order very accurately described the statutory framework of the §965 transition tax, which generally taxes deferred foreign income based on the positive income of a U.S. shareholder's profitable foreign corporations as reduced by the losses of the U.S. shareholder's loss-making foreign corporations. Order at *11. To do so, the statute identifies two types of foreign corporations: profitable foreign corporations (DFICs) and loss-making foreign corporations (EDFCs). Section 965 increases subpart F income under §951(a) based on the deferred foreign income earned by a U.S. shareholder's foreign corporations. Section 965(b) reduces (or offsets) that positive income by reference to the negative E&P of the loss-making foreign corporations. Under this netting approach, the profitable foreign corporations had two basic types of earnings under §965: (1) earnings that are included in income under §965 (and §951(a)) ("Included Earnings"), and (2) earnings that are offset by the deficits of the loss-making foreign corporations ("Offset Earnings"). Section 965(b)(1) makes clear that Offset Earnings are not included in income under §951(a). Section 965(c) then provides a deduction for the Included Earnings. Congress used this deduction to provide a lower rate of tax on the Included Earnings. The detailed statutory rules essentially tax Included Earnings that are in the form of cash (and cash equivalents) at a 15.5% rate, and Included Earnings that consist of non-cash assets at an 8% rate. (This differs from the 35% tax rate that generally applied before the TCJA and the 21% rate that applies now.) Section 965(g) correspondingly reduces (or haircuts) the credits for the foreign taxes

---

[3]     Because the government's new alternative argument rests on the same fundamental premises as its prior arguments, FedEx relies on the arguments in its prior briefs regarding the motion for partial summary judgment. While partial, that motion fully disposed of all of the *legal* issues that could directly disallow the foreign tax credits at issue in this case.

paid on the Included Earnings. Congress applied a precise mathematical formula for determining the reduced amount of foreign tax credits on Included Earnings. Nothing in §965(g) or any other provision of the Code haircuts credits for foreign taxes paid on Offset Earnings (as those earnings were not included in income under §965 and thus do not receive a deduction under §965(c)). This makes sense. The credits associated with Offset Earnings will apply against income subject to regular U.S. tax rates so there is no sense in "haircutting" those credits based on the TCJA's reduced rate. In short, the §965(g) *statutory* haircut simply doesn't apply to credits for foreign taxes paid on Offset Earnings.

The *regulatory* haircut doesn't apply to those credits, either. When the Agencies issued the Final Rule, they simultaneously issued Treas. Reg. §1.965-5(c)(1)(i) (the "Haircut Rule"), which differs from the Final Rule in scope and application. The Final Rule—which this Court rightly held to be invalid—purported to fully disallow credits for foreign taxes paid on Offset Earnings when certain foreign subsidiaries generated those earnings. In contrast, the Haircut Rule does not address the creditability of historic foreign taxes paid or accrued on Offset Earnings but instead focuses on withholding taxes imposed upon the distribution of Offset Earnings.[4] Thus, the plain and unambiguous language of the Haircut Rule applies to withholding taxes paid or accrued upon the distribution of the Offset Earnings. The Haircut Rule doesn't apply to this case because FedEx did not claim any credits for withholding taxes. The taxes currently at issue are the historic foreign taxes paid or accrued on the Offset Earnings. In short, the government ignores the plain text of its own regulations in an attempt to apply those rules in a new and unprecedented way.

---

[4]   In pertinent part, the Haircut Rule in Treas. Reg. §1.965-5(c)(1)(i) purports to disallow a "credit under section 901 … for the applicable percentage of any foreign income taxes … paid under section 960(a)(3) … with respect to distributions of … section 965(b) previously taxed earnings and profits."

Second, the Haircut Rule as applied to foreign taxes paid on Offset Earnings is substantively and procedurally invalid. This application of the Haircut Rule is contrary to the text of §965(b), (c), and (g), and its issuance violated the notice-and-comment rulemaking requirements of the Administrative Procedure Act (5 U.S.C. §553).

Third, the government waived its ability to make this alternative argument. The regulations were issued five years ago; FedEx filed its refund claim challenging the regulations nearly four years ago; FedEx filed its Complaint in this case more than three years ago; and the IRS suggested the potential application of this haircut argument on audit almost two years ago. The government knew about this argument *before* the parties briefed their cross-motions for partial summary judgment. Indeed, in June 2022—about 3 months before the government filed its first brief in September 2022—FedEx responded to a question from the IRS Exam Team about the application of a "haircut" to the credits at issue. In sum, the government knew about this argument, failed to raise it in a timely manner, and should be barred from raising it now.

Fourth, the law-of-the-case doctrine prevents the government from relitigating this Court's legal conclusions. The government's latest argument rests on the same flawed premise that the government previously relied on: namely, that Offset Earnings are included in income. So in addition to being late, this argument is also old; the Court already answered it. Order at *19-21. The government cannot ignore that Order.

**ANALYSIS**

To determine when credits for foreign taxes paid on Offset Earnings are disallowed, in whole or in part, the Code's default rule was that unless some specific statute disallowed credits for foreign taxes paid on foreign earnings, those credits were allowed according to the normal operation of §§901, 902, 904, and 960. This framework included credits for foreign taxes paid on Offset Earnings. Order at *13-16 (illustrating the coordination and application of the pertinent

5

foreign tax credit provisions). Collectively, the plain text of the statutes unambiguously foreclosed any regulatory attempt to disallow foreign tax credits on Offset Earnings beyond the disallowance provisions expressly set forth in the Code. *Id.* Nothing in §965 or in any other provision of the TCJA changed that result.

## I.   Section 965(g) and the Haircut Rule Do Not Disallow Credits on Offset Earnings.

### A.   Statutory Text, Context, Structure, and Policy Show That §965 Doesn't Haircut Credits on Offset Earnings.

Section 965(g) establishes the full scope of the disallowance of foreign tax credits under §965, and that disallowance is narrow and targeted: it applies only to "the applicable percentage of any taxes paid or accrued (or treated as paid or accrued) with respect to any amount for which a deduction is allowed under this section." The only "deduction … allowed" in §965 is found in §965(c), and that deduction applies only to Included Earnings (not to Offset Earnings). Section 965(g)'s mathematical definition of the "applicable percentage" confirms that textual conclusion, as it contains four references to §965(c) (three express, in §965(g)(2)(A)(i) and (ii) and (B)(i), and one implied, in §965(g)(2)(B)(ii)). Section 965(g) also contains two multipliers, both of which correspond to the tax rates in §965(c). Specifically, the §965(g)(2)(A) multiplier of 0.771 corresponds to the 8% rate in §965(c)(2)(A), and the §965(g)(2)(B) multiplier of 0.557 corresponds to the 15.5% rate in §965(c)(2)(B).[5] This clear internal symmetry disallows the credit for foreign taxes paid on Included Earnings in proportion to the decreased rate of tax imposed on Included Earnings under §965. "The disallowed portion of foreign taxes deemed paid is 55.7 percent of the

---

[5]     Mathematically, the percentage-reductions for credits for foreign taxes paid on Included Earnings are shown in the following formula: $(35-8)/35 = 0.771$, and $(35-15.5)/35 = 0.557$, where 35 represents the 35% tax rate that generally applied to corporate income before the TCJA (*see* §11 (2017)), and 8 and 15.5 represent the effective tax rates imposed under §965 (for non-cash and cash assets, respectively). These percentages differ somewhat for fiscal-year taxpayers, whose taxable income was subject to a blended rate of tax.

foreign taxes deemed paid with respect to the *inclusion* attributable to the aggregate cash position plus 77.1 percent of the foreign taxes deemed paid with respect to the remaining portion of the section 965 *inclusion*." JCS-1-18 at 362 (emphasis added).[6]

Section 965(c) reinforces the conclusion that the deduction referenced in §965(g) applies only to Included Earnings. Its title is "Application of participation exemption to *included* income." (Emphasis added.) And the flush language of §965(c)(1) refers to "the taxable year in which an amount is included in the gross income of such United States shareholder under section 951(a)(1) by reason of this section." That language sets the stage for the reference in §965(c)(1)(A)(i) to "the amount so included as gross income." That amount, which is part of the formula for calculating the 8% tax rate, consists of Included Earnings (not Offset Earnings, which §965(b)(1) clarifies are not included in income under §965). Similarly, §965(c)(1)(B) states that the 15.5% tax rate cannot "exceed the amount described in subparagraph (A)(i)"—another cross-reference to "the amount so included as gross income" under §965. Section 965(c)(1)(B) ensures that the 15.5% rate applies to

---

[6]       An example illustrates the operation of the statutes. Assume a U.S. shareholder has foreign subsidiaries that paid $20 of foreign taxes with respect to $100 of Included Earnings, $50 of which are in the form of non-cash assets and $50 of which are in the form of cash assets. To ensure the $50 of Included Earnings that are in the form of non-cash assets are taxed at the 8% rate, §965(c)(2)(A) provides a 77.1% deduction ($50 * 77.1% = $38.55). Section 965(g)(2)(A), in turn, disallows the applicable percentage of credits for foreign taxes paid or accrued on the $50 of Included Earnings that are in the form of non-cash assets by multiplying the total foreign taxes paid or accrued ($20) by the proportion of Included Earnings that are in the form of non-cash assets ($50) divided by the total Included Earnings ($100) and multiplied by the 77.1% deduction ($20 * ($50/$100) * 77.1% = $7.71). To ensure the $50 of Included Earnings that are in the form of cash are taxed at the 15.5% rate, §965(c)(2)(B) provides a 55.7% deduction ($50 * 55.7% = $27.85). Section 965(g)(2)(B), in turn, disallows the applicable percentage of credits for foreign taxes paid or accrued on the $50 of Included Earnings that are in the form of cash assets by multiplying the total foreign taxes paid or accrued ($20) by the proportion of Included Earnings that are in the form of cash assets ($50) divided by the total Included Earnings ($100) and multiplied by the 55.7% deduction ($20 * ($50/$100) * 55.7% = $5.57).

the aggregate foreign cash position in an amount that is not greater than the §965 inclusion. This limitation confirms that §965(c) applies only to Included Earnings.[7]

In §965(g), Congress expressly disallowed credits for foreign taxes paid on Included Earnings through the application of a detailed formula. Specifically, §965(g) disallows a percentage of foreign taxes paid for any amount for which a deduction was allowed under §965(c)—in essence, foreign taxes paid on earnings that were included in income under §§965 and 951(a) (i.e., Included Earnings). But §965(g) did not disallow any amount of credits for foreign taxes paid on Offset Earnings. That's because Offset Earnings were not included in income under §951(a). *See* §965(b)(1); Order at *11.

Statutory language doesn't get any more precise than this. "This is the highly reticulated Internal Revenue Code, which uses language, lots of language, with nearly mathematic precision." *Summa Holdings, Inc. v. Commissioner*, 848 F.3d 779, 789 (6th Cir. 2017). Congress expressly disallowed credits for foreign taxes paid on Included Earnings, but it didn't disallow any credits for foreign taxes paid on Offset Earnings, either in whole or in part. "[I]n any field of statutory interpretation, it is [the court's] duty to respect not only what Congress wrote but, as importantly, what it didn't write." *Virginia Uranium, Inc. v. Warren*, 139 S. Ct. 1894, 1900 (2019) (plurality opinion). And all this makes sense. The credits for foreign taxes paid on Included Earnings are decreased to correspond to the lower tax rate on Included Earnings. The statute doesn't haircut

---

[7]    The staff of the Joint Committee on Taxation agrees. "A U.S. shareholder is allowed a deduction under section 965(c) of a portion of its pro rata share of the *section 965 inclusion from all DFICs*. The deductible portion is a sum of an amount equal to the 15.5-percent rate equivalent percentage of the portion of the shareholder's pro rata share of the inclusion amount that is the shareholder's aggregate cash position plus the eight-percent rate equivalent percentage of the portion of the inclusion that exceeds the aggregate cash position." JCS-1-18 at 359 (emphasis added).

credits on Offset Earnings because those earnings are preserved for future taxation at the regular prevailing rate of tax. FedEx.Op.Br. at 24-25.

## B. The Haircut Rule Doesn't Disallow Credits on Offset Earnings Either.

The Haircut Rule is premised on the application of §965(c). Its plain language disallows "the applicable percentage of any foreign income taxes treated as paid or accrued with respect to any amount for which a section 965(c) deduction is allowed." That deduction is allowed only for Included Earnings. Offset Earnings are not included in income under §951(a)(1). *See* Order at *11, *19-21. Because §965(c) does not provide a deduction for Offset Earnings, there is no "amount for which a section 965(c) deduction is allowed," and therefore there's no amount to haircut. Accordingly, the §965(c) deduction does not and cannot apply to Offset Earnings.[8]

In addition, the Haircut Rule purports to apply only to withholding taxes, as it partially disallows "foreign income taxes deemed paid … with respect to distributions of … section 965(b) previously taxed earnings and profits." The government and the Agencies have argued that §960(a)(3) applies only to withholding taxes paid or accrued on the distribution of foreign earnings.[9] In their mistaken view, historic foreign taxes paid on Offset Earnings are outside the

---

[8]    The Haircut Rule in Treas. Reg. §1.965-5(c)(1)(i) states that the disallowance applies to "any amount for which a section 965(c) deduction is allowed." Oddly, the rule also purports to disallow credits for "foreign income taxes deemed paid under section 960(a)(3) with respect to distributions of … section 965(b) previously taxed earnings and profits…." This nonsensical and internally inconsistent statement reinforces the point that the application of the Haircut Rule is based on the same flawed premise as the Final Rule. In essence, the Agencies appear to contend that Offset Earnings (referred to as "section 965(b) previously taxed earnings and profits") are included in income (even though they're not), and they must be treated as deductible under §965(c) (even though they're not), and therefore when they're distributed from the foreign corporation to the U.S. shareholder, credits for foreign taxes paid with respect to that distribution are partially disallowed (even though nothing in the Code disallows those credits). Schrödinger's cat is back.

[9]    Of course, that argument is wrong, as the plain language of §960(a)(3) provides that it applies to "any income … taxes paid to any foreign country … on or with respect to the accumulated profits of such foreign corporation from which the distribution is made…." *See* FedEx.Op.Br. at 21-23. Based on the Order, this Court has already held that credits for foreign

scope of §960(a)(3). *See* Treas. Reg. §1.965-5(c)(1)(ii) ("Foreign income taxes deemed paid by a domestic corporation under section 960(a)(3) with respect to a distribution of … section 965(b) previously taxed earnings and profits include only the foreign income taxes paid or accrued by an upper-tier foreign corporation with respect to a distribution of … section 965(b) previously taxed earnings and profits from a lower-tier foreign corporation."). The Haircut Rule in turn purports to disallow credits for the portion of "foreign income taxes deemed paid under section 960(a)(3) … with respect to distributions of … section 965(b) previously taxed earnings and profits." Accordingly, the Haircut Rule purports to disallow only withholding taxes—the only taxes the Agencies identify as deemed paid under §960(a)(3)—on a distribution of Offset Earnings.

The government now attempts to apply the Haircut Rule more broadly. Either the government is conceding that when the Agencies issued the Haircut Rule they understood §960(a)(3) to apply broadly with respect to foreign taxes paid on Offset Earnings (which contradicts the government's prior litigating position in this case and the basis of the Final Rule), or the Agencies mistakenly believed that §960(a)(3) applied only to withholding taxes. If it's the latter scenario, and it is,[10] the Haircut Rule doesn't apply to the credits at issue here.

Context confirms the limited scope of the Haircut Rule. The Final Rule provides for full disallowance of credits on Offset Earnings. The Agencies could not have both fully disallowed and partially disallowed the same foreign tax credits. Indeed, the Agencies stated they were

---

taxes paid on Offset Earnings are creditable, so this is yet another instance in which the government's new argument contradicts both the statute and the prior holding of this Court.

[10]     *See, e.g.*, G.Op.Br. at 14 n.10 ("Section 960(a)(3) would apply, however, to taxes imposed by a foreign country upon the distribution of Offset Earnings by a lower-tier subsidiary to an upper-tier subsidiary … the taxes that are deemed paid under § 960(a)(3) are those that were imposed subsequent to the § 951(a) inclusion.").

harmonizing the regulations "to avoid multiple disallowances, and [to] coordinat[e] the application of § 1.965–5(c)(1)(i)" with the regulations more broadly. 84 Fed. Reg. 69022, 69047.

In sum, the only taxes at issue in this litigation are the historic foreign taxes "paid or accrued *on the earnings and profits* referred to in section 965(b)." *See* Joint Statement of Undisputed Facts ¶¶23-24 (emphasis added).[11] Because FedEx did not claim any credits for foreign withholding taxes imposed on the FY18 Distributions, the Haircut Rule doesn't apply to the credits at issue in this litigation. And because that rule doesn't apply here, it cannot operate to disallow any of the credits at issue here.

## II.  The Haircut Rule Is Invalid as Applied to Credits on Offset Earnings.

If applied to disallow a portion of the foreign tax credits at issue in this case, the Haircut Rule is invalid because it: (1) exceeds the Agencies' rulemaking authority; (2) contradicts clear statutory text and thus is substantively invalid; and (3) is not the product of notice-and-comment rulemaking and therefore is procedurally invalid. 5 U.S.C. §706(2)(A), (C), and (D) (directing courts to set aside agency action that is in excess of statutory authority, contrary to statute, or procedurally defective).

First, as applied to the credits at issue here, the Haircut Rule disallows foreign tax credits that the Code unambiguously authorizes and that no statutory provision disallows. The Code thus unambiguously foreclosed the Agencies' attempt to disallow credits for foreign taxes actually paid and properly claimed on Offset Earnings. Bedrock principles of administrative law prevent a federal agency from rewriting a statute through regulations that contradict clear legislative text and

---

[11]  Paragraph 25 of the Joint Statement of Undisputed Material Facts states: "If the Court agrees with FedEx, the parties agree to resolve the amount of earnings and profits referred to in section 965(b) and relevant foreign taxes after the resolution of the Parties' motions for partial summary judgment." ECF No. 42-1 at 5. The parties agreed that after resolution of the cross-motions for partial summary judgment the only remaining issues were purely factual determinations.

exceed clear statutory limitations. *Koshland v. Helvering*, 298 U.S. 441, 447 (1936); *United States v. Calamaro*, 354 U.S. 351, 359 (1957). *See* FedEx.Op.Br. at 7. The Agencies cannot override Congress's statutory mandates and disallow credits that the Code otherwise allows.

Second, the purported application of the Haircut Rule to credits on Offset Earnings is based on the same flawed legal premise as the Final Rule: namely, that §965(b)(4)(A) resulted in an inclusion of Offset Earnings in income under §951(a). Contradicting §965(b) apparently wasn't enough for the government. Its latest argument also contradicts §965(c) and (g), as its novel application of the Haircut Rule extends the flawed premise (that Offset Earnings are included in income) to treat Offset Earnings as if they were subject to the §965(c) deduction and thus subject to the §965(g) disallowance.[12] As detailed above, the partial disallowance in §965(g) turns on an "amount for which a deduction is allowed" under §965. The only deduction allowed under §965 is the §965(c) deduction. But that deduction applies only to Included Earnings, not to Offset Earnings. By invoking the Haircut Rule, the government is simply resurrecting its long-dead prior argument that Offset Earnings are included in income under §965 (and §951(a)). This zombie is easily dispatched. As with the Final Rule, the government ignores: (1) the clear mandate of §965(b)(1), which provides that Offset Earnings are not included in income under §951(a)(1) (*see* Order at *11 (Offset Earnings are "not included in the parent's income because of subsection

---

[12]    This is a classic "same story by a different name." In its cross-motion for partial summary judgment, the government argued that Offset Earnings were treated as deemed included in income and the foreign taxes associated with Offset Earnings were treated as deemed paid under the foreign-tax-credit *allowance* provision of §960(a)(1), which did not allow any credits, but which nonetheless triggered §960(a)(2)'s foreign tax credit *disallowance* provision for foreign taxes previously deemed paid under §960(a)(1). Order at *18-19. The same pick-what-provision-increases-tax-today story is embedded in the government's argument in the Haircut Rule. With the Haircut Rule, the government argues that Offset Earnings are included in income and thus subject to the §965(c) deduction, which does not allow a deduction for Offset Earnings, but which nonetheless triggers the foreign-tax-credit disallowance provision in §965(g). It is hard to imagine when this Kafkaesque story ends.

(b)(1)")); and (2) the threshold scope limitation of §965(b)(4)(A), which treats Offset Earnings as included in income solely for purposes of applying §959. *See* Order at *19-21 (§965(b)(4)(A) was expressly limited to "applying section 959" and not "to the remainder of the tax code"). Accordingly, as with the Final Rule, the Haircut Rule rests on an erroneous premise and is contrary to statute. Without an actual income inclusion to undergird it, the government's argument collapses—again. Order at *22-25.

Third, if the Haircut Rule applies to Offset Earnings, the Agencies failed to provide regulated parties with any notice or opportunity to comment, thereby making the Haircut Rule procedurally defective and invalid. 5 U.S.C. §§553 and 706(2)(D); *Mann Constr., Inc. v. United States*, 27 F.4th 1138 (6th Cir. 2022). The Agencies never hinted that the Haircut Rule might apply to historical foreign taxes paid on Offset Earnings, and they made statements that supported the exact opposite conclusion. *See* section I.B. n.10 above. This robbed regulated parties of any meaningful opportunity to comment, which invalidates this application of the rule. In addition, "*Chevron* deference is not warranted where the regulation is 'procedurally defective'—that is, where the agency errs by failing to follow the correct procedures in issuing the regulation." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016). Accordingly, the government cannot claim deference for its application of the Haircut Rule to historical foreign taxes paid on Offset Earnings.

## III.   The Government Waived the Application of the Haircut Rule.

The failure to timely raise a defense waives that defense. The government first confirmed that it would attempt to apply the Haircut Rule to the credits at issue in this case on February 15, 2024. During the three-and-a-half years from the inception of this litigation in November 2020 until that date, the government never raised the Haircut Rule—not in its answer, not in discovery,

not in its cross-motions for partial summary judgment, and not in any conference with this Court.[13] For this entire 1,200-day period, the government held this argument back. The Federal Reports are shot through with cases that condemn this type of behavior and that compel a straightforward result: this Court should refuse to hear the government's argument, which it has waived with respect to the credits at issue in this case.

### A. The Government Failed to Timely Assert the Haircut Rule.

Federal Rule of Civil Procedure 8(c) requires that "[i]n responding to a pleading, a party must affirmatively state any … affirmative defense." It is of "virtually universal acceptance by the federal courts that a failure to plead an affirmative defense as required by Federal Rule of Civil Procedure 8(c) results in the waiver of that defense and its exclusion from the case." 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1278 (4th ed. 2023).

The Haircut Rule is a legal defense to FedEx's claim for foreign tax credits. When it applies, the regulation is a rule of law that decreases the amount of credits that a taxpayer can claim. The government had every opportunity to assert this legal defense. The Complaint stated unequivocally that "[n]othing in section 965 or any other part of the Code disallows the credits for foreign taxes associated with Offset Earnings." Compl. at ¶27; *see also* ¶¶77, 100, and 108. In its Answer, the government failed to assert its alternative argument. Failing to plead an affirmative defense in the first responsive pleading to a complaint results in a waiver of that defense. *Horton v. Potter*, 369 F.3d 906, 911 (6th Cir. 2004). *See also Gilbert v. Napolitano*, 670 F.3d 258, 261 (D.C. Cir. 2012) ("[A] party must first raise its affirmative defenses in a responsive pleading before it can raise them in a dispositive motion.").

---

[13]    Under the Court's Amended Scheduling Order (ECF No. 36), after discovery ended, the Court held a status conference on June 3, 2022 to "discuss with the Court a future trial date or a summary judgment briefing schedule." During that status conference, the government said nothing about the Haircut Rule.

Discovery presented another opportunity for the government to identify its alternative argument. From February 19, 2021, when the government filed its Answer, until May 31, 2022, when discovery ended (*see* ECF No. 36), the government failed to raise the purported application of the Haircut Rule. Case law forbids raising it now. "When a party fails to raise an affirmative defense until after the close of discovery, a finding of waiver is appropriate." *Pritchett v. Prosser*, 2019 U.S. Dist. LEXIS 160426, at *13 (W.D. Tenn. Sep. 20, 2019) (internal citations omitted).

The government also failed to raise the Haircut Rule in its briefs on the parties' cross-motions for partial summary judgment. Courts decline to hear new arguments after the parties have fully briefed the legal issues in the case. "As a general rule, … the failure to raise an affirmative defense in opposition to a motion for summary judgment constitutes an abandonment of the defense." *UMW 1974 Pension v. Pittston Co.*, 984 F.2d 469, 478 (D.C. Cir. 1993). Furthermore, in light of the parties pre-trial agreement,[14] the government cannot use the motion for a judgment as a vehicle to raise a substantive legal argument that it should have raised (at the very latest) in the cross-motions for partial summary judgment.

---

[14]    In the Proposed Discovery Plan, the parties agreed to allow the IRS audit (and certain separate treaty-based negotiations) to proceed simultaneously with the litigation and to "identify … any predicate issues on which the foreign tax credit issue is based." ECF No. 28 at 2. The parties also agreed to allow the IRS to "issue a notice of deficiency and/or make an assessment, for *additional taxes* owed by FedEx for FY18 and FY19." *Id.* (emphasis added). The specific reference to "additional taxes" owed by FedEx separates the credits at issue in the litigation from other issues that might arise during the IRS audit. The parties underscored this distinction by agreeing that the IRS audit would "endeavor to avoid duplication, to the extent possible, of those aspects directly relevant to the foreign tax credit issue." *Id.* The possibility of a haircut to the credits is "directly relevant to the foreign tax credit issue." In addition, the parties agreed that the IRS could "issue notice(s) of deficiency … with respect to items that may impact the amount of foreign tax credit FedEx would be entitled to under this refund claim." *Id.* at 3. A notice of deficiency requires a *deficiency* in tax. *See* 26 U.S.C. §§6211 and 6212. The application of the Haircut Rule to the credits at issue could not give rise to a tax deficiency because the dollars at issue have already been paid to the government and are the subject of this refund suit. In short, the Proposed Discovery Plan required the government to raise all legal arguments directly relevant to the credits at issue in this litigation. Its failure to do so constitutes waiver.

Time and again, the government had the chance to raise its alternative argument, but it deliberately chose not to. It can't now.

**B.      The Government Contemplated the Haircut Argument as Early as June 2022.**

The government apparently was considering a partial disallowance of FedEx's foreign tax credits at least three months before the government filed its Cross-Motion for Partial Summary Judgment (on September 9, 2022), and two months before FedEx filed its Motion for Partial Summary Judgment (on July 25, 2022). On April 18, 2022, during the IRS's audit of FedEx's FY18 and FY19 taxable years, the IRS asked FedEx to confirm whether the "credits being requested include the FTC haircut under IRC 965(g)(1)?" On June 21, 2022, FedEx explained that the haircut did not apply to the credits for foreign taxes paid on Offset Earnings:

> The disallowance of foreign tax credits in section 965(g) does not apply to foreign taxes associated with Offset Earnings that are credited as a result of the FY18 distribution of section 965(b) PTI. Section 965(g)(1) applies to "any taxes paid or accrued (or treated as paid or accrued) with respect to any amount for which a deduction is allowed under this section." Foreign taxes associated with Offset Earnings are not paid or accrued with respect to an amount for which a deduction is allowed under section 965(c) because they are not paid or accrued with respect to an amount attributable to E&P that were included in income under section 951(a) pursuant to section 965(a).

*See* Response to IDR IE-13, question 4.b.

Even under the most lenient standard the government's failure to timely raise its alternative haircut argument is inexcusable. Nothing prevented the government from doing so. The Haircut Rule is the government's own regulation, which immediately precedes the Final Rule (these rules are in Treas. Reg. §1.965-5(c)(1)(i) and (ii), respectively). It wasn't buried in an ancillary provision of the Treasury Regulations. If the Haircut Rule applied, the government should, could, and would

have said so in the first place. Instead, the government's failure to raise the argument shows that the government agreed that the Haircut Rule simply does not apply here.[15]

### C.    The Government Cannot Raise Its Novel Argument at This Late Stage.

Nearly a year after the Court issued its order regarding the validity of the Final Rule, and nearly two years after the IRS first inquired about the potential applicability of a haircut to the foreign tax credits associated with Offset Earnings, the government raised this novel argument. This flies in the face of judicial efficiency and fairness. *See, e.g.*, *Randy Kinder Excavating, Inc. v. JA Manning Construction Company, Inc.*, 899 F.3d 511, 519 n.7 (8th Cir. 2018) (treating affirmative defense raised for the first time in a post-trial brief as waived). By its silence and inaction, the government has unequivocally waived its alternative argument.

---

[15]    As detailed above, in April 2022, the IRS first suggested that it considered haircutting credits for foreign taxes paid on Offset Earnings. In January 2023, after the parties had completed their briefing on cross-motions for partial summary judgment, the IRS issued a notice of deficiency to another taxpayer that had taken the position that the Code and the Treasury Regulations did not disallow credits for foreign taxes paid on Offset Earnings. *See Sysco Corp. v. Commissioner*, U.S. Tax Court Dkt. No. 5728-23. That IRS notice vaguely referenced four Code provisions and three regulatory provisions as the purported basis for disallowing a variety of foreign tax credits, including credits for historical foreign taxes paid on Offset Earnings. The IRS notice failed to specify which regulations purportedly applied to disallow credits on Offset Earnings. FedEx and Sysco are represented by the same counsel, who knew of the IRS's suggestion that it considered haircutting credits on Offset Earnings. Based on that suggestion as well as the IRS's failure in the notice of deficiency to precisely state whether the IRS proposed to haircut the credits on Offset Earnings, Sysco assigned error to the potential application of the Haircut Rule to credits on its Offset Earnings. In its petition, Sysco alleged, upon information and belief, that the IRS's notice disallowed a portion of credits on its Offset Earnings. Pet. ¶5.c.(15). In its answer, the IRS admitted that its notice made this disallowance based on the Haircut Rule, as the answer denied only that the disallowance was erroneous (and thereby admitted that the partial disallowance was based on the Haircut Rule). Ans. ¶5.c.(15); U.S. Tax Court Rule 36(c) ("Every material allegation set out in the petition and not expressly admitted or denied in the answer is deemed to be admitted."). The IRS filed its answer in Sysco's case in June 2023. This is additional evidence that the IRS has known about this alternative argument for well more than 8 months before this motion.

## IV.     The Law-of-the-Case Doctrine Precludes the Haircut Argument.

This Court's interpretation of the governing statutes is now the law of the case. *See Chandris, Inc. v. Latsis*, 515 U.S. 347, 369 (1995) (explaining that interpretation of statutory terms is a question of law). The law-of-the-case doctrine "encapsulates a simple idea: courts generally decline to redecide issues that they have already decided." *Samons v. Nat'l Mines Corp.*, 25 F.4th 455, 463 (6th Cir. 2022). The doctrine "provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006) (quoting *Scott v. Churchill*, 377 F.3d 565, 569-70 (6th Cir. 2004)). In essence, "[t]he law-of-the-case doctrine precludes reconsideration of issues decided at an earlier stage of the case." *Moody v. Mich. Gaming Control Bd.*, 871 F.3d 420, 425 (6th Cir. 2017) (internal citation omitted). As the Supreme Court has counseled, "as a rule courts should be loathe to [revisit prior decisions] in the absence of extraordinary circumstances…." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988). No extraordinary circumstances are present here.

The government's alternative haircut argument rests on the same logical fallacy as the Final Rule. That fallacy—that Offset Earnings are included in income—has already been debunked; the question has been fully litigated and this Court has concluded that Offset Earnings are not included in income under §951. Order at *19-21. That legal conclusion binds the parties. The government may not use an alternative argument to relitigate that issue.

## CONCLUSION

The government's attempt to relitigate an issue previously decided reflects its continued contempt for coequal branches of government. The Agencies disliked the statutes that Congress enacted in the TCJA, so they attempted to use regulations to rewrite those statutes. The government dislikes the consequences of this Court's Order, so it resists the entry of judgment in this case and

continues to argue legal issues that this Court has already decided. The government cannot ignore Congress's commands in the statute any more than it can ignore this Court's command in the Order.[16] For the reasons set forth above and in the Order, FedEx respectfully requests that this Court enter judgment in its favor according to the terms of the proposed order.

---

[16]     The Proposed Discovery Plan provides further evidence that the government is precluded from raising the haircut argument. That plan recognized that the IRS audit and the Advance Pricing Agreement process could result in additional deficiencies for the same taxable years being litigated. FedEx narrowly waived "any *res judicata* claim or defense concerning *additional deficiencies* determined by the IRS." *See* ECF 28 at 3 (emphasis added). As described above, the government's application of the Haircut Rule does not give rise to a deficiency but instead reduces the amount of FedEx's overpayment, which is still an overpayment, not a deficiency in tax. *See* §§6211 (defining a deficiency) and 6214 (defining an overpayment). Also, because there's no deficiency in the first place, a decrease to the foreign tax credits at issue here cannot give rise to an "additional" deficiency. In addition, FedEx only agreed to not raise a res judicata claim based on any issue not actually decided by the Court. As shown above, the issue of whether Offset Earnings are included in gross income under §951 has already been decided, and this Court's Order is dispositive of the government's haircut argument. Any other interpretation of the Proposed Discovery Plan would allow the government to raise the issue of whether Offset Earnings are included in gross income under §951 in other courts, in complete disregard of the *res judicata* doctrine.

Respectfully submitted,

Richard R. Roberts                     */s/ Joseph B. Judkins*

Peter D. Blumberg                    Joseph B. Judkins

FedEx Express                          Tennessee BPR No. 033183

3620 Hacks Cross Road            George M. Clarke

Building B, 3rd Floor              Cameron C. Reilly

Memphis, TN 38125               Baker & McKenzie LLP

Tel:   (901) 434-8489           815 Connecticut Avenue, N.W.

richard.r.roberts@fedex.com    Washington, DC  20006

peter.blumberg@fedex.com      Tel:   (202) 452-7000

joseph.judkins@bakermckenzie.com

george.clarke@bakermckenzie.com

cameron.reilly@bakermckenzie.com

Attorneys for Plaintiff, FedEx

Dated:  March 8, 2024

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 8, 2024, I served a copy of the foregoing document by filing it through the Court's electronic filing (CM/ECF) system, which will send an electronic copy to all counsel of record.

*/s/ Joseph B. Judkins*
JOSEPH B. JUDKINS
Attorney for Plaintiff, FedEx

## CERTIFICATE BY COUNSEL
## PURSUANT TO LOCAL RULE 7.2(A)(1)(B)

Pursuant to Local Rule 7.2(A)(1)(B), the undersigned certifies that on February 15, 2024, counsel for the parties last conferred virtually to discuss the entry of judgment sought in FedEx's Opposed Motion for Judgment. On behalf of FedEx, Joseph B. Judkins, George M. Clarke, and Cameron C. Reilly of Baker & McKenzie participated. On behalf of defendant, Kyle L. Bishop and Robert J. Atras of the United States Department of Justice, Tax Division, and Jan M. Geht of the Internal Revenue Service, Office of Chief Counsel participated.

Following this Court's decision on the parties' cross-motions for partial summary judgment in *FedEx Corp. & Subs. v. United States*, 2023 U.S. Dist. LEXIS 57367 (W.D. Tenn. Mar. 31, 2023), FedEx contacted the government on April 11, 2023, to discuss next steps in the litigation, including identifying what (if any) factual issues remained for purposes of determining the amount of the judgment (the refund amount). The parties conferred virtually on May 3, 2023.[1] The government did not inform FedEx that it was considering and/or intending to raise a new legal issue.

On July 31, 2023,[2] the government stated, for the first time, that it was considering a potential alternative argument based on the application of Treas. Reg. §1.965-5(c)(1)(i) (the alternative argument). The government had not decided whether to assert the alternative argument.

---

[1] On behalf of FedEx, Joseph B. Judkins, George M. Clarke, and Cameron C. Reilly of Baker & McKenzie participated. On behalf of defendant, Cory A. Johnson, Elisabeth M. Bruce, and Robert J. Atras of the United States Department of Justice, Tax Division, and Jan M. Geht of the Internal Revenue Service, Office of Chief Counsel participated. The same parties met again virtually on July 17, 2023.

[2] On behalf of FedEx, Joseph B. Judkins, George M. Clarke, and Cameron C. Reilly of Baker & McKenzie participated. On behalf of defendant, Cory A. Johnson, Elisabeth M. Bruce, and Robert J. Atras of the United States Department of Justice, Tax Division, and Jan M. Geht of the Internal Revenue Service, Office of Chief Counsel participated.

On September 19, 2023, the IRS Exam Team notified FedEx that it had sent a draft Acknowledgement of Facts Information Document Request to the government regarding the alternative argument a few weeks before September 19.

From July 31, 2023, to February 15, 2024, counsel for FedEx attempted several times to determine whether the government intended to pursue the alternative argument. The parties conferred virtually on August 18, 2023,[3] and January 3, 2024,[4] as well as over email on September 20, 2023, September 29, 2023, December 5, 2023, and December 13, 2023.

On December 5, 2023, FedEx submitted to the government the computations calculating the refund amount owed to FedEx for FY18 and FY19. FedEx also separately submitted the computations to the IRS Exam Team. Upon review, on January 10, 2024, the IRS Exam Team, after consultation with the government, issued additional questions about the computations. FedEx responded to these questions on February 6, 2024. Neither the government nor the IRS Exam Team have issued additional questions since.

The parties next conferred on February 15, 2024.[5] For the first time, the government confirmed its plan to pursue its alternative argument by objecting to FedEx's Motion for Judgment and using that objection to raise its alternative argument. The parties also discussed whether the government's alternative argument would affect the amounts of the refunds at issue

---

[3] On behalf of FedEx, Joseph B. Judkins, George M. Clarke, and Cameron C. Reilly of Baker & McKenzie participated. On behalf of defendant, Cory A. Johnson, Elisabeth M. Bruce, and Robert J. Atras of the United States Department of Justice, Tax Division, and Jan M. Geht of the Internal Revenue Service, Office of Chief Counsel participated.

[4] On behalf of FedEx, Joseph B. Judkins, George M. Clarke, and Cameron C. Reilly of Baker & McKenzie participated. On behalf of defendant, Kyle L. Bishop of the United States Department of Justice, Tax Division and Jan M. Geht of the Internal Revenue Service, Office of Chief Counsel participated.

[5] On behalf of FedEx, Joseph B. Judkins, George M. Clarke, and Cameron C. Reilly of Baker & McKenzie participated. On behalf of defendant, Kyle L. Bishop and Robert J. Atras of the United States Department of Justice, Tax Division, and Jan M. Geht of the Internal Revenue Service, Office of Chief Counsel participated.

for FY18 and FY19. On February 23, 2024, the government stated in an email that its alternative argument, if accepted by this Court, would affect the amounts of the refunds for the years at issue. The government also stated that it believed that this Court would need to opine on its alternative argument in order to have a final judgment entered.

/s/ Joseph B. Judkins
JOSEPH B. JUDKINS
Tennessee BPR No. 033183
Baker & McKenzie LLP
815 Connecticut Avenue, N.W.
Washington, DC 20006
Tel: (202) 452-7000
joseph.judkins@bakermckenzie.com

Dated: March 8, 2024                                    Attorney for Plaintiff, FedEx