**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**

|                                    |     |                          |
|------------------------------------|-----|--------------------------|
| FEDEX CORPORATION                  | )   |                          |
| and SUBSIDIARIES                   | )   |                          |
|                                    | )   |                          |
|                                    | )   |                          |
| Plaintiff,                         | )   |                          |
|                                    | )   | Case No. 2:20-CV-02794   |
| v.                                 | )   |                          |
|                                    | )   |                          |
| UNITED STATES OF AMERICA,          | )   |                          |
|                                    | )   |                          |
| Defendant.                         | )   |                          |
| _____  | )   |                          |

<u>**UNITED STATES OF AMERICA'S RESPONSE IN OPPOSITION TO**</u>
<u>**FEDEX'S MOTION FILED ON MARCH 8, 2024**</u>

According to FedEx's view of this case, it has known for almost two years that it would not be entitled to the full refund it sought if it prevailed in its earlier partial summary judgment motion. Yet FedEx never sought to amend its refund claim or its complaint to challenge any other part of the § 965 regulations. And FedEx did not attack Treas. Reg. § 1.965-5(c)(1)(i) in its motion for partial summary judgment. Instead, it filed a motion that, by its plain terms, sought solely to invalidate subpart (ii) of that regulation. The Court granted that partial motion.

Now, FedEx has filed a procedurally improper motion under Rule 58(d), asking this Court to enter a final judgment while conceding that the amount of judgment it seeks may change because the IRS is still reviewing information provided by FedEx as recently as March 25, 2024. Strikingly, FedEx tries to use this procedure–which allows a party to ask that a Court enter a final, appealable judgment order–to invalidate an entirely different subsection of the Treasury Regulations. FedEx cites no authority that permits it to use Rule 58(d) this way, and none exists.

The motion is more properly styled as one for partial summary judgment, and the Court can deny it on that basis because FedEx is simply incorrect. The unchallenged Treasury Regulations require a reduction in FedEx's refund. So does the relevant statutory scheme. FedEx's attempt to lodge an APA challenge via a Rule 58(d) motion is flawed both procedurally and substantively. And its procedural quibbles are meritless.

In sum, the result FedEx seeks here–to allow credits for only a portion of the foreign taxes associated with earnings that were actually included in income under § 965(a) (§ 965(a) PTEP),[1]

---

[1] Given the voluminous prior briefing setting forth the general principles at play here, this brief assumes familiarity with the complicated background issues, as well as the terminology employed by both parties throughout this case. (See Dkt. 43-1).

while allowing credits for foreign taxes associated with § 965(b) PTEP ("Offset Earnings Taxes")[2] in full–is absurd, given that § 965(a) PTEP was actually included in FedEx's income for U.S. tax purposes whereas § 965(b) PTEP was not. The Court should deny the motion.

## I.     Procedural and factual background.

FedEx filed this suit in 2020, seeking a refund and challenging the validity of Treas. Reg. § 1.965-5(c)(1)(ii) (the "Exception").[3] (Dkt. 1 at 2). This suit was filed before the IRS even initiated audit proceedings. (Dkt. 28 at 1). In the United States' answer, the government denied FedEx's allegation that "[n]othing in § 965 or any other part of the Code disallows the credits for foreign taxes associated with Offset Earnings." (Dkt. 22 ¶27; see also ¶¶77, 100, and 108).

The parties agreed to a case schedule allowing the audit to proceed while this Court ruled on the validity of the Exception. (Id. at 2-3). After discovery ended, FedEx moved for partial summary judgment "that Treas. Reg. § 1.965(c)(1)(ii) . . . is invalid." (Dkt. 42 at 7). In an accompanying stipulation, the parties acknowledged that, if the Court agreed with the United States, FedEx would not be entitled to a refund under Count II of its complaint. They also acknowledged that, if the Court agreed with FedEx, the parties would need to make further efforts to determine any refund owed to FedEx. (Dkt. 42-1 ¶¶25-26).

In its partial summary judgment motion, FedEx argued, *inter alia*, that § 960(a)(3) is not limited to allowing credits for withholding taxes on distributions of Offset Earnings. (Dkt. 42 at 21). FedEx's motion did not address the amount of foreign income taxes to be allowed should the

---

[2] Offset Earnings Taxes are those foreign income taxes of the positive earning foreign corporation associated with the portion of § 965(a) earnings amount that is offset under § 965(b). The § 965(a) earnings amount is the greater of the accumulated post-1986 deferred foreign income of the positive earning foreign corporation at two measurement dates.

[3] Because Treas. Reg. § 1.965-5(c)(1)(ii) functions as an exception to the general rule in Treas. Reg. § 1.965-5(c)(1)(i), they are referred to as the Exception and the General Rule, respectively.

Court rule in its favor or the applicability of Treas. Reg. § 1.965-5(c)(1)(i) (the "General Rule"). (<u>See generally</u> <u>id.</u>).

The Court granted partial summary judgment for FedEx. (Dkt. 49). The Court's ruling was limited to the question presented by FedEx: whether the Exception was valid. (<u>Id.</u> at 8 ("For purposes of these summary judgment cross-motions, the question before the Court is whether the government's regulation should be upheld.")). The Court held that the Exception was invalid, reasoning that taxes attributable to Offset Earnings were not deemed paid under § 960(a)(1), but were deemed paid upon distribution under § 960(a)(3). In making this finding, the Court interpreted § 965(b)(4)(A) as treating Offset Earnings as previously included income only under § 959, and not when applying § 960, which controls the grant of tax credits. (<u>Id.</u> at 19). The Court's order did not address the General Rule.

## II.    Standard of review.

Rule 58 sets forth the procedural requirements for when judgment is entered such that the running of the time for an appeal is triggered. Fed. R. Civ. P. 58(c). Under the Rule, except in circumstances not relevant here, "[e]very judgment and amended judgment must be set out in a separate document." Fed. R. Civ. P. 58(a). "A party may request that judgment be set out in a separate document as required by Rule 58(a)." Fed. R. Civ. P. 58(d).

Under Rule 56, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Unlike Rule 58 (and other procedural motions), Rule 56 permits the Court to determine issues of law. Cf. <u>Audio Technica U.S., Inc. v. United States</u>, 963 F.3d 569, 575 (6th Cir. 2020) (holding "legal issues must be decided in the context of a motion for summary

judgment" and admonishing lower court for ruling on issues that would "essentially grant" one side "judgment as a matter of law" in "the context of a motion in limine").

### III.    Argument.

The Court should deny FedEx's motion because it fails as a matter of both procedure and substance. First, FedEx asks this Court to take the jarring procedural step of concluding that its earlier order on *partial* summary judgment decided all issues in this case. FedEx also asks this Court to take the unprecedented step of invalidating a regulation through a Rule 58(d) motion.[4] Nothing in the APA or the Federal Rules contemplate such a departure from procedural norms.

Assuming the Court *sua sponte* converts this motion to one for partial summary judgment, the motion must be denied because FedEx's substantive arguments fail. Reading the regulations alongside the Court's order, the General Rule applies to Offset Earnings Taxes that are not subject to the Exception. Given this Court's order, FedEx's Offset Earnings Taxes are subject to the General Rule. This reading aligns with the statutory framework in the Internal Revenue Code, which provides that FedEx is at most entitled to a refund based on the foreign taxes paid or deemed paid with respect to subsequent distributions of earnings reduced by the applicable percentage under § 965(g).

Lastly, the Court can also reject FedEx's procedural protestations. FedEx limited its motion for partial summary judgment solely to the validity of the Exception. Thus none of the procedural doctrines cited by FedEx are relevant here.

---

[4] FedEx fails to identify any case when a court used a Rule 58(d) motion to reach any substantive issue of law, let alone invalidate a regulation.

### A.   FedEx cannot prevail on a Rule 58(d) motion at this time.

FedEx contorts the Federal Rules of Civil Procedure to obtain a judgment beyond what the Court decided. To start, the grant of a partial summary judgment motion is definitionally not a final judgment. Golden Eye Media USA, Inc. v. Trolley Bags UK Ltd., 2021 WL 2072382, at *5 (S.D. Cal. May 24, 2021).[5] This fact alone is fatal to FedEx's motion. While Rule 58 does not specify that a judgment under it must be a "final" judgment, finality is a prerequisite for a judgment to establish appellate jurisdiction. 28 U.S.C. § 1291.

Second, Rule 58 is unavailable to FedEx because the Court's order cannot be a final judgment as to the General Rule. FedEx's motion for partial summary judgment did not even mention the General Rule. (Dkt. 42). The Court did not mention it in its order. (Dkt. 49). And the Court and the parties have always anticipated further proceedings if FedEx was granted summary judgment as to the validity of the Exception. (See, e.g., Dkt. 42-1 at ¶25). In fact, FedEx's instant motion explicitly acknowledges more work to be done. (Dkt. 52 at 7 ("FedEx anticipates that the parties can resolve the computational issues while this motion is pending.")). Thus, FedEx would be hard pressed to assert that the Court's order demonstrates its clear intention to embody a final decision as to the amount of FedEx's refund.

---

[5] In determining whether a judgment is final, this Circuit has emphasized that "[p]rimarily, a reviewing court should consider whether the trial judge has or has not clearly declared his intention that his opinion embody a final decision, or whether all of the elements necessary for a final decision are present in a given order or opinion." Advanced Accessory Sys., LLC v. Gibbs, 71 F.App'x. 454, 459 (6th Cir. 2003) (cleaned up). A court order in an action for money constitutes a final judgment only if it "embodies the essential elements of a judgment for money and clearly evidences the judge's intention that it shall be his final act in the case." McDermitt v. United States, 954 F.2d 1245, 1248 (6th Cir. 1992) (quoting United States v. F. & M. Schaefer Brewing, 356 U.S. 227, 232 (1958)). This Circuit found a court order insufficient to constitute a final judgment where it "failed to state whether the taxpayer was to receive the refund and interest requested in its complaint . . . [and] failed to specify the amount of the refund and the dates for computing interest." Philhall Corp. v. United States, 546 F.2d 210, 213-14 (6th Cir. 1976).

Third, the Court's order is not a final judgment because it did not resolve the amount of the judgment as required in a suit for money. As stated, FedEx admits this case is not ripe for a final judgment because calculations remain in dispute. (See Dkt. 52 at 2). In its proposed judgment, FedEx explains that "[a]t the parties' request, the Court did not rule on the amount of the overpayment of taxes," yet inexplicably then asks the Court to enter judgment on a specific amount.[6] FedEx is correct that the Court purposefully did not rule on the amount of the overpayment. Thus, the Court's order cannot be transformed into a final judgment as it was not intended to be the Court's final act here. Sprint Nextel Corp. v. The Middle Man, Inc., 2015 WL 163001, at *1 (D. Kan. Jan. 13, 2015) (rulings on partial summary judgment where "assessment of damages or awarding of other relief remains to be resolved" are not final judgments) (quoting Liberty Mut. Ins. v. Wetzel, 424 U.S. 737, 744 (1976)), rev'd sub nom. on other grounds at Sprint Nextel Corp. v. Middle Man, Inc., 822 F.3d 524 (10th Cir. 2016); see also Fed. R. Civ. P. 54(b) (in an action presenting more than one claim for relief, any order "that adjudicates fewer than all of the claims" does not end the action).

Lastly, FedEx's "motion for judgment" consists almost entirely of substantive arguments about the applicability of the General Rule and does not mention any of the requirements of Rule 58.[7] (See generally Dkt. 52). In fact, FedEx mentions the rule exactly *once* in the entire brief. (Dkt. 52 at 6; see also iii (Table of Authorities)). FedEx omits the requirements of a Rule 58(d) motion because it has not–and cannot–meet them.

---

[6] FedEx submitted this proposed judgment to the Court by email on March 8, 2024.

[7] At times, even FedEx seems confused as to whether it moved under Rule 56 or 58. FedEx recently insinuated that it has the right to reply in briefing this motion. (Dkt. 55 at 10). But the Local Rules do not permit a reply brief (absent a court order) for a Rule 58 motion. L.R. 7.2(c). Replies are allowed for Rule 56 motions. L.R. 56.1(c).

In sum, the pending motion can easily be denied as procedurally improper. But the Court can also deny it for an additional reason: FedEx is substantively wrong.

**B.      Any refund awarded to FedEx remains subject to the statutes and regulations governing foreign tax credits.**

It should be uncontroversial that, despite the Court's ruling on the Exception, all other provisions of the Internal Revenue Code and Treasury Regulations continue to apply when determining FedEx's refund.[8] So it is odd that FedEx now asks this Court, for the first time, to ignore some of those provisions to allow it to inflate its refund.

The Court should decline FedEx's invitation. By their terms, the regulations disallow a portion of foreign tax credits at issue. Treas. Reg. § 1.965-5(c)(1)(i). In light of the Court's earlier ruling, with which the United States respectfully disagrees, this rule is both the best reading of the relevant statutory provisions, as well as a permissible one.

**1.      When read with the Court's order, the applicable regulations require that FedEx reduce its foreign tax credits, thereby reducing its refund.**

Treasury Regulation § 1.965-5(c)(1) is organized into three subsections. The first subsection (*i.e.*, the General Rule) sets forth the rule that applies "[i]n general." Treas. Reg. § 1.965-5(c)(1)(i). It captures "any foreign income taxes treated as paid or accrued with respect to any amount for which a [§] 965(c) deduction is allowed for a [§] 958(a) U.S. shareholder inclusion year." Id. It then states expressly that the phrase "taxes treated as paid or accrued *include[s]* . . . "foreign income taxes deemed paid under section 960(a)(3) (as in effect on December 21, 2017) . . . with respect to distributions of . . . section 965(b) previously taxed earnings and profits." Id. (emphasis added).

---

[8] The arguments in this brief assume that the Court's analysis is correct. (Dkt. 47). Nothing here should be considered a waiver or disavowal of the government's earlier positions, which it may present on (and which are preserved for) appeal.

Subsection (c) continues by providing two exceptions to the General Rule (only one of which is relevant here). Treas. Reg. § 1.965-5(c)(1)(ii-iii). In the relevant Exception, the Treasury Regulation provided that, notwithstanding the language of the General Rule (which partially disallowed certain foreign tax credits), it would fully disallow foreign tax credits under certain circumstances. Treas. Reg. § 1.965-5(c)(1)(ii).

This Court's order concluded that Offset Earnings Taxes are not treated as having been deemed paid under § 960(a)(1) and thus are available to be deemed paid under § 960(a)(3) with a distribution of Offset Earnings. (Dkt. 49 at 24-25). In reaching this conclusion, the Court held that the Exception is inapplicable because it fails both steps of the <u>Chevron</u> framework. (<u>Id.</u> at 28-29 (discussing Treas. Reg. § 1.965-5(c)(1)(ii)) (citing <u>Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.</u>, 467 U.S. 837 (1984)).

But the Court said nothing about any other aspect of Treas. Reg. § 1.965-5(c)(1). So it is unsurprising that the government continues to rely on the remainder of that regulation (as well as any other applicable Treasury Regulation).[9] Subsection (c) provides rules about the extent to which a foreign tax credit is allowed (or disallowed) for foreign income taxes "treated as paid or accrued." As noted above, it defines "taxes treated as paid or accrued" to include "foreign income taxes deemed paid under [§] 960(a)(3) . . . with respect to distributions of . . . [Offset Earnings]." Treas. Reg. § 1.965-5(c)(1)(i). The General Rule disallows foreign tax credits in an amount equal to the "applicable percentage" of the relevant foreign income taxes.[10] <u>Id.</u>

---

[9] Indeed, the Court itself relied on Treasury Regulations "not challenged by FedEx" in its analysis. (Dkt. 49 at 19 n.11). So has FedEx. (<u>See</u>, <u>e.g.</u>, Dkt. 42 at 22 (relying on Treas. Reg. § 1.964-1(a)(1); 23 (Treas. Reg. § 1.921-1T(c)(1)).

[10] The applicable percentage is defined in Treas. Reg. § 1.965-5(d).

From the start of this case, FedEx argued that "under section 960(a)(3) . . ., FedEx was deemed to have paid $232,904,450 of foreign taxes on FedEx's Offset Earnings." (Dkt. 1 at ¶44). And so now, given this Court's order that the Exception does not apply, and Offset Earnings Taxes are deemed paid under § 960(a)(3) with respect to a distribution of Offset Earnings, the plain terms of the General Rule provide that an "applicable percentage" of FedEx's Offset Earnings Taxes is subject to disallowance. Treas. Reg. § 1.965-5(c)(1)(i).

FedEx next erroneously contends that the General Rule does not apply to its facts. (Dkt. 52 at 14). By its terms, it applies to "foreign income taxes deemed paid under [§] 960(a)(3)," precisely the taxes at issue given the Court's order. FedEx also misrepresents that the government previously argued that § 960(a)(3) "applies only to withholding taxes paid or accrued on the distribution of foreign earnings." (Dkt. 52 at 14). The record flatly contradicts this. (See Dkt. 43-1 at 14 n.10; id. at 16 ("any additional foreign taxes subsequently imposed on a distribution may be claimed as a credit under § 960(a)(3) only when the earnings being distributed have previously been included in gross income.")).[11] And the government's earlier footnote cited by FedEx only provides that § 960(a)(3) "would apply" to withholding taxes, not that it would apply *only* to withholding taxes. (Dkt. 52 at 15 n.10 (citing Dkt. 43-1 at 14 n.10)).

FedEx's contextual argument fares no better. It contends that the rule contained in the Exception could not cover amounts also covered by the General Rule. (Dkt. 52 at 15-16). But it ignores that the General Rule, by its terms, applies "[i]n general," while the Exception contains a more specific rule. Treas. Reg. § 1.965-5(c)(1)(i) (entitled "In general"); (ii). It is unremarkable

---

[11] Also, Treas. Reg. § 1.965-5(b)(1) provides as examples both withholding taxes on § 965 PTEP distributions and foreign income taxes imposed on a U.S. citizen by the jurisdiction of residence upon receipt of a distribution of § 965(a) PTEP or § 965(b) PTEP. The government's point, with which this Court apparently disagreed, was that § 960(a)(3) applies only to foreign taxes imposed upon distribution.

that a legal document containing a general rule is subject to specific exceptions. Thus it is no surprise that, when the exceptions to the rule do not apply, the general rule governs.[12]

### 2.     The statutory framework confirms this analysis.

This rule comports with the statutory framework surrounding these issues, as discussed by this Court in its earlier order. (Dkt. 49). Section 965(g) requires a disallowance of an applicable percentage of credits for foreign taxes that are paid or deemed paid on the earnings that are considered under § 965, including when those earnings are distributed as PTEP.[13]

A close reading of the statute only reaffirms that the § 965(g) disallowance applies to Offset Earnings Taxes. Section 965(g)(1) disallows an "applicable percentage" of the credits for taxes treated as paid "with respect to any amount for which a deduction is allowed under this section." Because Offset Earnings Taxes are taxes that are "with respect to" amounts for which a deduction is allowed under § 965, they are subject to the applicable percentage reduction. Specifically, a § 965(c) deduction is allowed for the "amount [] included in the gross income" under § 965, which

---

[12] FedEx argues that the preamble to the regulations seeks to forbid "multiple disallowance," but it misreads that language, which is not referring to the distinction between the General Rule and the Exception, but is referring to the rule that ensures that the disallowance of foreign tax credits under § 965(g) is not applied multiple times to the same foreign taxes as they are distributed through a chain of corporations. See 83 Fed. Reg. 63200, 63218 (Dec. 7, 2018) ("In order to ensure that the disallowance under [§] 965(g) only applies once, the rule in proposed §1.965-5(c)(1)(iii) does not apply to taxes deemed paid under [§] 960(b)(2) with respect to a [§] 959(b) distribution, but only applies when [PTEP] are distributed to a domestic corporate shareholder.").

[13] The statute's disallowance of credits attributable to distributions of PTEP is evidenced in § 965(g)(3), which disallows a deduction for foreign taxes that are not creditable under § 965(g)(1). Because a deduction is allowed only for taxes directly paid or accrued by the taxpayer (not taxes deemed paid by the taxpayer), and a U.S. taxpayer would ordinarily be subject to foreign tax only on a distribution from a foreign corporation, not on an income inclusion under U.S. tax law, "taxes paid or accrued" can be understood only to refer to foreign income taxes directly paid or accrued under § 901 with respect to a distribution of PTEP. Put differently, the only category of foreign taxes a domestic taxpayer could deduct in the § 965 context are taxes imposed on a distribution of § 965 PTEP, including a distribution of Offset Earnings. Thus, § 965(g) necessarily applies to taxes paid (or deemed paid) with respect to a distribution of § 965 PTEP.

comprises the shareholder's share of (i) the § 965(a) earnings amount ("Amount A") for all positive earnings foreign corporations and (ii) the E&P deficit ("Amount B") for all deficit foreign corporations.[14] Thus, any amount for which the deduction under § 965(c) is allowed is determined by reference to all foreign corporations' earnings, which includes Offset Earnings.[15]

When Congress uses "very broad language" like the phrase "with respect to," courts should respect that language. Mobil Oil Corp. v. Va. Gasoline Marketers and Auto. Repair Ass'n, Inc., 34 F.3d 220, 225 (4th Cir. 1994); see also Lamar, Archer & Cofrin, LLP v. Appling, 584 U.S. 709, 717 (defining "respecting" as meant to "ensur[e] that the scope of a provision covers not only its subject but also matters relating to that subject") (internal citations omitted). This is not the only way § 965 speaks broadly about its subject. By its terms, § 965(g)(1) applies to "any" taxes with respect to "any" amount for which a deduction is allowed. Cf. United States v. Clintwood Elkhorn Mining Co., 553 U.S. 1, 7 (2008) ("Five 'any's" in one sentence and it begins to seem that Congress meant the statute to have expansive reach").

In sum, the statutory framework described above, which is separate from the statutory basis underlying the Exception addressed by the Court's order, resolves the dispute over the General

---

[14] The computation under § 965 concerns only foreign corporations that are specified foreign corporations, as defined in § 965(e). This brief uses the shorthand "foreign corporation" to refer to specified foreign corporations.

[15] Section 965(c)'s reliance on the earnings of all foreign corporations is reinforced by its definition of "aggregate foreign cash position", which determines the amount of the deduction. The definition in § 965(c)(3) includes the cash position of both positive earnings foreign corporations (used to determine Amount A) and deficit foreign corporations (used to determine Amount B). Thus, § 965(c) is determined by reference to both the amount and character of all earnings, including the Offset Earnings.

Rule. And because it confirms that FedEx should not receive the windfall it seeks, but instead should be subject to the General Rule, the Court should conclude as such.[16]

FedEx tries to avoid this obvious conclusion through sleight-of-hand arguments that ignore the illogical result it asks this Court to reach—partially allowing credits for foreign taxes associated with § 965(a) amounts included in income, while fully allowing credits for foreign taxes associated with Offset Earnings that are *never* included in income. FedEx's reading of the relevant statutes defies both their natural understanding and FedEx's own earlier representations.

To start, FedEx suggests that "[n]othing in § 965(g) or any other provision of the Code [reduces] credits for foreign taxes paid on Offset Earnings[.]" (Dkt. 52 at 9). It suggests this "makes sense" because the "credits associated with Offset Earnings will apply against income subject to regular U.S. tax rates." (Id.). This argument fails for three reasons. First, as discussed above, it is belied by the text of the Code. Second, Congress created a special regime for earnings accounted for under the U.S. system under § 965. That includes both the positive earnings included under § 965(a) and the deficits of earnings considered under § 965(b). Those earnings receive preferential treatment under § 965, and it therefore makes sense the foreign tax credits should be reduced under those rules.

Third, although those credits would be used to offset tax on income that arose outside of § 965, FedEx omits that such income would be factually unrelated to the foreign activities on which

---

[16] For context on FedEx's claim that its construction of § 965 and the regulations "makes sense," according to FedEx's own computations from December 2023, the additional $234 million of foreign tax credits claimed by FedEx in this case would entirely be used to offset U.S. tax on unrelated income. If the General Rule applies to partially disallow those additional $234 million of credits, FedEx would still receive about $104 million of those credits (*i.e.*, total taxes x (1 - applicable percentage)).

the taxes were imposed.[17] Instead, it would be other foreign income that was either not subject to foreign tax or subject to foreign tax at a reduced rate. Permitting this type of cross-crediting between taxes on earnings within the scope of § 965 and other earnings is precisely what § 965(g) was intended to preclude.

FedEx's remaining arguments fare no better. It argues that Congress "expressly disallowed credits for foreign taxes paid on Included Earnings[.]" (Dkt. 52 at 13). But a review of the statutory text includes no such language. Instead, the text is broader than FedEx allows, and refers to foreign taxes "*with respect to* any amount for which a deduction is allowed." § 965(g)(1) (emphasis added). Had Congress meant the language of § 965(g) to apply only to foreign taxes "paid on" Included Earnings, it would have said so. It didn't. FedEx seeks to elide this distinction by using the phrase "paid on" eight times in its analysis section, notwithstanding that the phrase is nowhere in § 965(g). (Dkt. 52 at 11-14).

FedEx attempts to bolster its flawed reasoning by references to nonbinding analyses. (Dkt. 52 at 12-13). But the title of a statutory heading does not "'override the plain words' of the statute." Dubin v. United States, 599 U.S. 110, 121 (2023) (quoting Fulton v. Philadelphia, 593 U.S. 522, 536-37 (2021)). The Supreme Court has held that the Joint Committee reports referenced by FedEx (Dkt. 52 at 13 n.7) are "not a legitimate tool of statutory construction." United States v. Woods, 571 U.S. 31, 47-48 (2013). But if they were, they would undercut FedEx's primary argument— that Congress drafted § 965 with such precision that only FedEx's interpretation can be valid. See,

---

[17] In FedEx's view, because these are credits on distributions of PTEP, which are not taxed when distributed, the taxes will offset U.S. tax on other income and because the other income will be taxed at regular U.S. rates (not the reduced § 965 rates), there is no need to reduce these taxes by the applicable percentage. But under that logic, the haircut should not apply to any credits on distributions of § 965(a) PTEP or § 965(b) PTEP, since taxes that come up with § 965(a) PTEP distributions would also be offsetting U.S. tax on other income. FedEx does not address this logical problem in its own argument.

e.g., JCS-1-18 at 358, 362, 363 (flagging possible need for technical corrections to language at issue).

### 3.     The General Rule is a reasonable interpretation of § 965(g).

Even if the Court found the language of § 965(g) does not clearly limit the credits FedEx wrongly seeks to have fully allowed, the statute at a minimum does not foreclose that result. See, e.g., Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 666 (2007) ("the meaning – or ambiguity – of certain words or phrases may only become evident when placed in context . . . . It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.") (quoting FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 132-33 (2000)).

As noted above, the statute uses broad language to describe the scope of the disallowance rule. Even if the Court construes the statutory language as ambiguous, Congress expressly delegated to the Treasury Department the authority to resolve those ambiguities. 26 U.S.C. § 965(o). And applying the General Rule to Offset Earnings Taxes is consistent with the broader structure of § 965 and Congress's policy choices as reflected in § 965(g), which is to disallow credits with respect to amounts taken into account under § 965 to the same extent that the effective rate on the included amount was reduced.

### C.     FedEx's cannot successfully challenge the General Rule under the APA.

Having drawn no blood on its substantive attacks on subsection (c)(1)(i), FedEx moves to procedural challenges. These too fail. At the outset, FedEx states that the General Rule is invalid because it contradicts the plain language of the Internal Revenue Code. But as discussed above, see supra Section III.B.1-2, this is wrong: the Code by its terms reduces Offset Earnings Taxes by the applicable percentage. § 965(g)(1).

Despite acknowledging its motion was "prophylactic[]," (Dkt. 52 at 7) FedEx characterizes the government as arguing that "§ 965(b)(4)(A) resulted in an inclusion of Offset Earnings in income under § 951(a)." (Id. at 12). As FedEx otherwise admits–and cannot dispute–the government made no such argument. Rather, this argument is a straw man set up by FedEx. As already discussed, the government relies on the plain language of § 965(g), which limits foreign tax credits to an "applicable percentage" of taxes paid or accrued "*with respect to* any amount for which a deduction is allowed." § 965(g)(1) (emphasis added).

FedEx concludes its truncated APA analysis by arguing that the government failed to sufficiently notify regulated parties of the General Rule.[18] (Dkt. 52 at 18 (citing 5 U.S.C. §§ 553 and 706(2)(D)). The only thing FedEx points to is that the Treasury Department did not make it clear enough that the General Rule could apply to Offset Earnings Taxes. (Id.). But the APA does not require agencies specifically explain every single application of a rule, such as the application of General Rule to Offset Earnings, particularly when that result is obvious from the plain text of the regulations. Oakbrook Land Holdings, LLC v. Comm'r, 28 F.4th 700, 711 (6th Cir. 2022). Logically, in the absence of an exception to a general rule, the general rule applies. So it is here. FedEx did not raise this issue during the notice-and-comment period. It cannot now ascribe its failure to comment as a failure of the agency.[19]

---

[18] FedEx cites a case where the agency guidance at issue was issued without notice-and-comment. (Dkt. 52 at 18 (citing Mann Constr., Inc. v. United States, 27 F.4th 1138 (6th Cir. 2022)). There can be no serious dispute that the General Rule was issued through notice-and-comment rulemaking. See 83 Fed. Reg. 63200.

[19] Because the Treasury Department followed the APA's procedural requirements, there is no procedural irregularity in the promulgation of the General Rule. FedEx is wrong when it argues Chevron deference does not apply. (Dkt. 52 at 18). But the government does not need deference to prevail. The Court should rule against FedEx on the merits because the government's reading of the relevant statutes is the only permissible one. But even if it weren't, it's still the best reading. Brett M. Kavanaugh, *Fixing Statutory Interpretation*, 129 Harv. L. Rev. 2118, 2144 (2016)

**D.    FedEx's procedural arguments ignore the record.**

FedEx concludes its motion with an attempt to achieve victory via technicality. Attempting to expand the Court's ruling and inflate its tax refund, FedEx argues that the applicability of the General Rule is precluded by waiver and the law-of-the-case doctrine. As with its substantive arguments above, these procedural missives also fail.

FedEx argues that the government waived application of the General Rule by not pleading it as an affirmative defense. This argument fails for several reasons, most obviously because the application of the General Rule is not an affirmative defense. An affirmative defense is a "defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true." See, e.g., Desai v. Charter Commc'ns, LLC, 381 F. Supp. 3d 774, 791 (W.D. Ky. 2019) (quoting Affirmative Defense, Black's Law Dictionary (10th ed. 2014)); see also Germain v. U.S. Bank Nat'l Ass'n, 920 F.3d 269, 274 (5th Cir. 2019) (quoting 5 Wright & Miller, Fed. Prac. And Proc. Civ. § 1271 (4th ed. 2023)) (denying allegations in complaint puts those matters in issue without requiring separate pleading of an affirmative defense).

Applying the General Rule does not defeat FedEx's claim and is thus not an affirmative defense that can be waived. FedEx's claim is that the Exception is invalid and that it is entitled to certain foreign tax credits as a result. (See, e.g., Dkt. 1). The General Rule simply disallows a portion of the foreign tax credits FedEx claims. In other words, it is part of the government's denial of FedEx's affirmative claim, not a defense in the event that FedEx's allegations are true. Further, whether the General Rule applies flows naturally from the invalidation of the Exception, see *supra*

---

(advocating for courts to strive for the "best reading" of a statute rather than find ambiguity). And of course, the government can and should receive deference if appropriate. Chevron, 467 U.S. at 843-44.

Section III.B-1. FedEx cannot be surprised that the General Rule applies after the Exception was invalidated. <u>See</u> <u>Ford Motor Co. v. Transp. Indem. Co.</u>, 795 F.2d 538, 546 (6th Cir. 1986).

Regardless, even if application of the General Rule were an affirmative defense, it was not waived here because FedEx has not made, and cannot make, the requisite showing of surprise or unfair prejudice. <u>See</u> <u>Herrera v. Churchill McGee, LLC</u>, 680 F.3d 539, 546-47 (6th Cir. 2012) (plaintiff was on notice of defense and could have conducted necessary discovery and briefed issue on appeal); <u>Smith v. Sushka</u>, 117 F.3d 965, 969 (6th Cir. 1997) (failure to plead affirmative defense did not constitute waiver when the failure "did not result in surprise or unfair prejudice to [the plaintiff.]"). "The prejudice inquiry focuses on 'whether the plaintiff had sufficient notice to prepare for and contest the defense.'" <u>Germain</u>, 920 F.3d at 274 (internal citations omitted).

If FedEx believed the General Rule was invalid, it should have pled so. FedEx had notice of the applicability of the General Rule *two years ago*, well before it filed its partial summary judgment motion. (Dkt. 52 at 10, 20). FedEx even formulated and presented its argument as to the General Rule's applicability before it filed the instant motion. (<u>Id.</u> at 10). FedEx also notes that its counsel represents another taxpayer litigating the disallowance of credits for foreign taxes paid on Offset Earnings and admits that its counsel "knew of the IRS's suggestion that it considered haircutting credits on Offset Earnings [under the General Rule]."[20] (<u>Id.</u> at 17 n.15). Thus, FedEx had notice of the applicability of the General Rule and the opportunity to contest it in its partial summary judgment motion, and there is no surprise or unfair prejudice to FedEx.

And of course, as noted above, it was not incumbent upon the government to raise this argument at earlier stages of this case. FedEx complains the government did not make this

---

[20] By contrast, the other taxpayer represented by FedEx's counsel specifically pled that neither the Exception *nor* the General Rule could apply to the type of taxes at issue. (Dkt. 52 at 17 n.15 (discussing <u>Sysco Corp. v. Comm'r</u>, U.S. Tax Court Dkt. No. 5728-23)).

argument "in discovery." (Dkt. 52 at 18). But FedEx propounded *no* discovery in this case.[21] Similarly, the government did not address this regulation in opposing FedEx's motion for summary judgment because FedEx *did not raise the issue* in that motion.

Finally, FedEx argues that the law-of-the-case doctrine precludes the use of the General Rule. But a district court retains the ability to revisit its earlier decisions during a case, and interlocutory orders (like the Court's order on partial summary judgment) do not become law of the case precluding reconsideration. See, e.g., Dictograph Prods. Co., Inc. v. Sonotone Corp., 230 F.2d 131, 134-35 (2d Cir. 1956) (L. Hand, J.) ("No one will suggest that the [district court judge] may not change his mind and overrule his own order . . . . 'In the absence of statute the phrase, 'law of the case,' as applied to the effect of previous orders on the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit on their power.'") (quoting Messinger v. Anderson, 225 U.S. 436, 444 (1912) (Holmes, J.)). And while FedEx argues that the General Rule rests on the interpretation rejected by the Court that Offset Earnings are not included in income under § 951 and is thus precluded by the law-of-the-case, that is simply wrong.

But the United States does not ask this Court to redecide the issue that it has already decided. The government's request (that the Court apply the General Rule) fully comports with the prior opinion of this Court and the law-of-the-case doctrine. As explained, see *supra* Section III.B.1, when read *with* the Court's order, the applicable regulations require a reduction of FedEx's foreign tax credits. As explained above, see *supra* Section III.B.1-2, the applicability of the

---

[21] FedEx complains that the parties agreed in the Proposed Discovery Plan to "identify . . . any predicate issues on which the foreign tax credit issue is based." (Dkt. 52 at 20 n.14). But FedEx fails to note that the Plan defined the "foreign tax credit issue" as including only arguments raised in its complaint, *i.e.*, that FedEx believed the Exception was invalid. (Dkt. 28 at 1-2).

General Rule turns on the foreign taxes paid or deemed paid with respect to subsequent distributions of earnings.

**IV.    Conclusion.**

FedEx seeks extraordinary relief. It asks this Court to take the unprecedented step of issuing substantive legal rulings in the context of a Rule 58(d) motion. The Federal Rules do not permit FedEx to contort the rules to obtain substantive rulings in the context of a Rule 58 motion. The Court should deny the motion on these grounds. The Court should also deny the motion on the merits. The Court previously ruled the Exception to the General Rule did not apply. Accordingly, the General Rule applies.

*[signature on following page]*

DATED: April 12, 2024

DAVID A. HUBBERT
Deputy Assistant Attorney General

*s/ Kyle L. Bishop*
KYLE L. BISHOP
D.C. Bar No. 999007
Trial Attorney, Civil Trials – Eastern
JAN M. GEHT
Special Trial Attorney
ROBERT J. ATRAS
Trial Attorney, Civil Trials – Eastern
U.S. Department of Justice – Tax Division
P.O. Box 227, Ben Franklin Station
Washington, D.C. 20044
202-616-1878 (Bishop)
651-361-1823 (Geht)
202-598-3738 (Atras)
Fax: 202-514-6866
Kyle.L.Bishop@usdoj.gov
Jan.M.Geht@irscounsel.treas.gov
Robert.J.Atras@usdoj.gov

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 12, 2024, I electronically filed the foregoing document and all attachments thereto with the Clerk of Court using the CM/ECF system, which will provide notice to all parties registered in said system.

*s/ Kyle L. Bishop*
Kyle L. Bishop
Trial Attorney, U.S. Dept. of Justice
Tax Division
