UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

|  |  |
|---|---|
| FEDEX CORPORATION and SUBSIDIARIES  *Plaintiff*, v.  UNITED STATES OF AMERICA,  *Defendant*. | Civil Case No. 2:20-cv-02794  The Honorable Samuel H. Mays, Jr. |

# FEDEX'S SUPPLEMENTAL BRIEF REGARDING
## *LOPER BRIGHT ENTERPRISES v. RAIMONDO*

The Supreme Court's opinion in *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024)—which overrules *Chevron USA, Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984), and instructs courts to determine the best interpretation of the statute without any deference to the Agencies—cements the conclusion that neither §965(g) nor the Haircut Rule (in Treas. Reg. §1.965-5(c)(1)(i)) partially disallows any amount of credits for historical foreign taxes paid on Offset Earnings. The best reading of §965 is straightforward: §965(g)(1) applies exclusively to Included Earnings—the only "amount for which a deduction is allowed under [§965]." That's because the sole deduction in §965 is in subsection (c), and it applies only to the "amount … included in the gross income of [the] United States shareholder under section 951(a)(1) by reason of [§965]." *See* §965(c)(1). And as this Court previously held, §965(b)(1) crystallizes the legal conclusion that Offset Earnings are not included in income under §951(a)(1). ECF 49 at 12.[1]

Plain statutory text resolves the dispute over the government's new alternative argument.

---

[1] In responding to this Court's July 1, 2024 Order (ECF 63), this brief focuses on the government's new alternative argument and does not address the impact of *Loper Bright* on the Court's prior conclusion that the Final Rule is invalid. ECF 49. But *Loper Bright* only confirms this Court's prior holding, which was based on unambiguous statutory text.

1

Even if there were reason to consider this argument under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), the result would be the same. *Skidmore* teaches that agency guidance may have "weight" depending on "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it [the] power to persuade, if lacking [the] power to control."[2] *Id.* at 140. These factors show that the government's late-breaking argument—that the Haircut Rule in Treas. Reg. §1.965-5(c)(1)(i) partially disallows credits for historical foreign taxes paid on Offset Earnings—is entitled to no such "weight."

I. **The Government's Argument Contradicts the Statute and Carries No Weight on the Purely Legal Issue of Whether §965(g) Partially Disallows Credits on Offset Earnings.**

**1.** The government's new litigating position is flawed from inception, as it doesn't interpret any statutory language. Instead, it's simply an attempt to partially disallow credits on Offset Earnings by adding a limitation that doesn't exist in the Code. Because the government isn't interpreting any statutory language, it's argument cannot qualify for *Skidmore* respect, as it violates the basic threshold requirement that an agency cannot "add[] to the statute … something which is

---

[2] Courts sometimes refer to the weight given to an agency interpretation as a kind of "deference." That's a misnomer. *Loper Bright* holds that these interpretations are merely entitled to "respect" or "weight" commensurate with their persuasiveness. Even before *Loper Bright*, "*Chevron* deference" was sharply distinct from "*Skidmore* respect," as "*Skidmore* … permits an agency to *earn* the weight given to it by the courts, while *Chevron* gives reasonable agency interpretations controlling weight *as a matter of right*." *Air Brake Sys. v. Mineta*, 357 F.3d 632, 643 (6th Cir. 2004) (emphasis in original). Simply put, *Loper Bright* abolished deference; it didn't swap one kind for another. *See Relentless, Inc. v. Dept. of Commerce*, Transcript of Oral Argument at 52-53, 144 S. Ct. 2244 (2024) ("there was reference to *Skidmore* deference, and I guess I don't think that's the right term, that it's respect or pay attention to, but I think, if we throw the term 'deference' into *Skidmore* deference, we're going to walk into another problem … like the one we have with *Chevron* deference") (Kavanaugh, J.), https://www.supremecourt.gov/oral_arguments/argument_transcripts/2023/22-1219_e2p3.pdf. *See, e.g.*, *Lawson v. FMR LLC*, 571 U.S. 429, 479 (2014) ("In the absence of *Chevron* deference, [the agency] may claim only 'respect according to its persuasiveness' under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).").

not there." *United States v. Calamaro*, 354 U.S. 351, 359 (1957).

    **2.**    Because §965(b) makes clear that Offset Earnings aren't included in income under §951(a), those earnings aren't subject to a deduction under §965(c), and credits for foreign taxes paid on those earnings aren't disallowed under §965(g). But the government's new alternative argument flatly contradicts §965(b), (c), and (g). It is elementary that "an agency construction that is manifestly contrary to a statutory scheme could not be persuasive under the test in *Skidmore*." *Texas v. United States*, 809 F.3d 134, 178 n.160 (5th Cir. 2015), *aff'd*, 579 U.S. 547 (2016). *See also Catskill Mts. Chptr. of Trout Unlimited, Inc. v. EPA*, 846 F.3d 492, 509-10 (2d Cir. 2017) (collecting cases and stating that the *Skidmore* factors do not apply if the statute is unambiguous).

When confronted with the plain language of the statute, the best the government can do is refer to (1) a computational provision in §965(c) and (2) the "with respect to" language in §965(g)(1). ECF 58 at 10-11. On the computational point, the government contends that "any amount for which the deduction under § 965(c) is allowed is determined by reference to all foreign corporations' earnings, which includes Offset Earnings." ECF 58 at 11. Through misdirection, the government focuses not on the amount for which the deduction is allowed, but rather on the notion that this amount "is determined *by reference to*" Offset Earnings. (Emphasis added.) This convoluted phrasing deliberately obscures the key point: Offset Earnings aren't included in income under §951(a), so they're not an amount for which the §965(c) deduction is allowed, and thus they're not subject to the partial disallowance of credits under §965(g)(1). The statute proves the government wrong. The formula for determining the §965(c) deduction depends entirely on "the amount … included as gross income" under §951(a). *See* §965(c)(1)(A)(i). And Included Earnings

3

are the only amount for which a deduction is allowed under §965.[3] *See* ECF 52 at 7-8.

The government's "with respect to" argument also rests on misdirection. Rather than focusing on the operative part of §965(g)(1)—"any amount for which a deduction is allowed under this section"—the government emphasizes the "with respect to" phrase that precedes it. ECF 58 at 10-11. That prepositional phrase does not and cannot nullify the central statutory requirement: §965 must provide a deduction for the amount in order for §965(g)(1) to partially disallow any foreign tax credit. Because neither §965(c) nor any other part of §965 provides a deduction for Offset Earnings, the statutory prerequisite in §965(g)(1) is not satisfied, and that provision does not haircut credits on Offset Earnings.

**3.** Lacking a textual argument, the government retreats to purpose. ECF 58 at 12-14. But "one-sided generalizations about the purpose" of §965 do not "make the case for straying from the ordinary meaning of the language in the statute." *Officemax, Inc. v. United States*, 428 F.3d 583, 595 (6th Cir. 2003) (rejecting *Skidmore* respect for IRS guidance). In any event, the purpose of §965 and the TCJA writ large was to incentivize taxpayers to return cash to the United States. ECF 49 at 27-28. The straightforward statutory text aligns with that purpose, as it allows taxpayers to obtain relief from double-taxation. ECF 52 at 8-9. The government's revenue-maximizing policy arguments not only undermine that purpose but also are manifestly contrary to the text of the statute and thus merit no weight. At bottom, the government's new litigating position is nothing

---

[3] Despite the clarity of the statute, the government misleadingly refers to "Amount A" (ECF 58 at 10-11), which it describes as "the § 965(a) earnings amount." This false formulation conveniently ignores the simple fact that §965(b) applies to reduce the §965(a) amount to account for Offset Earnings. Only that reduced amount is included in income under §951(a). And only that included amount is subject to the deduction in §965(c) (which expressly refers to the §951(a)(1) inclusion, not the §965(a) amount). The §965(c) deduction is a mechanism for taxing the cash portion of Included Earnings at a 15.5% rate and the non-cash portion of Included Earnings at an 8% rate. The formula in §965(c) doesn't provide any deduction for Offset Earnings. *See* ECF 52 at 6-8.

more than an atextual attempt to override the statute and impose its own policy preferences; that can never be persuasive. *Kloeckner v. Solis*, 568 U.S. 41, 55 n.4 (2012) ("even the most formidable argument concerning the statute's purposes could not overcome the clarity … in the statute's text."); *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 462 (2002) (a court "will not alter the [statutory] text in order to satisfy the policy preferences of the Commissioner"). ECF 61 at 3 n.6.

4. This dispute is about statutory interpretation, but the Agencies don't have any specialized expertise in that area. *See Loper Bright*, 144 S. Ct. at 2266 ("[A]gencies have no special competence in resolving statutory ambiguities. Courts do."); *Kisor v. Wilkie*, 588 U.S. 558, 578 (2019) (interpretive issues "fall more naturally into a judge's bailiwick"). Moreover, the §965 transition tax first entered the Code in the 2017 TCJA. TCJA, §14103(a), 131 Stat. 2195. The IRS had not administered this statutory scheme for any significant length of time when the Agencies issued the section 965 regulations. So it did not and could not leverage any amount of supposed "expertise" in establishing the metes and bounds of the §965 transition tax. Also, the interpretive question does not "rest[] on factual premises within [the agency's] expertise." *Loper Bright*, 144 S. Ct. at 2267 (citation omitted). The question at issue is purely legal: does §965(g)(1) partially disallow any amount of credits for foreign taxes paid on Offset Earnings? It does not, and that answer follows from plain statutory text, not from any detailed factual analysis.

## II. The Government's New Alternative Argument Rests on Flawed "Reasoning" and Is Not the Product of Careful Consideration.

1. While the persuasiveness of an agency's position depends on "the validity of its reasoning," *Skidmore*, 323 U.S. at 140, the government's new alternative argument is based on previously debunked reasoning, as it starts from the erroneous premise that Offset Earnings are included in income under §951(a). ECF 52 at 9 n.8, 12 n.12, 18; ECF 61 at 2. The government's syllogism must be that Offset Earnings are included in income under §951(a) and thus are subject

5

to the §965(c) haircut; consequently, §965(g)(1) partially disallows credits for foreign taxes paid on those earnings. This Court has already rejected the government's arguments that Offset Earnings are included in income under §951(a). ECF 49 at 5, 12, 19-21. As such, this Court's prior conclusions fully dispose of the government's new alternative argument. Even if this were a close call—and it isn't—"Agencies in the end receive *Skidmore* respect because of the persuasiveness of their reasoning, not in spite of it." *Officemax*, 428 F.3d at 595.

2.  Thorough consideration is a necessary component of *Skidmore* respect, but the government's new alternative argument lacks "careful consideration," *Smith v. AEGON Cos. Pension Plan*, 769 F.3d 922, 929 (6th Cir. 2014) (quoting *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 16 (2011)). As previously described, the government's ill-considered alternative argument creates a host of problems, as it: (1) concedes that FedEx is entitled to an additional deduction under §965(c) for its Offset Earnings (ECF 61 at 3); (2) creates a bizarre double-disallowance of the same tax credits (ECF 61 at 4); and (3) contradicts the Final Rule (ECF 52 at 9-11) (as shown immediately below). These errors reflect recklessness, not care.

### III. The Government's New Alternative Argument Is Consistently Inconsistent.

1.  The government's new alternative argument contradicts the Agencies' own regulations. That type of internally inconsistent "interpretation" merits no respect. *See Rosales-Garcia v. Holland*, 322 F.3d 386, 403 n.22 (6th Cir. 2003) (no *Skidmore* respect because "government's position has been inconsistent and is therefore unpersuasive"). By its terms, the Haircut Rule in Treas. Reg. §1.965-5(c)(1)(i) applied only to withholding taxes paid "with respect to distributions of … section 965(b) previously taxed earnings and profits [Offset Earnings]." ECF 52 at 4, 9-11; ECF 61 at 1. The adjacent regulation—the Final Rule in Treas. Reg. §1.965-5(c)(1)(ii)—purports to limit §960(a)(3)'s scope to withholding taxes. ECF 52 at 9-10; ECF 61 at

6

1 n.1, 4. The government's prior arguments in this case take the same approach. ECF 43-1 at 14 n.10; ECF 58 at 9 n.11.

If plain regulatory text weren't enough to undermine the government's new litigating position, regulatory context surely would. Treas. Reg. §1.965-5(c)(1)(i) deliberately distinguishes (1) foreign taxes historically paid on Included Earnings from (2) withholding taxes paid on both Included Earnings and Offset Earnings. The second sentence of Treas. Reg. §1.965-5(c)(1)(i) initially singles out "foreign income taxes deemed paid under section 960(a)(1) with respect to a section 965(a) inclusion." These are the historical foreign taxes paid on Included Earnings—earnings actually included in income under §951(a) via §965(a). Separately, the regulation refers to "foreign income taxes deemed paid under section 960(a)(3) … with respect to a distribution of section 965(a) previously taxed earnings and profits [Included Earnings] or section 965(b) previously taxed earnings and profits [Offset Earnings]." These are withholding taxes paid on the "distribution" of *both* Included Earnings and Offset Earnings. The fact that the Agencies applied the Haircut Rule to withholding taxes paid on both Included Earnings and Offset Earnings and only applied the Haircut Rule to historical foreign taxes paid on Included Earnings confirms the inescapable conclusion: the Haircut Rule was never intended to apply to historical foreign taxes paid on Offset Earnings. *See Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006) (It is a "familiar principle of statutory construction … that a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute."). If the Agencies thought that the Haircut Rule in Treas. Reg. §1.965-5(c)(1)(i) applied to partially disallow credits for historical foreign taxes paid on Offset Earnings, they should have said so in the first place. They didn't, and the government can't do so now. *Officemax*, 428 F.3d at 598 ("*Skidmore* [respect] does not apply to a line of reasoning that an agency could have, but has not

7

yet, adopted.").

**2.** Similarly, the government's arguments in litigation are consistently inconsistent, which further erodes their weight. The government initially identified Treas. Reg. §1.965-5(c)(1)(ii) as "*the* applicable regulation," (ECF 43-1 at 1) (emphasis added), accentuating that no other regulation applied. *See Am. Bus Ass'n v. Slater*, 231 F.3d 1, 4-5 (D.C. Cir. 2000) ("it is a rule of law well established that the definite article 'the' particularizes the subject which it precedes. It is a word of limitation…") (citation omitted). The government took the exact same position in prior litigation. *See Ingersoll-Rand Co. & Subs. v. United States*, No. 3:16-cv-289, Gov't Reply Br., ECF 36 at 11 ("the only foreign taxes that §960(a)(3) can pick up … are those imposed on the subsequent distribution"). Now, the government abandons its prior position and takes the contradictory stance that §960(a)(3) is suddenly broader (such that it applies to historical foreign taxes) and that Treas. Reg. §1.965-5(c)(1)(i) applies to haircut credits that the government repeatedly said were not available based on its restrictive view of §960(a)(3). This unprecedented argument is the product of confusion and disagreement even within the government, which stood befuddled for months on whether to even raise it. ECF 52 at 1-2. If the government believed that the Haircut Rule applied, it would have said so from the outset. But it didn't. That's because the government knew that the Haircut Rule didn't apply to the taxes at issue here. And only after this Court invalidated the Final Rule did the government begin to dream of trying to apply the Haircut Rule to the historical foreign taxes paid on FedEx's Offset Earnings. This type of opportunistic flip-flopping epitomizes inconsistency, which in turn deprives the government's new alternative argument of any persuasive force. Also, by "substitut[ing] one view of a rule for another," the government's erratic approach "creates 'unfair surprise'" and "disrupts expectations." *Kisor*, 588 U.S. at 579 (quoting *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 170 (2007)). These

constantly changing interpretations foster uncertainty and undermine trust in the IRS, which is supposed to enforce the law, not change it at its whim.

IV.     **The Government's Late-Breaking Argument Violates Core Administrative Law Requirements.**

After losing the validity dispute regarding the Final Rule—the only rule that applied to the credits at issue in this case—the government retrenched and concocted a new argument to partially disallow credits on Offset Earnings. Previously, during the rulemaking process, the Agencies never even hinted that the Haircut Rule might apply to credits for historical foreign taxes paid on Offset Earnings. The government first embraced this position in February 2024.[4] ECF 52 at 2; ECF 55 at 4. For more than 6 years from the TCJA's enactment, the Agencies "had taken no position, even an informal one," that the government's alternative argument was even a possibility. *Smith*, 769 F.3d at 929. This less than 6-month-old "interpretation" of §965(g)(1) "lacks longevity" and "does not 'reflect careful consideration.'" *Id*. (citation omitted). Nor has this new litigating position "been subjected to any sort of public scrutiny." *Id*. (referencing *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1315-16 (10th Cir. 2005)). The government cannot skip the APA's notice-and-comment rulemaking requirements (*see* 5 U.S.C. § 553) and impose a brand new rule through its litigating briefs, as courts will not "permit the agency, under the guise of interpreting a regulation, to create *de facto* a new regulation." *Christensen v. Harris County*, 529 U.S. 576, 588 (2000). And the Agencies cannot outsource their responsibility for interpreting the law to trial

---

[4] In June 2022, the IRS obliquely raised the possibility of haircutting credits on Offset Earnings in an information document request. ECF 52 at 5, 16-17. But the IRS only posed the question without taking a position. And the IRS didn't follow up with any sort of written statement about its potential argument. When pressed, the government suggested that some written statement existed, but repeatedly refused to provide it. That refusal is telling; "the best way to defeat bad ideas is not to suffocate them, but to air them out." *Lefebure v. D'Aquilla*, 15 F.4th 670, 674 (5th Cir. 2021). But the government thought it best to never let the IRS's written arguments see the light of day.

9

counsel with the imprimatur to just make it up as they go along. *See Investment Co. Inst. v. Camp*, 401 U.S. 617, 628 (1971) ("Congress has delegated to the administrative official and not to [trial] counsel the responsibility for elaborating and enforcing statutory commands."); *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962) ("courts may not accept [trial] counsel's *post hoc* rationalizations for agency action"). Ultimately, the government's new alternative argument is nothing more than an "interpretation advanced for the first time in a litigation brief," which warrants "near indifference." *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001) (citing *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212-13 (1988)). *See also Kisor*, 588 U.S. at 579 (counsel's "convenient litigating position" merits no weight).

## CONCLUSION

This Court has already rejected the government's argument that Offset Earnings are included in income under §951(a) and has held that §965 and the Code's foreign-tax-credit provisions foreclose the government's arguments to disallow credits for foreign taxes paid on Offset Earnings. And this Court reached that conclusion under the now-defunct *Chevron* framework. *Loper Bright* now precludes judicial deference to an agency's statutory interpretations and only reinforces the conclusion that under the best interpretation of §965, the Code fully allows FedEx's claimed foreign tax credits. Because "the statute itself speaks clearly to the point at issue," it is "unnecessary" to engage in *Skidmore* analysis. *Catskill Mts.*, 846 F.3d at 509 (quoting *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 326 (2008)). In any event, as shown above, the government's new alternative argument merits no judicial respect.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Richard R. Roberts | /s/ Joseph B. Judkins |
| Peter D. Blumberg | Joseph B. Judkins |
| FedEx Express | Tennessee BPR No. 033183 |
| 3620 Hacks Cross Road | George M. Clarke |
| Building B, 3rd Floor | Cameron C. Reilly |
| Memphis, TN 38125 | Baker & McKenzie LLP |
| Tel:   (901) 434-8489 | 815 Connecticut Avenue, N.W. |
| richard.r.roberts@fedex.com | Washington, DC  20006 |
| peter.blumberg@fedex.com | Tel:   (202) 452-7000 |
|  | joseph.judkins@bakermckenzie.com |
|  | george.clarke@bakermckenzie.com |
|  | cameron.reilly@bakermckenzie.com |
|  |  |
|  | Attorneys for Plaintiff, FedEx |

Dated:  August 2, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2024, I served a copy of the foregoing document by filing it through the Court's electronic filing (CM/ECF) system, which will send an electronic copy to all counsel of record.

/s/ Joseph B. Judkins
JOSEPH B. JUDKINS
Attorney for Plaintiff, FedEx
