# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| FEDEX CORPORATION ) <br> and SUBSIDIARIES ) <br> ) <br> ) <br> Plaintiff, ) <br> ) Case No. 2:20-CV-02794 <br> v. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Defendant. ) <br> _____ ) | |

**UNITED STATES OF AMERICA'S RESPONSE TO THE PLAINTIFF'S SUPPLEMENTAL BRIEF ADDRESSING <u>LOPER BRIGHT</u>**

In its brief, FedEx ignored § 965(o), which authorizes the Treasury Secretary to issue regulations "necessary or appropriate to carry out" that section and "to prevent the avoidance of the purposes of" § 965. 26 U.S.C. § 965(o)(2). So notwithstanding Loper Bright's command that the Court must employ traditional tools of statutory interpretation, Loper Bright Enterps. v. Raimondo, 144 S. Ct. 2244, 2268 (2024), FedEx disregarded one of those most fundamental tools: courts must "construe statutes, not isolated provisions." Turkiye Half Bankasi A.S. v. United States, 598 U.S. 264, 275 (2023) (quoting Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson, 559 U.S. 280, 290 (2010)). Rather than narrowly focusing on discrete subparts of the statute, the Court must view it as a whole. King v. Burwell, 576 U.S. 473, 486 (2015). Because the statute as a whole authorizes the Secretary to issue the regulations she relies on here, the Court should deny FedEx's motion.

I.  **FedEx's brief fails to incorporate the teachings of Loper Bright.**

FedEx's brief fails to mention § 965(o), § 902(c)(8), and § 7805(a). The Secretary cited each of these provisions when promulgating the General Rule. See T.D. 9846, 84 Fed. Reg. 1875 (Feb. 5, 2019). As the government explained in its brief, § 965(o) in particular is a grant of authority that covers the foreign tax credits at issue. (Dkt. 66 at 5–6). And it specifically permits rulemaking to both implement § 965 and to prevent taxpayers from manipulating the tax laws to "avoid[] the purposes" of § 965.[1] 26 U.S.C. § 965(o)(2).

The legislative history confirms the purposes Congress sought to serve through this provision. Congress enacted § 965(o) to grant "regulatory authority to carry out the intent of"

---

[1] This is not the only omission. In addition to not challenging the Treasury Department's statutory authority to issue regulations addressing anti-avoidance behavior, FedEx's brief also does not challenge that the General Rule serves an anti-avoidance purpose and was the product of reasoned decisionmaking. (See dkt. 66 at 7).

§ 965 generally and to "deter tax avoidance" specifically. H.R. Rep. No. 115–466, 617–18 (Dec. 15, 2017). And the existence of § 965(o) itself evidences Congress's belief that it needed the Treasury Department to issue regulations to "fill up the details" of this section. Loper Bright, 144 S. Ct. at 2263 (internal quotation omitted). So while FedEx argues that the Treasury Department lacks specialized expertise in international taxation (see dkt. 67 at 5), Congress disagreed, and asked the Treasury Department to bring that expertise to bear when it enacted § 965(o).[2]

FedEx takes issue with the government explaining how the General Rule effectuates the purposes of § 965. (Dkt. 67 at 4). Oddly, FedEx describes these points as "[l]acking a textual argument," despite the fact that the statute expressly authorizes the Secretary to issue regulations to effectuate "the purposes" of § 965. (Id.). And FedEx impermissibly narrows those purposes. While perhaps one of the goals of the Tax Cuts and Jobs Act in its entirety was to "incentivize taxpayers to return cash to the United States," (id.), § 965's role in that paradigm was to prevent "a potential windfall for companies that deferred income." H.R. Rep. No. 115-409, 375–76. That is precisely the result FedEx seeks here, and the result the General Rule prevents.

This is not the only instance of FedEx doing violence to the text of § 965. It asks the Court to focus solely on what it calls "the operative part" of § 965, *i.e.*, "any amount for which a deduction is allowed under this section." (Dkt. 67 at 4 (quoting 26 U.S.C. § 965(g)). But this reading ignores a "fundamental rule of statutory construction that statutory language is to be read in pertinent context rather than in isolation." Intermet Corp. & Subs. v. Comm'r, 209 F.3d 901, 907 (6th Cir. 2000) (quoting Oates v. Oates, 866 F.2d 203, 206 (6th Cir. 1989)). And so this

---

[2] It is difficult to understand how FedEx can posture that the IRS did not bring any expertise to bear when it issued regulations under § 965. Courts have never been shy to "conclude that Congress" left questions on complex topics of international taxation such as the foreign tax credit "to the administrative experts of the Treasury Department." Gen. Elec. Co. v. United States, 610 F.2d 730 (Ct. Cl. 1979).

Court may not ignore the language of § 965(g), which disallows deductions for any taxes with respect to any amount for which a deduction is allowed in § 965.[3] 26 U.S.C. § 965(g)(1). That includes taxes on the inputs used to calculate the ultimate amount included in income under § 951(a) by reason of § 965, *i.e.*, Offset Earnings.[4] (See dkt. 58 at 10–11).

## II. FedEx's analysis of Skidmore misses the point.

Rather than wrestle with the statute as written, FedEx simply ignores the text that undercuts its arguments. But even operating under those faulty assumptions, this Court should reject FedEx's analysis because it does not survive scrutiny.

As a threshold matter, the parties generally agree that the Court need not analyze the activities of the Treasury Department under the principles articulated in Skidmore. Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)). We submit this is because Loper Bright provides that Skidmore respect is unnecessary when there is, as in § 965(o), an express delegation of authority to the agency. Loper Bright, 144 S. Ct. at 2273 ("when a particular statute delegates authority to an agency . . ., courts *must* respect that delegation") (emphasis added).

FedEx's continued argument that the government is taking an inconsistent position is puzzling and largely regurgitates points previously raised (and addressed).[5] (Dkt. 67 at 6–8);

---

[3] FedEx's insistence the Court ignore the context that surrounds § 965 is surprising given the space it expends on asking the Court to consider the context surrounding the Treasury Regulations. (Dkt. 67 at 6–8).

[4] And given that, it is *not* the case that the Government's analysis "starts from the erroneous premise that Offset Earnings are included in income under §951(a)." (Dkt. 67 at 5). Rather, section 965(g)'s full and broad language encompasses taxes on those inputs.

[5] Perhaps because its ideas are found wanting, FedEx is hellbent on suggesting that some secret "written statement" exists which might aid its case, and that the government is inappropriately withholding such document. (Dkt. 52 at 2; Dkt. 55 at 3 n.4; Dkt. 67 at 9 n.4). Not only is the reference opaque, but any such "written statement" is not relevant to the Court's decision. Nor is it responsive to the Court's order to address the impact of Loper Bright. Furthermore, the Federal Rules are clear: if FedEx wanted a document from the government in this case, it should have

(Dkt. 58 at 7–10, 18). It is of course appropriate for the government to apply the General Rule now that the Court has set aside the Exception for purposes of this case, and FedEx cites no authority for its novel argument that the government cannot (or should not). (Dkt. 67 at 6–8).

It is undisputed that the General Rule applies to "foreign income taxes deemed paid under § 960(a)(3) . . . with respect to a distribution of [Offset Earnings]." Treas. Reg. § 1.965-5(c)(1)(i). FedEx does not explain why its briefing on summary judgment did not address how this rule might apply if it prevailed on its challenge to the Exception to the General Rule. And contrary to FedEx's assertion, § 965(g) applies to a credit on the distribution of § 965(b) PTEP. This is clear simply by referencing the regulatory text itself and the preamble issued contemporaneously with that regulation. T.D. 9846, 84 Fed. Reg. 1838, 1855 ("foreign taxes 'treated as paid or accrued' include foreign income taxes deemed paid by the taxpayer under section 960 with respect to distributions of" § 965(a) PTEP or § 965(b) PTEP).

Even if Skidmore were at issue here, such respect would be justified. (See dkt. 67 at 5–6). As FedEx itself previously explained, "the intricate foreign-tax credit framework [is] a byzantine structure of staggering complexity." (Dkt. 42 at 7 (quoting Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders, ¶15.21[2] (Overview of Foreign Tax Credit)). And it cannot be credibly argued the Treasury Department lacks experience with the foreign tax credit or subpart F rules that are at the heart of the questions surrounding the application of § 965 here.

FedEx's arguments related to other cases otherwise rest on faulty premises. In OfficeMax, the government's interpretation relied solely on legislative purpose, and the relevant statute did not grant the government the authority to issue regulations to effectuate that purpose.

---

sought it through discovery, when discovery was open and ongoing. Fed. R. Civ. P. 34(a)(1)(A). And to receive that document, it must be "nonprivileged." Fed. R. Civ. P. 26(b)(1). And discovery is closed. (Dkt. 36).

(Dkt. 67 at 6 (citing OfficeMax, Inc. v. United States, 428 F.3d 583, 595 (6th Cir. 2005))). And in Rosales-Garcia, the court found the government's position was inconsistent with positions it had taken in other cases, not in regulations. (Dkt. 67 at 6 (citing Rosales-Garcia v. Holland, 322 F.3d 386, 403 n.22 (6th Cir. 2003))).

The other cases cited by FedEx similarly do not disturb this analysis. Both Smith and Shikles involve instances where the government sought Skidmore respect for positions previous taken in amicus briefs. Smith v. Aegon Companies Pension Plan, 769 F.3d 922, 929 (6th Cir. 2014); Shikles v. Sprint/United Mgmt. Co., 426 F.3d 1304, 1315–16 (10th Cir. 2005). Here, the position that would receive Skidmore respect stems from the regulations themselves. [6] Moreover, Fedex does not cite to any case where the government took a litigation position contrary to its position in opposition to FedEx's Rule 58 motion.

Of course, the government did not previously address how the General Rule might apply if the Exception were invalidated because, prior to this case, the Exception had never been invalidated. (Dkt. 67 at 6–7, 9). FedEx could have raised this point during notice-and-comment, in its refund claim, in its complaint, or during summary judgment. (Dkt. 58 at 1). For whatever reason, it didn't.

## III. Conclusion.

Loper Bright affirms that courts say what the law is. And when the law specifically says agencies may write regulations to prevent taxpayers from obtaining benefits that Congress didn't intend, then the Court is instructed to "respect such delegations of authority." Loper Bright, 144 S. Ct. at 2268. Section 965(o) is just such a delegation. This Court should respect it.

---

[6] FedEx's argument that the government seeks to "impose a brand new rule through litigating briefs" is nonsensical. (Dkt. 67 at 9). As is plain from the briefing, the government merely seeks to enforce the General Rule that is set forth in the Treasury Regulations.

DATE: August 9, 2024

DAVID A. HUBBERT

Deputy Assistant Attorney General

*s/ Kyle L. Bishop*
KYLE L. BISHOP
ROBERT J. ATRAS
D.C. Bar No. 999007
Trial Attorney, Civil Trials – Eastern
P.O. Box 227, Ben Franklin Station
Washington, D.C. 20044
Phone: 202-616-1878
Fax: 202-514-6866
Kyle.L.Bishop@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2024, I electronically filed the foregoing document and all attachments thereto with the Clerk of Court using the CM/ECF system, which will provide notice to all parties registered in said system.

*s/ Kyle L. Bishop*
Kyle L. Bishop
Trial Attorney, U.S. Dept. of Justice
Tax Division, Civil Trials – Eastern
