UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

|  |  |
|---|---|
| FEDEX CORPORATION and SUBSIDIARIES )<br>)<br>)<br>)<br>*Plaintiff*, )<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>*Defendant*. )<br>) | Civil Case No. 2:20-cv-02794<br>The Honorable Samuel H. Mays, Jr. |

**FEDEX'S REPLY TO THE GOVERNMENT'S SUPPLEMENTAL BRIEF REGARDING *LOPER BRIGHT ENTERPRISES v. RAIMONDO***

In its latest ploy to avoid plain statutory text, the government pivots to the Agencies' rulemaking authority, arguing that three provisions—§§965(o), 902(c)(8), and 7805(a)—provide "broad" authority to rewrite §965. Blackletter administrative law provides the opposite: "A general grant of authority cannot displace the clear, specific text of the Act." *Murray Energy Corp. v. EPA*, 936 F.3d 597, 627 (D.C. Cir. 2019). This Court previously held that FedEx is entitled to credits under §960(a)(3). ECF 49 at 25. That holding reflects the normal operation of the Code's foreign-tax-credit provisions. *See* §§901, 902, 904, and 960; ECF 42 at 4-5. Because these provisions allow the credits at issue here, and no statute disallows them, any contrary regulation is invalid—regardless of the Agencies' basic rulemaking authority.[1]

---

[1] The government mistakenly argues that FedEx cannot challenge a regulation at this point. ECF 66 at 2 n.2. First, the Haircut Rule in Treas. Reg. §1.965-5(c)(1)(i) doesn't apply to credits for historical foreign taxes paid on Offset Earnings, so there's no need for the Court to determine its validity. ECF 52 at 9-11; ECF 61 at 3-4; ECF 67 at 6-8. Second, if it did apply, it would be invalid and a mere "nullity[,] … incapable of" being applied to disallow the credits at issue here. *Functional Music, Inc. v. FCC*, 274 F.2d 543, 547-48 (D.C. Cir. 1958). ECF 52 at 11-13; ECF 61 at 2-3. And third, because the government has raised the Haircut Rule to disallow the credits at issue, FedEx can always challenge the substantive validity of the regulation. *Herr v. U.S. Forest Serv.*, 803 F.3d 809, 821 (6th Cir. 2015) ("Regulated parties may always assail a regulation as

1

1.  In *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024), the Supreme Court does not at any point hold that rulemaking authority—broad, narrow, or otherwise—allows an agency to override the statute. Exactly to the contrary, the Court emphasizes that courts must "fix[] the boundaries of … delegated authority" (*id.* at 2263) and use the traditional tools of statutory construction to answer questions about "the scope of an agency's own power," emphasizing that in this area, judicial "abdication in favor of the agency is *least* appropriate." *Id.* at 2266 (emphasis in original). The statute circumscribes and delimits any rulemaking grant, and the agency cannot exceed those limits. Even "broad" authority "cannot expand the scope of the provisions the agency is tasked with 'carry[ing] out.'" *Gulf Fishermens Ass'n v. NMFS*, 968 F.3d 454, 465 (5th Cir. 2020). Similar cases are legion.[2] These "precedents establish a simple and sensible rule: [an agency] cannot rely on its gap-filling authority to *supplement* the [statute] when Congress has not left the agency a gap to fill." *NRDC v. EPA*, 749 F.3d 1055, 1064 (D.C. Cir. 2014) (emphasis added). In short, if an agency regulation "add[s] to the statute … something which is not there," then that regulation is invalid—regardless of the existence of rulemaking authority. *United States v. Calamaro*, 354 U.S. 351, 359 (1957).[3] Yet that's exactly how the government attempts to apply

---

exceeding the agency's statutory authority in enforcement proceedings against them."). FedEx does not concede any government argument not otherwise specifically addressed in this reply.

[2] *See, e.g.*, *Contender Farms, LLP v. USDA*, 779 F.3d 258, 273 (5th Cir. 2015) ("[A] broad grant of general rulemaking authority does not allow an agency to make amendments to statutory provisions."); *API v. EPA*, 52 F.3d 1113, 1119 (D.C. Cir. 1995) ("the general grant of rulemaking power to EPA cannot trump specific portions of the CAA"); *Rex Chainbelt, Inc. v. Volpe*, 486 F.2d 757, 762 (7th Cir. 1973) (rules issued under grant "necessary to carry out this subchapter" invalid "because they clearly contravene the language of the Act").

[3] Although rulemaking authority like that currently in §7805(a) has been in the Code "for more than a century" (ECF 66 at 8 n.8), for an equally long time, the Supreme Court has held that the Agencies cannot use that authority to issue regulations that contradict the Code. *See, e.g.*, *Koshland v. Helvering*, 298 U.S. 441, 447 (1936) (if statute's "provisions … are unambiguous, and its directions specific, there is no power to amend it by regulation"); *Manhattan Gen. Equip. Co. v. Commissioner*, 297 U.S. 129, 134 (1936) (rulemaking authority "is not the power to make law … but … to adopt regulations to carry into effect the will of Congress as expressed by the statute").

the Haircut Rule in Treas. Reg. §1.965-5(c)(1)(i). But the statutes are seamless: the Agencies cannot add a regulation that (purportedly) partially disallows credits that the Code otherwise allows and that no statutory provision disallows. The sole credit disallowance rule in §965 is in subsection (g), but that rule applies only to Included Earnings, and the Agencies cannot expand the scope of §965(g) to disallow credits for foreign taxes paid on Offset Earnings because Offset Earnings, as everyone agrees, are not Included Earnings. ECF 52 at 6-9; ECF 61 at 2-3.

**2.** The government erroneously contends that because the Agencies have rulemaking authority "the court's role is circumscribed" such that the court only "set[s] the bounds of the delegation" and must "follow[] the relevant regulation" if the "agency acts within the bounds of that delegation." ECF 66 at 3-4. Agencies have long made—and courts have long rejected—this argument. An agency's general authority to issue regulations "as it deems proper to implement the provisions of [the Act]" does not mean that its regulations are "valid so long as they are 'reasonably related to the purposes of the enabling legislation.'" *Colo. River Indian Tribes v. Nat'l Indian Gaming Comm'n*, 466 F.3d 134, 139 (D.C. Cir. 2006) (quoting *Mourning v. Family Publications Serv., Inc.*, 411 U.S. 356, 369 (1973)). There is no "canon of statutory interpretation for general rulemaking provisions" that requires courts to defer to agency regulations whenever rulemaking authority exists. *Id.* ("An agency's general rulemaking authority does not mean that the specific rule the agency promulgates is a valid exercise of that authority."); *see also Merck & Co., Inc. v. HHS*, 962 F.3d 531, 535-36 (D.C. Cir. 2020).

*Loper Bright* did not overrule *Chevron* only to create a regime of shadow deference that applies whenever an agency has rulemaking authority. Rather than instructing courts to abrogate their duty to apply plain statutory text, *Loper Bright* teaches that courts must always—even when construing regulations issued under express rulemaking grants—determine the best interpretation

of the statute. 144 S. Ct. at 2263. The rulemaking grants under §§965(o), 902(c)(8), and 7805(a) are not now—and have never been—carte blanche for rewriting statutes. Like any other statutory provision, they operate according to their terms.[4] Neither the specific delegation in §§965(o) and 902(c)(8) to "carry out the provisions" of those statutes nor the basic grant in §7805(a) to "enforce[]" the Code authorize the Agencies to disallow credits provided by the operative statutes. Instead, these provisions tether rulemaking authority to the text of the operative statutes and, in that way, limit the scope of the Agencies' rulemaking authority. ECF 42 at 12-15.

3. The government fundamentally misunderstands the nature of its "necessary" and "appropriate" grants to "carry out" the statute's provisions, essentially contending that the Agencies may do whatever is "necessary" under such authority. ECF 66 at 5-8. The Supreme Court has characterized this flawed argument as "breathtaking": "It is hard to see what measures this interpretation would place outside the [agency's] reach … beyond the requirement that the [agency] deem a measure 'necessary.'" *Ala. Ass'n of Realtors v. HHS*, 594 U.S. 758, 764-65 (2021). Rather than being "broad," "the adjectives *necessary* and *appropriate* limit the authorization contained in" §§965(o), 902(c)(8), and 7805(a). *Mexican Gulf Fishing Co. v. U.S. Dep't of Com.*, 60 F.4th 956, 965 (5th Cir. 2023) (italics in original). That's because "[t]he grant of authority to promulgate '*necessary*' regulations cannot expand the scope of the provisions the agency is tasked with 'carry[ing] out.'" *Gulf Fishermens*, 968 F.3d at 465 (emphasis added). Likewise, "[a] generic grant of rulemaking authority" to prescribe "appropriate" rules "does not allow the [agency] to alter the specific choices Congress made." *Nat'l Ass'n of Broads. v. FCC*, 39 F.4th 817, 820 (D.C. Cir. 2022).

---

[4] *City of Arlington, Tex. v. FCC*, 569 U.S. 290, 297 (2013) ("agencies['] … power to act and how they are to act are authoritatively prescribed by Congress, so that when they act improperly, no less than when they act beyond their jurisdiction, what they do is ultra vires").

**4.** Finally, the government peddles the old chestnut that FedEx engaged in "tax avoidance," contending that the Agencies may regulate to "prevent[] tax-avoidance and distortion of the general purposes of the … Code." ECF 66 at 1, 8. But there's no tax avoidance here. FedEx fully satisfied its §965 transition tax without using any credits attributable to Offset Earnings. Indeed, the tax credits at issue arise only because FedEx brought foreign cash home to the United States in a distribution that allowed it to credit *previously paid* foreign taxes against the distributed foreign earnings under §960(a)(3). So §965(o)(2) cannot apply, as that provision relates exclusively to regulations issued "to prevent the avoidance of the purposes of [§965]." Moreover, §965's purpose wasn't to expansively increase tax; it was to encourage repatriation of foreign earnings. ECF 49 at 27-28. Nor was its purpose to broadly disallow foreign tax credits. Section 965(g)'s carefully tailored disallowance rule proves the opposite, as that provision applies only to a precisely defined set of credits for taxes paid on Included Earnings, not Offset Earnings. ECF 52 at 6-8. This reveals the government's arguments for what they really are: not based on §965, but instead on the misguided notion "that the 'overarching' purpose of the Code … is to increase revenue to the government." *Summa Holdings, Inc. v. Commissioner*, 848 F.3d 779, 788 (6th Cir. 2017). This "Emperor's level of generality" "overlooks the subtleties of the Code, which create many discrete rules that balance many competing rationales." *Id.* "The best way to effectuate Congress's nuanced policy judgments" in §965 and the Code's FTC provisions is "not to elevate purpose over text" but instead "to apply each provision as its text requires." *Id.* at 788-89. Otherwise, "allegations of tax avoidance begin to look like efforts at text avoidance." *Id.* at 787. Try as it might, the government cannot avoid the plain text of the statutes, which fully allow the credits at issue here. This Court should so hold and enter final judgment for FedEx.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Richard R. Roberts | */s/* Joseph B. Judkins |
| Peter D. Blumberg | Joseph B. Judkins |
| FedEx Express | Tennessee BPR No. 033183 |
| 3620 Hacks Cross Road | George M. Clarke |
| Building B, 3rd Floor | Cameron C. Reilly |
| Memphis, TN 38125 | Baker & McKenzie LLP |
| Tel: (901) 434-8489 | 815 Connecticut Avenue, N.W. |
| richard.r.roberts@fedex.com | Washington, DC 20006 |
| peter.blumberg@fedex.com | Tel: (202) 452-7000 |
|  | joseph.judkins@bakermckenzie.com |
|  | george.clarke@bakermckenzie.com |
|  | cameron.reilly@bakermckenzie.com |
|  |  |
|  | Attorneys for Plaintiff, FedEx |

Dated: August 9, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2024, I served a copy of the foregoing document by filing it through the Court's electronic filing (CM/ECF) system, which will send an electronic copy to all counsel of record.

*/s/* Joseph B. Judkins
JOSEPH B. JUDKINS
Attorney for Plaintiff, FedEx
