IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| FEDEX CORPORATION and SUBSIDIARIES, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | )    No. 2:20-cv-02794-SHM-tmp <br> ) |
| UNITED STATES OF AMERICA, | ) <br> ) |
| Defendant. | ) <br> ) |

**ORDER GRANTING PARTIAL SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF**

This is a tax case brought by Plaintiff FedEx Corporation and Subsidiaries[1] against the United States of America. Before the Court is Plaintiff's March 8, 2024 Motion to Enforce Judgment (the "Motion"). (ECF No. 52.) Defendant responded on April 12, 2024 (ECF No. 58), and Plaintiff replied to that response on April 26, 2024. (ECF No. 61.) For the reasons below, the Motion is construed as a Motion for Partial Summary Judgment and is **GRANTED.**

I.    **Factual Background**

A. **The Court's Grant of Partial Summary Judgment**

On November 20, 2020, Plaintiff filed a complaint alleging that it had been unlawfully denied credits for taxes paid on its

---

[1] FedEx Corporation and its U.S. subsidiaries filed a consolidated federal income tax return in the relevant years and will be treated as a single plaintiff. (ECF No. 42-1 at ¶ 15.)

foreign subsidiaries based on an invalid Internal Revenue Service ("IRS") regulation that contravened the tax code. (ECF No. 1.) The parties filed cross-motions for summary judgment on Count II of the complaint, and the Court granted partial summary judgment in Plaintiff's favor on March 31, 2023. (ECF Nos. 42, 43, 49.) Count I is pending. (ECF No. 49 at 1 n.2.)

In its Order Granting Partial Summary Judgment (the "Order"), the Court detailed the IRS's historic policies for taxing the foreign subsidiaries of domestic corporations and how those policies have changed since the passage of the Tax Cuts and Jobs Act ("TCJA"), Pub. L. No. 115-97, 131 Stat. 2054 (2017). (Id. at 2-6.) The Court will not repeat that history here. However, a summary of the Order's reasoning is necessary to understand the scope of its findings and respond to the parties' arguments about the instant Motion.

The fundamental dispute between the parties is whether Plaintiff is eligible to receive tax credits for foreign taxes paid on the "Offset Earnings" from its foreign subsidiaries. (Id. at 6.) Offset Earnings are the profits that remain when the losses from unprofitable foreign subsidiaries are deducted from the gains of profitable foreign subsidiaries. (Id. at 5.) Plaintiff argued that it is entitled to credits for foreign taxes paid on its Offset Earnings based on the plain language of 26 U.S.C. §§ 959, 960, and

965.[2]    (Id. at 6.)    Defendant argued first that Plaintiff had
misinterpreted the Tax Code.  (Id.)  Defendant argued that, in the
alternative, the statutory language was ambiguous, and the Court
should defer to Defendant's interpretation of the code in 26 C.F.R.
§ 1.965-5(c)(1)(ii), which squarely established that tax credits
were not available for Offset Earnings.  (Id.)  The parties agreed
that, if § 1.965-5(c)(1)(ii) were valid, Plaintiff would not be
entitled to a tax credit.  (Id. at 8.)  Plaintiff, however, argued
that the regulation contravened the plain language of the Tax Code
and was not binding.  (Id.)

In its Order Granting Partial Summary Judgment, the Court
assessed the validity of the regulation using the two-step Chevron
framework.  (Id. at 9); see generally Chevron U.S.A. Inc. v. Nat.
Res. Def. Council, Inc., 467 U.S. 837 (1984) (overruled by Loper
Bright Enter.'s v. Raimondo, 144 S.Ct. 2244, 2273 (2024).  Under
Chevron, courts first ask "whether Congress has directly spoken to
the precise question at issue."  Metro. Hosp. v. U.S. Dep't of
Health & Hum. Servs., 712 F.3d 248, 254 (6th Cir. 2013) (quoting
Chevron, 467 U.S. at 842).  At this first step, a court uses all
of the ordinary tools of statutory construction to interpret the
statute and does not defer to the agency's views.  Arangure v.
Whitaker, 911 F.3d 333, 337-38 (6th Cir. 2018).  If the statute is

---

[2] Chapter 26 of the U.S.C. will be referred to as the "Tax
Code."

3

unambiguous, the inquiry is at an end. All that remains is for the court to enforce the Congressional command. Metro. Hosp., 712 F.3d at 254.

If the statute is ambiguous, the court proceeds to Chevron step two. Metro. Hosp., 712 F.3d at 254-55. At this step, the court defers to the agency's expertise and upholds the regulation so long as it is a "permissible" interpretation of the statute and not "arbitrary, capricious, or manifestly contrary to the statute." Id. at 265, 254-55 (quoting Chevron, 467 U.S. at 843-44).

The Court granted partial summary judgment in Plaintiff's favor, finding that the Tax Code unambiguously permits foreign tax credits on Offset Earnings, and that the IRS regulation at issue was invalid insofar as it contradicted that statutory directive. (ECF No. 49 at 28-29.) Because the Court found that the regulation was invalid at Chevron step 1, it did not proceed to step 2. (Id.)

The Court explained that § 951 is the "operative portion" of the Tax Code, because it requires domestic corporations to declare the earnings of their foreign subsidiaries as part of their gross income. (Id. at 10-11.) Section 965 defines Offset Earnings and § 965(b)(1) establishes that they are not included as gross income under § 951. (Id. at 11-12.)

Section 959 declares that, if earnings from a corporation's foreign subsidiaries are included as income for purposes of § 951,

they will not be counted as income subject to taxation a second
time, when they are repatriated to the United States. (Id. at 12-
13.) Put another way, section 959 prevents earnings from foreign
subsidiaries from being included as taxable income twice -- once
as part of the parent company's income and again when the earnings
are distributed to shareholders in the United States. (Id.)
Section 965(b)(4)(A) establishes that, for purposes of § 959 only,
Offset Earnings will be treated as income under § 951. (Id. at
13-14.) Because Offset Earnings are being treated as § 951 income,
they will not again be counted as gross income subject to taxation
when they are repatriated. (Id.) That is so although, for all
other purposes, § 965(b)(1) dictates that Offset Earnings are not
§ 951 income. (Id.)

The Court then analyzed the impact of §§ 951, 959, and 965 on
§ 960, which governs tax credits. Section 960(a)(3) provides that:

> [a]ny portion of a distribution from a foreign
> corporation received by a domestic corporation which is
> excluded from gross income under section 959(a) shall be
> treated by the domestic corporation as a dividend,
> solely for purposes of taking into account under section
> 902 any . . . taxes paid to any foreign country . . . ,
> on or with respect to the accumulated profits of such
> foreign corporation from which such distribution is
> made, which were not deemed paid by the domestic

5

corporation under [section 960(a)(1)] for any prior taxable year.

Under § 960(a)(3), when funds are distributed from a foreign subsidiary to a domestic corporation, and those funds have been excluded from gross income under section § 959(a), the funds are treated as a dividend for which the corporation is entitled to a tax credit under §§ 901-02. (ECF No. 49 at 15-17.) Reiterating that Offset Earnings are not included in the gross income taxed when repatriated, the Court found that Offset Earnings are excluded from gross income under section § 959(a) and, therefore, must be treated as a dividend entitling Plaintiff to a tax credit. (Id. at 24-25.) Because § 960(a)(3) unambiguously entitled Plaintiff to a tax credit, the Court found that § 1.965-5(c)(1)(ii) failed at Chevron step 1 and was invalid to the extent that it contradicted the statute. (Id. at 29); Metro. Hosp., 712 F.3d at 254.

In so finding, the Court rejected Defendant's arguments that, while Offset Earnings were never actually included in income under § 951, they must be treated as though they were for purposes of calculating tax credits under § 960. (ECF No. 49 at 17-18.) Defendant argued that § 965(b)(4)(A) required that outcome, but the Court found that § 965(b)(4)(A) treated Offset Earnings as income for the limited purpose of calculating gross income subject

to repatriation taxes under § 959, not for the calculation of tax credits under § 960.  (Id. at 19.)

### B. The Motion to Enforce Judgment

Plaintiff now moves to enforce the Court's Order Granting Partial Summary Judgment.  (ECF No. 52.)  Plaintiff moves under Federal Rule of Civil Procedure 58(d), which allows a party to request that judgment be set out in a separate document.  (Id.) According to Plaintiff, Defendant seeks to reduce the amount of tax credits to which Plaintiff is entitled.  (Id. at 2.)  Plaintiff refers to the reduction as a "haircut" because it cuts down, but does not eliminate, the tax credit.  (Id.)  Plaintiff distinguishes between a "Statutory Haircut Rule" codified in § 965(g) and a "Regulatory Haircut Rule" in C.F.R. § 1.965-5-(c)(1)(i).  (Id. at 8-9.)

Plaintiff argues that Defendant has waived application of both Haircut Rules by failing to timely raise its arguments.  (Id. at 18-22.)  Plaintiff argues, in the alternative, that Defendant has misinterpreted both the Statutory and Regulatory Haircut Rules and that they do not apply to the types of credits at issue here. (Id. at 11-16.)  Plaintiff asserts that interpreting the Rule to disallow credits on Offset Earnings contravenes the text of the Tax Code as interpreted by this Court in its Order Granting Partial Summary Judgment.  (Id. at 16-18, 23.)  Plaintiff also contends that the Regulatory Haircut Rule exceeds the IRS's rulemaking

authority and was not passed in accordance with the requirements of notice-and-comment rulemaking.  (Id. at 16.)

Defendant counters that Plaintiff's Motion is procedurally improper and that Plaintiff is using Rule 58(d) as an attempt to invalidate an IRS regulation that was not affected by the Court's Order Granting Partial Summary Judgment.  (ECF No. 58 at 6-8.) Defendant asserts that Plaintiff's Motion should have been brought as a Motion for Partial Summary Judgment, but that Plaintiff's arguments nevertheless fail on the merits.  (Id. at 5, 8-20.)

Defendant makes the following merits arguments.  Treasury Regulation § 1.965-5(c)(1) contains three subsections. The first subsection establishes a generally applicable rule, and the following two subsections establish exceptions.  (Id. at 8-9.) Section 1.965-5(c)(1)(i) disallows a certain percentage of foreign tax credits while § 1.965-5(c)(1)(ii) dictates certain circumstances in which tax credits are disallowed completely.  (Id. at 9-10.)  The Court's Order Granting Partial Summary Judgment invalidated the first of those exceptions, at § 1.965(c)(1)(ii), but did not invalidate the general rule.  (Id. at 9.)  Thus, although Plaintiff is entitled to some foreign tax credits, § 1.965-5(c)(1)(i), the Regulatory Haircut Rule, requires those credits to be reduced by a set percentage.  (Id. at 9-10.)

Defendant asserts that the Regulatory Haircut Rule is consistent with § 965(g), which establishes a Statutory Haircut

Rule.  (Id. at 10.)  Defendant argues that § 965(c) authorizes a
deduction for the "amount included in the gross income under §
965" and that § 965(g)(1) establishes a haircut for any deduction
received under § 965.  (Id.)(internal quotations omitted)

### C. The Effect of **Loper Bright**

On July 3, 2024, the Court ordered the parties to brief the
Supreme Court's recent decision in Loper Bright, 144 S.Ct. at 2273.
In Loper Bright, the Supreme Court overruled Chevron, holding that
deferring to an agency's reasonable interpretation of ambiguous
statutes violates the Administrative Procedure Act ("APA"), 5
U.S.C. §§ 551, et seq.  See id.  The Supreme Court held that the
APA requires courts, not agencies, to "decide *all* relevant
questions of law" by "exercising independent judgment" in
"interpret[ing] statutory provisions," rather than deferring to an
agency's interpretation when a statute lacks a clear directive
from Congress.  Id. at 2265 (internal quotation marks omitted)
(emphasis in original).  The Supreme Court explained that, even
when Congress delegates authority to agencies to promulgate
regulations and make policy choices, judges must "independently
identify and respect such delegations of authority, police the
outer statutory boundaries of those delegations, and ensure that
agencies exercise their discretion consistent with the APA."  Id.
at 2268.

Both parties filed their supplemental briefs on August 2,
2024. (ECF Nos. 66, 67.) Defendant argues that Congress delegated
to the Secretary of the Treasury the responsibility for
promulgating regulations "necessary and appropriate" to carry out
§ 965 and further that statute's broader goals of preventing tax
avoidance. (ECF No. 66 at 1, 6.) Defendant argues that Loper
Bright requires the Court to "respect [that] delegation of
authority" by enforcing the Regulatory Haircut Rule. (Id. at 2.);
144 S.Ct. at 2268. Defendant argues, in the alternative, that
application of the Statutory Haircut Rule is required by the plain
language of § 965. (Id. at 4.) Defendant also argues that, even
if its statutory interpretation is not binding on the Court, Loper
Bright encourages courts to rely on the executive branch's
subject-matter expertise in complex areas of law, and that the
Court should weigh Defendant's arguments accordingly. (ECF No. 66
at 8-9.)

Plaintiff argues that all of Defendant's arguments lack merit
because the plain meaning of § 965 precludes a Statutory or a
Regulatory Haircut. (ECF No. 67 at 1-2.) Plaintiff denies that
Congress delegated to the IRS authority to pass regulations under
§ 965 to which the Court must defer, arguing that whether the Court
credits Defendant's arguments is controlled by Skidmore v. Swift
& Co., 323 U.S. 134 (1944). (Id.); (ECF No. 69 at 3-4.) Relying
on Skidmore, Plaintiff argues that Defendant's interpretations are

entitled to deference only if they are persuasive.  (ECF No. 67 at 2.)

The parties filed their respective replies on August 9, 2024. (ECF Nos. 68, 69.)

## II.  Jurisdiction

Plaintiff seeks a tax refund.  Under 28 U.S.C. § 1346(a), district courts have original jurisdiction over "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected."  Plaintiff has properly filed the administrative claim that is jurisdictionally required before filing suit.  ECF No. 22 at ¶ 17; see Ednacot v. Mesa Med. Grp., PLLC, 790 F.3d 636, 637 (6th Cir. 2015) (stating that administrative claim for refund is a jurisdictional prerequisite to suit under 26 U.S.C. § 7422).  The Court has subject matter jurisdiction.

## III. Standard of Review

The parties disagree about whether the instant Motion can be resolved by Federal Rule of Civil Procedure 58(d) or Rule 56.

Under Rule 56, a court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "In assessing the record to determine whether there is any genuine issue of material fact,

11

the court must resolve all ambiguities and draw all factual inferences in favor of the non-moving party." Wathen v. Gen. Elec. Co., 115 F.3d 400, 403 (6th Cir. 1997). Although summary judgment must be used carefully, it is "an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action rather than a disfavored procedural shortcut." FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986)).

Rule 58(d) allows a party to ask that a "judgment be set out in a separate document." A "judgment" is defined as a "decree and any order from which an appeal lies." Fed. R. Civ. P. 54(a). In cases with multiple claims or multiple parties, a court can, in appropriate circumstances, enter final judgment as to one or more, but fewer than all, of the claims or parties. Fed. R. Civ. P. 54(b).

In a multi-party or multi-claim case, judgment may be entered under Rule 54(b) if the court "expressly determine[s]" that there is no just reason for delay, based on a non-exhaustive list of factors including: "(1) the relationship between the adjudicated and non-adjudicated claims; (2) the possibility that the need for appellate review might become moot due to future developments in the district court; (3) the possibility that the appellate court might be required to hear the same issue twice; (4) the presence

or absence of a claim or counterclaim that might result in a set-off against the final judgment; and (5) other miscellaneous factors, including delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like." U.S. Citizens Ass'n v. Sebelius, 705 F.3d 588, 596 (6th Cir. 2013) (quoting Corrosioneering, Inc. v. Thyssen Envtl. Sys., Inc., 807 F.2d 1279, 1283 (6th Cir. 1986)). Because of the "historic federal policy against piecemeal appeals," Rule 54(b) certification should be granted rarely. Gen. Acquisition, Inc. v. GenCorp., Inc., 23 F.3d 1022, 1027 (6th Cir. 1994.)

No district court in the Sixth Circuit has addressed whether a court can enter final judgment under Rules 54 or 58 after granting a motion for partial summary judgment. Several courts in other circuits have answered the question in the negative. See, e.g., Kimball v. HEALTHCAREfirst, Inc., No. 12-395-JJB-SCR, 2013 WL 4782139, at *5 (M.D. La. Sept. 5, 2013); Ctr. for Biological Diversity v. Regan, No. 21-119 (RDM), 2024 WL 1591671, at *5-6 (D.D.C. Apr. 12, 2024). Other courts have entered judgement pursuant to Rule 58(d) after granting partial summary judgment, but without discussing the limitations imposed by Rule 54(b). Gov't Emp.'s Ins. Co. v. Quality Diagnostic Health Care Inc., No. 18-20101-CIV-MARTINEZ/OTAZO-REYES, 2020 WL 8361916, at *1 (S.D. Fla. Dec. 1, 2020) (providing no reasoning).

**IV. Analysis**

13

### A. Plaintiff is Not Entitled to Entry of Judgment Under Rule 58(d) Because the Court's Order Granting Partial Summary Judgment Is Not a Final Judgment

Entering judgment on this ground would be inappropriate.  The Court's Order Granting Partial Summary Judgment addressed only Count II of Plaintiff's Complaint and is not a final judgment subject to appeal.  (ECF No. 49 at 1 n.2.)  Count I has not been resolved, and a "grant of partial summary judgment that does not dispose of all parties and all claims is generally not immediately appealable."  Bonner v. Perry, 564 F.3d 424, 427 (6th Cir. 2009).

Rule 54(b) authorizes courts, in certain circumstances, to enter final judgment on a claim while other claims remain pending. Neither party has invoked Rule 54(b).[3]  Even if Plaintiff sought entry of judgment under Rule 54(b) on Count II, there would remain a second problem -- "a partial summary judgment [order] which resolves one aspect of the question of liability but leaves the issue of damages in dispute" cannot be certified as a final judgment under Rule 54(b).  Rudd Const. Equipment Co., Inc. v. Home Ins. Co., 711 F.2d 54, 56 (6th Cir. 1983); but see W.R. Berkley Corps. v. Dunai, 2022 WL 17735944, at *1 (D. Del. Dec. 16, 2022) (finding that summary judgment order was not a final judgment because it did not include calculation of damages, but then

---

[3] Although Defendant cites Rule 54 briefly to argue that the Court's Order granting partial summary judgment is not a final judgment, Defendant makes no argument about whether the Court can or should enter final judgment.  (ECF No. 58 at 7.)

calculating damages and entering judgment in response to Rule 58(d) motion).  The Court finds that judgment should not be entered under Rule 54(b) because, although the question of liability has been resolved, the issue of damages remains in dispute.  Rudd Const. Equipment Co., Inc., 711 F.2d at 56.  Because the Court declines to enter judgment under Rule 54(b), and partial summary judgment cannot otherwise be a final ruling subject to enforcement under Rule 58(d), Plaintiff's Motion to Enforce Judgment is **DENIED**.  For the reasons explained below in subsection C, however, the Court finds that Plaintiff's motion should be construed to seek partial summary judgment, and the Court will assess the merits of Plaintiff's claims.

> **B. The Application of the Statutory and Regulatory Haircut Rules is Barred by the Law-of-the-Case Doctrine and the Plain Language of § 965(g)**
>
> > **1. The Court is Constrained by Its Prior Decision That Offset Earnings Are Not Income Under § 951**

The law-of-the-case doctrine prohibits courts from "redecid[ing] issues that they have already decided." Samons v. Ntl. Mines Corp., 25 F.4th 455, 463 (6th Cir. 2022).  The doctrine precludes parties from "indefinitely relitigating the same issue that a court resolved in an earlier part of the case," by providing that courts should only exercise their discretion to reconsider an issue if there is good cause to do so, such as a change in the law or an obvious mistake.  Id. (citing Christianson v. Colt Indus.

15

*Operating Corp.*, 486 U.S. 800, 816 (1988)). The law-of-the-case doctrine applies only to "those questions necessarily decided in the earlier" proceeding, meaning questions "that were fully briefed and squarely decided." *Burley v. Gagacki*, 834 F.3d 606, 618 (6th Cir. 2016) (holding that an issue found moot in a previous appeal had never been squarely decided).

In its Order Granting Partial Summary Judgment, the Court decided that Offset Earnings are never included in income under § 951. (ECF No. 49 at 16.) It also rejected Defendant's argument that Offset Earnings must be treated as having been included in § 951 income for purposes of calculating tax credits under § 960. (Id. at 18-19.) The Court concluded that § 965(b)(4)(A) requires Offset Earnings to be treated as included income, but only for the limited purposes of § 959, to determine which earnings are part of gross income to be taxed when repatriated. (Id. at 19.)

That issue was fully briefed and squarely decided. Whether Plaintiff was entitled to a tax credit under § 960(a)(3) depended on whether Plaintiff's Offset Earnings were excluded from gross income under § 959(a). (ECF No. 49 at 15-17.) Whether earnings are considered taxable income under § 959 depends entirely on whether they have been counted as taxable income under § 951. (Id. at 12-13.) The definition of income under § 951 was central to the Court's Order and was extensively litigated by the parties.

16

(See, e.g., ECF No. 42 at 8-9, 15-16, 22-25; No. 43 at 4, 18-22; 44 at 6, 10-11, 12-15; 45 at 1-4.)

The Court need not reconsider its decision based on the Supreme Court's holding in Loper Bright, 144 S.Ct. at 2273.  The Supreme Court cautioned that, by overruling Chevron, it did "not call into question prior cases that relied on the Chevron framework" and that "mere reliance on Chevron cannot constitute a special justification for overruling" prior decisions.  Loper Bright, 144 S.Ct. at 2273 (internal quotation marks omitted.)

The Court's finding that Offset Earnings are not part of income under § 951 is not undermined by the Supreme Court's decision on the merits in Loper Bright.  (ECF No. 49 at 29.)  In its Order Granting Partial Summary Judgment, the Court rejected Defendant's arguments at step 1 of the Chevron analysis, and at step 1, courts assess statutory meaning without "defer[ring] to the agency's views." Arangure, 911 F.3d at 337-38.  That is the analysis Loper Bright requires.  144 S.Ct. at 2273 (requiring courts to "exercise their independent judgment in deciding whether an agency has acted within its statutory authority," rather than "defer[ring] to an agency interpretation.")  Because the Court never reached Chevron step 2, it never deferred to an agency interpretation, the deference the Supreme Court deemed impermissible in Loper Bright.  144 S.Ct. at 2273.

17

Although Defendant, for purposes of appeal, preserves its arguments that Offset Earnings must be treated as § 951 income in calculating tax credits under § 960, Defendant has accepted the Court's conclusions for purposes of argument. (ECF No. 58 at 8 n.8.) The Court is constrained by the law-of-the-case doctrine and thus limited to its prior findings about § 951. The Court will not revisit them in this Order.

### 2. The Plain Language of § 965(g) and the Law of the Case Render Both the Statutory and Regulatory Haircuts Invalid As Applied to Offset Earnings

The plain language of § 965(g)(1), combined with the law of the case established in the Order Granting Partial Summary Judgment, unambiguously excludes Offset Earnings from the Statutory Haircut Rule. Insofar as the Regulatory Haircut Rule is applied to Offset Earnings, it is invalid because it conflicts with the plain statutory language. The Court rejects Defendant's arguments that: (1) the Court must defer to Defendant's interpretation of § 965 because Congress gave the IRS discretion to promulgate tax regulations; and (2) the Court must defer to Defendant under Skidmore.

Defendant cites Loper Bright's observation that some statutes "expressly delegate to an agency the authority to give meaning to a particular statutory term" and that "[o]thers empower an agency to prescribe rules to fill up the details of a statutory scheme, or to regulate subject to the limits imposed by a term or phrase

that leaves agencies with flexibility, such as 'appropriate' or 'reasonable.'" 144 S.Ct. at 2263. Defendant interprets that language to mean that, where Congress has delegated power to an agency to promulgate regulations, courts have "circumscribed" powers of review and must enforce the regulation as written. (ECF No. 66 at 3.) As long as the agency "acts within the bounds of that delegation" and "engage[s] in reasoned decisionmaking," courts must "follo[w] the relevant regulation." (Id. at 3-4.)

Even assuming that Congress has delegated authority to the IRS to promulgate regulations in furtherance of § 965, enforcing the Statutory or Regulatory Haircut Rule is not within the bounds of that authority. Loper Bright holds that, when assessing the legality of agency regulations, courts must independently interpret the governing statutes, and sometimes the "best reading of a statute is that it delegates discretionary authority to an agency." 144 S.Ct. at 2263. The Supreme Court elaborated that, when a statute delegates regulatory authority to an agency, courts must "recogniz[e] constitutional delegations, fi[x] the boundaries of the delegated authority, and ensur[e] that the agency has engaged in reasoned decisionmaking within those boundaries." Id. For the reasons described below, the Statutory and Regulatory Haircuts contradict the plain language of § 965(c). Promulgating a regulation that contradicts statutory language is outside the boundaries of the authority delegated to the IRS. Id.

Even under Chevron, courts were bound only to agency
interpretations of statutes when Congress had not provided
statutory language resolving the issue at hand.  See Loper Bright,
144 S.Ct. at 2254.  Loper Bright overruled Chevron because it
turned "the statutory scheme for judicial review of agency action
upside down."  Id. at 2265.  The Court is not persuaded that Loper
Bright requires courts to defer to agencies whenever Congress has
delegated regulatory power to them, even when the agency has used
that power to promulgate regulations that contradict the governing
statute.  The Supreme Court has emphasized that all statutes "have
a single, best meaning" and that, "[i]n the business of statutory
interpretation, if it is not the best [meaning], it is not
permissible."  Id.  As explained below, the best meaning of §
965(g)(1), in combination with the Court's Order Granting Partial
Summary Judgment, precludes the application of a Statutory or
Regulatory Haircut.  Assuming that Congress delegated authority to
the IRS to promulgate regulations implementing § 965, that
authority cannot, under Loper Bright, encompass the discretion to
promulgate regulations that contravene the "single, best meaning"
of § 965, as determined by the courts.  Id.

The source of the Statutory Haircut claimed by Defendant is
§ 965(g)(1).  Under that section, "[n]o credit shall be allowed
under section 901 for the applicable percentage of any taxes paid
or accrued (or treated as paid and accrued) with respect to any

20

amount for which a deduction is allowed under this section."
Deductions are permitted by § 965(c)[4], which reads that:

> [i]n the case of a United States shareholder of a
> deferred foreign income corporation, there shall be
> allowed as a deduction for the taxable year in which an
> amount is included in the gross income of such United
> States shareholder under section 951(a)(1) an amount
> equal to the sum of [. . .]

The Court found in its Order Granting Partial Summary Judgment
that Offset Earnings are not income under § 951 and should not be
treated as income. (ECF No. 49 at 16-19.) Because Offset Earnings
are not income under § 951, they are not deductible under § 965(c).
Because they are not deductible under § 965(c), they are not
subject to the Statutory Haircut in § 965(g)(1).

Defendant's arguments to the contrary are unavailing.
Defendant correctly notes that § 965(g) disallows tax credits for
a portion of taxes paid or accrued "with respect to any amount for
which a deduction" is allowed under § 965. (ECF No. 58 at 11.)
Defendant also correctly notes that § 965(c) establishes the
relevant deduction. (Id.) However, Defendant reads § 965(g) too
broadly.

---

[4] The parties agree that § 965(c) is the relevant deduction.
(ECF Nos. 52 at 17; 58 at 11-12.)

Defendant argues that "section 965(g) requires a disallowance of an applicable percentage of credits for foreign taxes that are paid or deemed paid on the earnings that are considered under § 965, including when those earnings are distributed as [Offset Earnings]." (Id.) Section 965(g), however, does not address all of the earnings that are "considered under § 965." The plain text of the provision dictates that § 965(g) applies only "with respect to any amount for which a deduction is allowed under this section [i.e. § 965]." Deductions, in turn, are authorized under § 965(c) only for the amount "included in the gross income of such United States shareholder under section 951(a)(1)." Defendant has failed to address this key limiting language in § 965(c), which restricts its application to earnings deemed income under § 951(a)(1).

Defendant attempts to evade this limiting language by arguing that the phrase "with respect to" in § 965(g) implies that the section applies broadly. Defendant reads too much into that phrase. If Congress had intended to disallow tax credits for any earnings contemplated or discussed in § 965, it could have said so. Instead, it singled out tax credits for "any amount for which a deduction" is allowed. If the phrase "with respect to" meant that tax credits were disallowed for any earnings mentioned in § 965 -- including Offset Earnings -- the reference to deductions would lack meaning.

Defendant also overreads § 965's reference to a corporation's "aggregate foreign cash position."  Defendant argues that because § 965(c) uses a corporation's "aggregate foreign cash position" to calculate the deduction, § 965(c) applies to Offset Earnings. (ECF No. 58 at 12.)  It is unclear why Defendant uses the terms "Offset Earnings" and "aggregate foreign cash position" interchangeably. The former concept is established in § 965(b)(1), and the latter is defined in § 965(c)(3).  Defendant asserts that the definition of "cash position" encompasses both "positive earnings foreign corporations" and "deficit foreign corporations," but provides no citation to support that proposition.  (Id. at 12 n.15.)  If Congress had intended the deduction to be calculated based on Offset Earnings, it could have cross-referenced § 965(b)(1), rather than defining a new statutory term midway through § 965.

Even assuming that a company's aggregate foreign cash position is calculated based on Offset Earnings, Defendant's interpretation of § 965(c) is not plausible.  That section provides that deductions will be:

. . . equal to the sum of--

    (A)  the United States shareholder's 8 percent rate equivalent percentage of the excess (if any) of--

        i.  the amount so included as gross income, over

       ii.   the   amount   of   such   United   States

            shareholder's   aggregate   foreign   cash

            position, plus

    (B)   the United States shareholder's 15.5 percent

       rate equivalent percentage of so much of the

       amount described in subparagraph (A)(ii) as does

       not exceed the amount described in subparagraph

       (A)(i).

Subparagraphs (A)(i) and (A)(ii) clearly show that "aggregate foreign cash" is a distinct concept from "gross income," implying that -- even if "aggregate foreign cash" is synonymous with "Offset Earnings" -- that amount is not necessarily included in "gross income" under § 951.  As explained above, deductions are only available under § 965(c) for earnings included as gross income under § 951.

The Court's conclusions are consistent with the requirements of <u>Skidmore</u>.  Under <u>Skidmore</u>, agency interpretations are "entitled to respect . . . but only to the extent that those interpretations have the power to persuade."  <u>Christensen v. Harris Cnty.</u>, 529 U.S. 1655, 576 (2000); <u>OfficeMax, Inc. v. United States</u>, 428 F.3d 583, 595 (6th Cir. 2005) (holding that "[a]gencies in the end receive <u>Skidmore</u> respect because of the persuasiveness of their reasoning, not in spite of it").  In assessing whether an agency's interpretation is persuasive, courts should consider "the

thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." OfficeMax, 428 F.3d at 595 (quoting United States v. Mead Corp., 533 U.S. 218, 228 (2001)).

The parties debate whether Defendant's position has been consistent, the thoroughness of its reasoning, and whether the Court should weigh Defendant's arguments more heavily because they address highly technical issues about which Defendant has special expertise. (See, e.g., ECF Nos. 66 at 9; 67 at 5-6.) Those factors have some relevance, but the plain meaning of § 965(g)(1) controls. Although the Court recognizes Defendant's "body of experience and informed judgment" about international tax law, "[t]he views of the Executive Branch c[an] inform the judgment of the Judiciary, but . . . not supersede it." Loper Bright, 144 S.Ct. at 2258, 2267.

The Court's finding that Offset Earnings are not part of § 951 income precludes those Earnings from being subject to a deduction under § 965(c) and, therefore, a Statutory Haircut to that deduction under § 965(g)(1). Defendant's attempts to stretch §§ 965(c) and (g) to cover Offset Earnings, although those earnings are not part of § 951 income, ignore the plain language of the dispositive statutory provisions. Defendant has not made any argument explaining why Offset Earnings should be treated as § 951

25

income for the limited purpose of applying the Statutory Haircut.
Thus, Plaintiff's tax credits are not subject to a Statutory
Haircut, and the Regulatory Haircut is invalid as applied to Offset
Earnings.[5]

## C. The Court *Sua Sponte* Grants Partial Summary Judgment in Plaintiff's Favor

Although the Court has discretion to grant summary judgment
*sua sponte*, the practice is not encouraged. Employers Ins. Of
Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 105 (6th Cir.
1995). Granting summary judgment *sua sponte* is particularly
discouraged when a court has not given notice to the adversely
affected party. Id. In determining whether a party has adequate
notice, a court must consider "whether the prevailing party moved

---

[5] The parties have raised numerous alternative arguments
which, in light of the foregoing analysis, the Court need not
address. First, the parties have litigated whether Defendant
waived application of the Haircut Rule by failing to raise it in
a timely manner. (ECF Nos. 52 at 18-22; 58 at 17-19.) Because
Defendant's arguments fail on the merits, the Court need not decide
this issue. Second, the parties have litigated whether the
Regulatory Haircut applies to the type of taxes at issue here.
(ECF Nos. 52 at 14-16; 58 at 8-11.) The Court assumes, without
deciding, that the Regulatory Haircut applies to the taxes at issue
and finds it invalid as applied. Third, the parties have litigated
whether the IRS had the authority to issue the rule at
§ 1.965-5(c)(1) and whether the IRS complied with
notice-and-comment rulemaking principles. (ECF Nos. 52 at 16-18;
58 at 15-17.) Given the Court's finding that § 1.965-5(c)(1) is
invalid because it conflicts with the plain language of the Tax
Code, the Court need not also discuss whether the regulation was
promulgated pursuant to appropriate authority and rulemaking
procedures.

for summary judgment; whether the losing party moved for summary judgment; what issues the parties focused on in their briefs; what factual materials the parties submitted to the court; and whether motions were filed by co-defendants." Smith v. Perkins Bd. Of Educ., 708 F.3d 821, 829 (6th Cir. 2013).

When a party moves for partial summary judgment and a court grants a cross-motion for summary judgment on broader grounds, "the failure of the court to provide notice [to the adversely affected part';ly] may not be as detrimental since the moving party is at least aware that the issue has been raised." Employers Ins. Co. of Wausau, 69 F.3d at 105 (addressing trial court's grant of summary judgment as to two defendants, where plaintiff had filed a cross-motion as to one).

This is one of the rare occasions where a *sua sponte* grant of partial summary judgment is appropriate. Defendant, the adversely affected party, has suggested that partial summary judgment is appropriate. (ECF No. 58 at 2) (stating that "the motion is more properly styled as one for partial summary judgment, and the Court can deny it on that basis because FedEx is simply incorrect"). Defendant cites the summary judgment standard and makes extensive arguments on the merits. (Id. at 4-5, 8-15.) The Sixth Circuit has held that granting summary judgment *sua sponte* is less "detrimental" where the adversely affected party is "at least aware" that summary judgment is on the table. Employers Ins. Co.

27

of Wausau, 69 F.3d at 105.  Here, although Plaintiff has not moved for summary judgment, Defendant was aware that the issue was before the Court.  Defendant raised it.  Given that fact, the fact that the parties have litigated the merits of the issues extensively in their briefs, and the fact that this case turns on purely legal issues for which additional discovery is not necessary, the Court **GRANTS** partial summary judgment in Plaintiff's favor, as set forth in this Order.  Smith, 708 F.3d at 829.  Plaintiff's tax credits are not subject to a Statutory Haircut, and the Regulatory Haircut is invalid as applied to Offset Earnings.

### V.   Conclusion

Plaintiff's construed Motion for Partial Summary Judgment is **GRANTED**.

SO ORDERED this _13th_ day of February, 2025.


_/s/ Samuel H. Mays, Jr._
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE